UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DONALD HENNEBERG, | ) |
| Plaintiff, | ) |
| | ) |
| | ) No. 19 C 7380 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| TOM DART, SUSAN SHEBEL, R.N., | ) |
| JOHN DOE MEDICAL DEFENDANTS, | ) |
| JOHN DOE CORRECTIONAL OFFICER | ) |
| NO. 1, and COOK COUNTY, ILLINOIS, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

While detained at the Cook County Jail ("CCJ"), Plaintiff Donald Henneberg repeatedly requested but did not receive prescription eyeglasses. Allegedly, the lack of glasses caused him to slip and seriously injure himself. Additionally, despite having made a correctional officer aware of gang control over the telephone system at CCJ, the correctional officer did nothing to protect Henneberg from attack when he sought to use the telephone. In response to these incidents, Henneberg brings this suit against Defendants Cook County Sheriff Thomas Dart, in his official capacity, Susan Shebel, R.N., John Doe Medical Defendants, John Doe Correctional Officer No. 1, and Cook County, Illinois (the "County"). In his first amended complaint ("FAC"), Henneberg claims that Shebel and the John Doe Medical Defendants exhibited deliberate indifference to his medical condition in violation of the Fourteenth Amendment (Count I) and that John Doe Correctional Officer No. 1 failed to protect him from an inmate assault in violation of his Fourteenth Amendment right to safe and hospitable prison conditions (Count II). Henneberg also brings claims against Dart and the County pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978) (Counts III and IV).

Finally, Henneberg pursues a state law indemnification claim against the County (Count V). Dart, Shebel, and the County move to dismiss the claims against them under Federal Rule of Civil Procedure 12(b)(6).[1] Because Henneberg has sufficiently alleged his claims against Shebel, Dart, and the County, the Court denies their motion to dismiss.

## BACKGROUND[2]

### I. Medical Care at Issue

In November 2018, Henneberg was arrested, charged with burglary, processed, and sent to CCJ for pretrial detention. As part of CCJ's booking process, Cermak Health Services ("Cermak") employees screened Henneberg for any medical and mental health needs. During that initial screening, Henneberg informed the Cermak intake staff that he depended on prescription eyeglasses for proper vision. Instead of issuing him glasses, Cermak staff informed Henneberg that he could have prescription glasses sent to him from outside sources as long as the glasses did not have metal frames. But the glasses Henneberg could have obtained from outside sources had metal frames. The intake staff informed Henneberg that he could alternatively request an appointment with a medical provider at CCJ, but they did not provide further information on the scheduling or timing of such an appointment. Henneberg thus began his time at CCJ without glasses.

Between December 9, 2018 and August 25, 2019, Henneberg filed seven grievances related to his need for glasses. Unidentified John Doe Medical Defendants denied the first three of Henneberg's grievances, filed between December 9, 2018 and January 8, 2019. Henneberg

---

[1] Dart, Shebel, and the County do not seek dismissal of Henneberg's claims against the John Doe Defendants, and so the Court does not address the viability of Henneberg's claims against the John Doe Defendants at this time.

[2] The Court takes the facts in the background section from Henneberg's FAC and treats them as true for the purpose of resolving Dart, Shebel, and the County's motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

filed the remaining four grievances in February, May, June, and August 2019, complaining that he had been waiting to see an eye doctor for many months. Shebel, a CCJ employee, responded to the February and May grievances with confirmation that Henneberg was "scheduled" for an appointment. Doc. 29 ¶¶ 25(d)–(e). Shebel responded to Henneberg's June 2019 grievance on July 18, 2019 with slightly more detail, indicating Henneberg had an appointment in October 2019, and she repeated this information on September 18, 2019 in response to Henneberg's August 2019 grievance. Henneberg never received prescription glasses while detained at CCJ.

Due to the fact that he did not have prescription glasses, in spring or early summer 2019, Henneberg did not see a pool of water located on the floor of CCJ's day room and slipped on it. Henneberg fell and hit his head on a bench. He suffers from persistent injuries to his head, back, and hip as a result of the fall.

## II. Detainee Physical Assault Incident at Issue

Separately, while housed in Division 10 at CCJ, Henneberg witnessed gang-affiliated detainees exert control over the detainee telephone system. Henneberg saw physical altercations break out between the gang-affiliated detainees and other detainees who sought to use the phone, which caused Henneberg to fear for his own safety if he attempted to use the phone. Henneberg repeatedly warned correctional officers on the day shift and second shift, including John Doe Correctional Officer No. 1, of the risks this dynamic posed to him and other detainees. Despite the fact that their control station was directly in front of the telephone system, the correctional officers did not take any action to address the gang control of the phone system.

On or around June 20, 2019, Henneberg attempted to use the detainee phone system, but a gang-affiliated detainee blocked him. Henneberg and the other detainee engaged in a physical and verbal altercation that involved pushing and shoving. From his station, John Doe

3

Correctional Officer No. 1 could see the incident but chose not to intervene. Following the initial interaction, Henneberg retreated to Division 10's day room. While Henneberg watched television, the same detainee entered the day room to continue their fight, hitting Henneberg on the head. Henneberg lost consciousness and was hospitalized. Henneberg continues to suffer after-effects of the assault. John Doe Correctional Officer No. 1 witnessed the attack in the day room from his station.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I. Inadequate Medical Care Claim against Shebel (Count I)

The Court begins by considering whether Henneberg has stated a claim for inadequate medical care against Shebel.[3] Shebel first argues that Henneberg has not sufficiently alleged her

---

[3] Henneberg clarifies in his response that he only brings his inadequate medical care claim against Shebel and the John Doe Medical Defendants and his failure to protect claim against John Doe Correctional

4

personal involvement in the constitutional deprivation because she only answered grievances that he filed. Section 1983 creates a cause of action based on personal liability and predicated upon fault, meaning that "to be liable under § 1983, the individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Vill. of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005) (citation omitted) (internal quotation marks omitted); *see also Childress v. Walker*, 787 F.3d 433, 439–40 (7th Cir. 2015) ("[A]n individual must be personally responsible for a constitutional deprivation in order to be liable, [but] personal responsibility is not limited to those who participate in the offending act."). Here, Shebel contends that she only processed grievances and did not play any role in his medical care. While the Court acknowledges that challenges to the grievance process are not actionable, *see Antonelli v. Sheahan*, 81 F.3d 1422, 1430–31 (7th Cir. 1996), that is not Henneberg's claim. Instead, Henneberg contends that, through the grievances, Shebel learned of his serious medical needs but disregarded them by failing to schedule him for a prompt appointment, thus participating in the alleged constitutional deprivation. *See Dubose v. Hallinan*, No. 19-cv-8255, 2021 WL 492873, at *3 (N.D. Ill. Feb. 10, 2021) (plaintiff's allegations that the defendant performed a mental health intake assessment and learned of his need for medication but then failed to refer him to a medical professional sufficed to allege the defendant's personal involvement). In his response, Henneberg alleges that Shebel acted as the "gatekeeper" and so controlled his access to medical care. Doc. 49 at 6. While Shebel contests this allegation, the Court cannot resolve factual disputes at the pleading stage and instead takes as true Henneberg's allegations in his response brief, which add additional facts consistent with the FAC. *See Help at Home, Inc. v. Med. Capital, LLC*, 260 F.3d

---

Officer No. 1. *See* Doc. 49 at 4. Therefore, the Court does not address Dart and the County's arguments that these claims are not properly alleged as against them and only focuses on whether Henneberg has stated a claim against Shebel for inadequate medical care. Similarly, because Henneberg proceeds against Dart only in his official capacity, the request for punitive damages in the FAC does not extend to Dart and requires no further discussion.

748, 752–53 (7th Cir. 2001). These allegations of control distinguish Henneberg's claim from those in *Manney v. Monroe*, where the court on summary judgment found that the defendants who reviewed the plaintiff's grievances had no control over his medical care. 151 F. Supp. 2d 976, 986 (N.D. Ill. July 27, 2001). At this stage, then, the Court finds that Henneberg has sufficiently alleged Shebel's personal involvement in denying him adequate medical care. *See Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996) ("[A] prison official's knowledge of prison conditions learned from an inmate's communications can, under some circumstances, constitute sufficient knowledge of the conditions to require the officer to exercise his or her authority and to take the needed action to investigate and, if necessary, to rectify the offending condition."); *Johnson v. Ill. Dep't of Corr.*, No. 15-cv-5715, 2015 WL 7889033, at *2 (N.D. Ill. Dec. 3, 2015) ("Ignoring grievances does not state a claim under § 1983; but, a prison official can be liable under 42 U.S.C. § 1983 for failing to respond to violations of a prisoner's constitutional rights that come to his or her attention via the grievance procedure." (citation omitted) (internal quotation marks omitted)).

Additionally, to proceed against Shebel on his Fourteenth Amendment inadequate medical care claim, Henneberg must allege facts indicating that he had a serious medical need and that Shebel (1) acted purposefully, knowingly, or perhaps recklessly when considering the consequences of her conduct in regard to this medical need; and (2) her conduct was objectively unreasonable. *Miranda v. Cnty. of Lake*, 900 F.3d 335, 353–54 (7th Cir. 2018). Shebel contends that Henneberg has not adequately alleged that she acted in an objectively unreasonable manner. "This standard requires courts to focus on the totality of facts and circumstances faced by the individual alleged to have provided inadequate medical care and to gauge objectively—without regard to any subjective belief held by the individual—whether the response was reasonable."

*McCann v. Ogle Cnty.*, 909 F.3d 881, 886 (7th Cir. 2018). Although discovery may show otherwise, at this stage, the Court finds plausible that the months-long delay in scheduling an appointment was objectively unreasonable. *See Perez v. Fenoglio*, 792 F.3d 768, 777–78 (7th Cir. 2015) ("A delay in treatment may show deliberate indifference if it exacerbated the inmate's injury or unnecessarily prolonged his pain. Whether the length of delay is tolerable depends upon the seriousness of the condition and the ease of providing treatment." (citations omitted)).[4]

Finally, Shebel argues that qualified immunity shields her from liability, basing this argument on Henneberg's alleged failure to plead a constitutional violation.[5] But because Henneberg has adequately stated a claim under the Fourteenth Amendment, this argument fails at the pleading stage. Therefore, the Court allows Henneberg to proceed to discovery on his inadequate medical care claim against Shebel.

## II. *Monell* Claims against Sheriff Dart and the County

Next, the Court addresses Dart and the County's arguments concerning the *Monell* claims brought against them. While Henneberg cannot seek to hold Dart or the County liable based on *respondeat superior*, *Monell* provides a potential route to recovery against them. *See Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015). To state a *Monell* claim, Henneberg must allege (1) an express policy that, when enforced, causes a constitutional violation; (2) a

---

[4] The Seventh Circuit has recently affirmed that "jail officials may violate the Fourteenth Amendment . . . by significantly and inexplicably delaying effective medical treatment for a serious condition where it exacerbates a detainee's suffering," *Redman v. Downs*, --- F. App'x ----, 2021 WL 1889749, at *3 (7th Cir. 2021). Although *Perez* considered the question under the Eighth Amendment, that standard is "more stringent" and "imposes a heavier burden" than that required by *Miranda*, making it appropriate for the Court to look to Eighth Amendment delay cases here. *See Williams v. Williamson*, No. 17 C 1590, 2019 WL 1437900, at *8 (N.D. Ill. Mar. 31, 2019).

[5] Shebel also argues that Section 2-202 of the Illinois Local Governmental and Governmental Employees Tort Immunity Act, 745 Ill. Comp. Stat. 10/2-202, provides her with immunity for any state law claims brought against her. But Henneberg does not assert any state law claims against Shebel, so Section 2-202 does not apply.

7

widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) a constitutional injury caused by a person with final policymaking authority. *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). The policy or practice "must be the direct cause or moving force behind the constitutional violation." *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (internal quotation marks omitted) (citation omitted).

Henneberg brings two separate *Monell* claims, one against Dart and the County for the failure to implement an adequate policy to ensure access to prescription eyeglasses. The second he brings only against Dart, claiming that Dart failed to implement policies and to train correctional officers to protect detainees from physical assault by other detainees. Dart and the County first complain that Henneberg has failed to include allegations that suggest the widespread nature of the alleged violations, with Henneberg pointing instead only to his own experiences. Indeed, to prove his *Monell* claims, Henneberg will need to demonstrate "a widespread practice that permeates a critical mass of an institutional body," supported, for example, by other detainees' experiences or affidavits from County employees suggesting such practices or policies. *See Rossi*, 790 F.3d at 737 (emphasis omitted). But at the motion to dismiss stage, Henneberg may rely on personal experience instead of pleading examples of other individuals' experiences. *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016) (noting that plaintiff "was not required to identify every other or even one other individual who had been arrested pursuant to a warrant obtained through the complained-of process"). Therefore, the fact that Henneberg does not include specific details of other incidents does not warrant dismissal of the *Monell* claims, particularly where his allegations suggest widespread practices, not isolated events. *See Williams v. City of Chicago*, No. 16-cv-8271, 2017 WL 3169065, at *8–9 (N.D. Ill.

July 26, 2017) (post-*White* courts analyzing *Monell* claims "have 'scotched motions to dismiss' premised on arguments that the complaint does not contain allegations beyond those relating to the plaintiff" (collecting cases)).

Nor does the Court apply a "heightened pleading standard" to *Monell* claims. *White*, 829 F.3d at 844 (quoting *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993)). Instead, *Monell* claims may proceed "even with conclusory allegations that a policy or practice existed, so long as facts are pled that put the defendants on proper notice of the alleged wrongdoing." *Armour v. Country Club Hills*, No. 11 C 5029, 2014 WL 63850, at *6 (N.D. Ill. Jan. 8, 2014) (quoting *Riley v. Cnty. of Cook*, 682 F. Supp. 2d 856, 861 (N.D. Ill. 2010)); *see also Olson v. Champaign Cnty.*, 784 F.3d 1093, 1100 (7th Cir. 2015) (a plaintiff's "pleading burden should be commensurate with the amount of information available" to him before discovery (citation omitted)). Here, Henneberg has included sufficient factual allegations to put Dart and the County on notice of the alleged wrongdoing, tying his medical injuries to the lack of a policy concerning provision of eyeglasses and the detainee-on-detainee violence he experienced to allegedly inadequate policies and training of correctional officers at CCJ. Discovery will uncover whether Henneberg can prove his *Monell* claims, but at the pleading stage, he has stated plausible claims for relief. *See Shields v. City of Chicago*, No. 17 C 6689, 2018 WL 1138553, at *4 (N.D. Ill. Mar. 2, 2018) ("[T]he City's arguments that Plaintiff's allegations do not 'establish' the existence of a widespread policy are misplaced because at this stage of the proceedings, the Court must determine whether Plaintiff has stated a plausible claim for relief, not that he has 'established' or 'proven' his claims."); *Barwicks v. Dart*, No. 14-cv-8791, 2016 WL 3418570, at *4 (N.D. Ill. June 22, 2016) (a plaintiff "need only allege a pattern

or practice, not put forth a full panoply of evidence from which a reasonable factfinder could conclude such a pattern exists" at the pleading stage).

Finally, Dart argues that the County, not his office, has sole responsibility for detainee medical care, making him an improper defendant for the *Monell* medical care claim. *See, e.g.*, *Harrison v. Cnty. of Cook*, No. 08 C 3202, 2011 WL 4036115, at *8 (N.D. Ill. Sept. 12, 2011) ("Cook County and the Cook County Sheriff's office are separate entities with distinct responsibilities. Cook County, through Cermak, is responsible for providing medical care to detainees. Dart's office, by contrast, is responsible for operating and maintaining the CCDOC as a jail."). But even assuming that the Court can take notice of this fact at the motion to dismiss stage, "the fact that someone else has *primary* responsibility for medical care does not mean that [Dart has] *no* responsibility for medical care." *Jones v. Barber*, No. 17-cv-07879, 2020 WL 1433811, at *5 (N.D. Ill. Mar. 24, 2020) (rejecting argument that a plaintiff cannot proceed against the Sheriff's Office on a *Monell* claim related to medical care at CCJ); *see also Daniel v. Cook Cnty.*, 833 F.3d 728, 737 (7th Cir. 2016) (rejecting argument that the Sheriff's Office was not a proper defendant for a *Monell* medical care claim because "the constitutional duty under the Eighth and Fourteenth Amendments to provide adequate health care rests on the custodian"); *Parish v. Sheriff of Cook Cnty.*, No. 07 C 4369, 2019 WL 2297464, at *8 (N.D. Ill. May 30, 2019) ("The Sheriff's reliance on Cermak to provide medical care to detainees does not excuse him from liability under § 1983."). Therefore, at least at this stage, the Court allows the *Monell* medical care claim to proceed against both Dart and the County.

### III.   State Law Indemnification Claim

Finally, the County seeks to dismiss Henneberg's indemnification claim. The County argues that, while the Illinois Tort Immunity Act obligates Illinois municipalities to indemnify

employees for liability arising out of the scope of their employment, without a surviving federal claim against the individual defendants, an indemnification claim proves unnecessary. But because the underlying claims against Shebel and the John Doe Defendants survive, the indemnification claim remains viable at this time as well.

## CONCLUSION

For the foregoing reasons, the Court denies Dart, Shebel, and the County's motion to dismiss [40].

Dated: August 31, 2021

SARA L. ELLIS
United States District Judge