## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DONALD HENNEBERG, | ) | |
| | ) | |
| Plaintiff, | ) | Case Nos. 19-cv-07380 |
| | ) | 19-cv-07382 |
| v. | ) | 19-cv-07883 |
| | ) | |
| SHERIFF DART, SUSAN SHEBEL, R.N., | ) | |
| and COOK COUNTY, ILLINOIS et al. | ) | |
| | ) | |
| Defendants. | ) | |

## COOK COUNTY, ILLINOIS AND SHERIFF THOMAS DART'S OPPOSED MOTION TO BIFURCATE AND STAY DISCOVERY ON PLAINTIFF'S *MONELL* CLAIMS, COUNTS III & IV

NOW COME Defendants, SHERIFF THOMAS DART ("Sheriff Dart"), SUSAN SHEBEL, COOK COUNTY, ILLINOIS ("Cook County"), and JORGE ARIAS (collectively, "Defendants"), by and through their attorneys Jason E. DeVore and Troy S. Radunsky of DeVore Radunsky LLC, pursuant to Federal Rule of Civil Procedure 42(b), and for their Motion to Bifurcate, state as follows:

### BACKGROUND & PROCEDURAL HISTORY

On April 26, 2022, Plaintiff filed his Second Amended Complaint ("Complaint"). (***See Exhibit A, Plaintiff's 2nd Amended Complaint***). Plaintiff, a pretrial detainee at the Cook County Jail, alleges that from November 2018 through December 2019, he was not provided prescription eyeglasses, despite filing numerous grievances and health request forms complaining of vision problems. (***Ex. A*** at ¶¶ 25, 30).

He alleges separately that on June 20, 2019, he was assaulted by a gang-affiliated detainee when he tried to use the phone in Division 10. (***Ex. A*** at ¶¶ 35-67, 79). He alleges that defendants Dart and Arias knew that gangs were controlling he phone use and that Arias witnessed Plaintiff's assault. (***Ex. A*** at ¶¶ 45-67, 77, 80).

1

Further, Plaintiff asserts *Monell* claims regarding Sheriff Dart and Cook County's policy or widespread practice of denying inmates prescription eyeglasses who needed them, (***Ex. A*** at ¶¶ 86-101), and Sheriff Dart's failure to implement adequate policies to ensure the safety of inmates from assault by other inmates. (***Ex. A*** at ¶¶ 87-93).

The Complaint contains the following Counts:

Count I-       14th Amendment- Medical Indifference Claim regarding the failure to provide him with prescription eyeglasses (***Ex. A*** at ¶¶ 68-71)

Count II-      14th Amendment-Right to Safe Prison Conditions (Assault by Another Inmate) (***Ex. A*** at ¶¶ 72-85)

Count III-     *Monell*-Sheriff Dart (Failure to provide access to prescription eyeglasses and failure to train and protect) (***Ex. A*** at ¶¶ 86-93)

Count IV-      *Monell*-Cook County (Failure to provide access to prescription eyeglasses) (***Ex. A*** at ¶¶ 94-101)

Count V-       Indemnification-State Claim-Cook County (***See Ex. A*** at ¶¶ 102-105)

**ARGUMENT**

The Section 1983 civil rights claims in Counts I and II, against Defendants Arias and Shebel, who are employees of Sheriff Dart and Cook County, respectively ("Individual Defendants"), should be severed from the *Monell* claims against Sheriff Thomas Dart, and Cook County, Illinois ("Municipal Defendants") in Counts III and IV. (Dkt. #65). Rule 42(b) empowers this Court to sever the claims against the individual defendants from those against the municipal defendants. Fed. R. Civ. P. 42(b) (a court may, "[f]or convenience, to avoid prejudice, or to expedite and economize, … order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims.").

Here, there has been no proof of a constitutional violation upon which a *Monell* claim relies. If a constitutional violation can be shown and liability can be proven against Officer Arias

and Susan Shebel in Counts I and II, then it may be appropriate to proceed with the *Monell* claim against the Municipality Defendants (Counts III (assault - Dart) and IV (prescription eyeglasses - Cook County)).

Bifurcation is appropriate when, as here, the *Monell* claims are derivative of the alleged underlying constitutional violation. *See Treadwell v. Salgado*, Case No. 19 C 3179, 2022 WL 267988 (N.D. Ill. Jan. 28, 2022). The Seventh Circuit has established three factors to consider in determining whether a municipality's liability is derivative of the claims against its officers: (1) the nature of the constitutional violation; (2) the theory of municipal liability; and (3) the defenses set forth. *See Rodriguez v. City of Chicago*, No. 17 CV 7248, 2018 WL 3474538 at *2 (N.D. Ill. July 19, 2018).

Only one of three criteria need be met for bifurcation to be appropriate. *See Berry v. Deloney*, 28 F.3d 604, 610 (7th Cir. 1994). The court has "considerable discretion" over whether to bifurcate claims, *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000), but may bifurcate "separate claims or issues for trial if the separation would prevent prejudice to a party or promote judicial economy." *Chlopek v. Federal Ins. Co.*, 499 F.3d 692, 700 (7th Cir. 2007) (affirming denial of a new trial where claims were bifurcated). Weighing a motion to bifurcate requires "a pragmatic mindset" and is a "case-specific assessment of the advantages and disadvantages of bifurcation." *Ojeda-Beltran v. Lucio*, Case No. 07 C 6667, 2008 WL 2782815, at *1 (N.D. Ill. July 16, 2008). Should bifurcation be warranted, Rule 26 allows the court to stay discovery on the *Monell* claim. Fed. R. Civ. P. 26(d); *Jones v. City of Chicago*, Case No. 98 C 5418, 1999 WL 160228, at *3 (N.D. Ill. Mar. 10, 1999) (granting motion to bifurcate and stay *Monell* claims).

Bifurcating and staying Plaintiff's *Monell* claims promotes Rule 42(b) and best serves the interests of judicial economy, expediting proceedings and avoiding of undue prejudice while

3

reflecting this Court's inherent power to control its docket. *See Krocka*, 203 F.3d at 516. Focusing on the underlying constitutional violations allows more efficient, streamlined litigation. It prevents undue prejudice against both sets of defendants by allowing more focused discovery. Further, if Plaintiff cannot prove his constitutional claims, then the *Monell* claims fall away without the need for lengthy and costly discovery.

## I.    Bifurcation Best Serves the Interests of Litigation and Judicial Economy

### A.   Bifurcating and staying the *Monell* claim minimizes the complexity and burdens of this litigation.

Bifurcation allows both parties to avoid burdensome and potentially unnecessary discovery and litigation costs. As a general rule, a plaintiff cannot prevail on a *Monell* claim without first establishing an underlying constitutional violation. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Matthews v. City of East St. Louis*, 675 F.3d 703, 709 (7th Cir. 2012). In other words, unless Plaintiff succeeds on his 42 U.S.C. § 1983 claims against one or more of the Individual Defendants, Sheriff Dart and Cook County, Illinois cannot be held liable under *Monell*.

Indeed, it is well established that trial judges have "substantial case-management authority to control the course of litigation in their courts. In cases lacking private incentives to limit the scope of litigation, active judicial oversight can help prevent straightforward cases[,] like this one[,] from spiraling out of control." *Montanez v. Simon*, 755 F.3d 547, 552 (7th Cir. 2014) (reminding district courts overseeing civil-rights cases with fee-shifting statutes to exercise case-management authority before excessive fees accrue).

The Seventh Circuit recently commented on this very issue as it relates to *Monell* claims. In *Swanigan v. City of Chicago*, 775 F.3d 953, 957 (7th Cir. 2015), the court stayed the *Monell* claim until the claims against the individual defendant officers were litigated and resolved. On

appeal of other legal matters, the Seventh Circuit made special mention of the district court's decision to stay *Monell* discovery and found it was "sensible, especially in light of the volume of civil-rights litigation that district courts must manage." *Id.* at 962. Moreover, the "stipulation and stay of *Monell* suit[s]" in cases where the *Monell* claim is not factually distinct from the claim against the individual defendants "achieve[s] the goal of avoiding unnecessary complexity and effort." *Id.* at 963. Granting this motion will, as in *Swanigan*, promote more cost-effective and streamlined litigation.

Plaintiff has already served County Defendants with extensive written discovery relating to his *Monell* claims. This Court is also already aware of the extent to which Plaintiff desires to conduct vast *Monell* discovery, following the hearing on January 4, 2023. (***See Exhibit B***, ***January 4, 2023, Hearing Transcript***). Plaintiff has requested extensive information regarding unrelated detainee medical records, incident reports, grievances, employee files, ESI, and a wide range of County policies and procedures regarding prescription eyeglasses, assaults generally, and protective procedures and reports at the jail from 2015 through 2019. These requests potentially implicate a vast array of unrelated inmates, personnel, records, and documents with no relation to any issues in this case at this time. Defendants would like to suspend this discovery until liability against Officer Arias and Susan Shebel has been established in some capacity.

In Plaintiff's claim regarding allegations Cook County's policy or widespread practice of denying inmates prescription eyeglasses, he has already sought expansive *Monell* discovery materials in pursuit of his claims. For example, Plaintiff requested from Cook County "[a]ll [d]ocuments related to Cook County Jail or Cermak Health Services Policies in effect during the Relevant Period, including without limitation those related to" "the intake medical screening process[,]" "processing of inmate medical request forms and grievances[,]" and "assessment,

5

evaluation, monitoring, administration of medication, and treatment of inmates at Cook County Jail, including but not limited to inmates presenting with or complaining of needing glasses, poor eyesight, needing to see an eye doctor, head trauma, blackouts, migraines, blurred vision, loss of balance, and PTSD[.]" (***Group Exhibit C, Defendant Cook County's Responses to Plaintiff's Requests for Production ("CC Resp. to RFP")*** at ¶¶ 11(a)-(c)). This same request extended further, seeking policies regarding "diagnosis, treatment, or monitoring of Cook County Jail inmates ... presenting with or complaining of needing glasses, poor eyesight, needing to see an eye doctor, head trauma, blackouts, migraines, blurred vision, loss of balance, and PTSD [("Plaintiff's Medical Complaints")][,]" as well as policies regarding "medication administration and management to meet the medical needs" of the same. (***Grp. Ex. C, CC Resp. to RFP*** at ¶¶ 11(e)-(f)).

Naturally, Plaintiff likewise sought "[a]ll [d]ocuments reflecting the training, supervision, and discipline of individual employees and agents of Cook County Jail and Cermak Health Services regarding" "processing medical request forms or grievances requesting medical care[,]" "responding to medical requests and grievances requesting medical care and expressing concerns about medical or mental health[,]" and "providing medical, mental health, or optometric care to inmates[.]" (***Grp. Ex. C, CC Resp. to RFP*** at ¶¶ 12(a)-(c)). And, of course, what use would documentation on the training, supervision, and discipline of employees and agents be without "[a]ll [d]ocuments reflecting review, evaluation, assessment, recommendations or decisions relating to Plaintiff's requests, complaints, or inmate grievances concerning" Plaintiff's Medical Complaints, as well as documentation identifying all persons involved in the process in any capacity. (***Grp. Ex. C, CC Resp. to RFP*** at ¶¶ 12-15).

6

Finally, with one further swift toss of the net, Plaintiff additionally fished for information concerning the "U.S. Department of Justice's investigation and findings of unconstitutional conditions at Cook County Jail related to the failure to provide adequate medical care[,]" as well as concerning "any other state or federal investigations, inquiries, consent decrees, or other state or federal oversight of Cook County Jail or Cermak Health Services involving failure to provide adequate medical care." (***Grp. Ex. C, CC Resp. to RFP*** at ¶¶ 19-20).

But Plaintiff's expansive *Monell* discovery requests do not end there. In furtherance of Plaintiff's claims regarding the alleged failure to implement adequate policies ensuring the safety of inmates from assault by other inmates, Sheriff Dart was likewise subject to a myriad of requests for documentation on "Cook County Jail or Cook County Sheriff policies related to" "training of Correctional Officers to ensure health and safety of inmates at Cook County Jail[,]" "health and safety of inmates including inmate protection from physical assault or attack by other inmates[,]" and "use of or access to the inmate telephones." (***Group Exhibit C, Defendant Sheriff Thomas Dart's Responses to Plaintiff's Requests for Production ("Sheriff Dart Resp. to RFP")*** at ¶¶ 20(a)-(c)). These requests further sought documentation on training of correctional officers on protection of inmates and on responses to concerns by inmates regarding level of protection, as well as documents "reflecting or pertaining to any reports or complaints from Plaintiff or any other inmate to any staff member ... regarding threats or restrictions placed on the use of telephones within Cook County Jail by gang members ... or fellow inmates[.]" (***Grp. Ex. C***, ***Sheriff Dart Resp. to RFP*** at ¶¶ 21-22). Additionally, nearly all of Requests to Produce to Sheriff Dart Numbers 25-27, 29, 30-35, and 38-39, sought extensive information regarding jail policies, assaults by any unrelated gang members, and violence by unrelated gang members against unrelated detainees

7

trying to use or using the telephone between 2015 and 2019. (***Grp. Ex. C***, ***Sheriff Dart Resp. to RFP*** at ¶¶ 25-27, 29, 30-35, 38-39).

Plaintiff has already shown his hand as far as the extent and broad reach of the *Monell* discovery he wishes to pursue, all before he has ever proven any liability in the claims against the Individual Defendants. This trend has only persisted as of late, with Plaintiff's counsel threatening to seek judicial resolution as to a dispute regarding Plaintiff's request for "all incident reports for the period 2015-2019 that reflect or relate to <u>any</u> of the following three categories, among other things: inmate assaults generally, <u>or</u> assaults involving potential gang members, <u>or</u> assaults involving potential use of the phone(s)." (***See Exhibit E, 1.24.23 Discovery Dispute Correspondence with Plaintiff's Counsel***). Defendants merely wish to reasonably limit this request in scope to only incident reports that pertain to "inmate assaults <u>and</u> the use of telephones during the 2015-2019 period." *Id.*

As seen, *Monell* litigation is immensely likely to (and indeed, to the extent shown, already has) trigger costly, protracted, and time-consuming discovery, involving both Defendants Cook County and Cook County Sheriff Thomas Dart, as well as their representatives, management, and administration. *See Moore v. City of Chicago*, Case No. 02 C 5130, 2007 WL 3037121, at *9 (N.D. Ill. Oct. 15, 2007) (discussing the cost and burden of *Monell* claims on the parties, typically without any meaningful benefit to the plaintiff). Indeed, here too, the aforementioned discovery sought is extremely broad and expansive, and overwhelmingly unrelated to the underlying incidents alleged in the complaint. On January 31, 2022, following correspondence from Plaintiff's counsel seeking *Monell* discovery, Defense counsel advised Plaintiff of their objections to the same. (***See Exhibit D***, ***Jan 31, 2022, Defense Counsel Correspondence***). This Court also helpfully remarked in the

8

hearing on January 4, 2022, that the *Monell* claim will add little monetary value to his damages. (***Ex. B*** at p. 34).

Plaintiff's *Monell* discovery would be best addressed if and when Plaintiff demonstrates that constitutional violations occurred while the individual employees were acting in the scope of their employment and under color of state law (Indeed, that is what ultimately happened in *Swanigan*.). Because the *Monell*-related requests are not based on the incidents themselves, the information is less likely to be lost as memories fade over the passage of time. Moreover, the parties could spend their time and resources focused on the underlying incidents in order to move the case toward a potential resolution without the time and resources spent collecting and reviewing *Monell*-specific information, engaging in discovery disputes, and presenting motion practice regarding the scope of discovery. The parties could cost effectively and efficiently move forward on discovery related to the underlying incidents in short order, thus preventing further delay of the resolution of Plaintiff's claims.

**B.  Bifurcating and staying the *Monell* claims best serves the interests of judicial economy.**

Granting Cook County and Sheriff Dart's motion also promotes judicial economy. Bifurcating Plaintiff's *Monell* claims eliminates the need for (1) judicial intervention into discovery disputes arising from the claims; (2) briefing and ruling on the Summary Judgment motion Cook County and/or Sheriff Dart may bring, if discovery reveals such a motion to be founded and appropriate; and (3) if the claims survive summary judgment, presiding over a trial that will be longer and far more factually and legally complex than a trial that would focus solely on the individual defendants' liability. *See, e.g., Fuery v. City of Chicago*, Case No. 07 C 5428,

2015 WL 715281, at *3 (N.D. Ill. Feb. 17, 2015) (discussing the benefits of bifurcation and granting motion to bifurcate).

Courts have explicitly endorsed bifurcation as a means to avoid "the waste of the valuable time and resources of the court[,]" in addition to serving the interests directly behind Rule 42. *See, e.g., Andersen v. City of Chicago*, Case No. 16 C 1963, 2016 WL 7240765, at *4 (N.D. Ill. Dec. 14, 2016) (granting motion to bifurcate and stay discovery on *Monell* claim). Accordingly, courts in this district have increasingly bifurcated and stayed *Monell* discovery for judicial efficiency, and this Court should do the same. *See, e.g., Lindsey v. Orlando*, Case No. 16 C 1967, 2017 WL 449180, at *5 (N.D. Ill. Feb. 2, 2017) (collecting cases and noting that "[m]otions to bifurcate *Monell* claims from § 1983 claims against individual defendants have become routine").

To that end, it is more efficient to bifurcate, because here, if Plaintiff fails to prove liability against Officer Arias and Susan Shebel on the phone assault and prescription eyeglasses allegations in Counts I and II, then the *Monell* claims in Counts III and IV are moot.

## II.    Bifurcation Will Reduce the Risk of Unfair Prejudice

A single trial including both the *Monell* claims and those against the individual employees will unfairly prejudice all defendants. Bifurcation of claims is an appropriate remedy to avoid such prejudice. *See* Fed. R. Civ. P. 42(b).

The introduction of evidence relating to the wide-ranging allegations of Plaintiff's *Monell* claims create substantial risk of prejudice for the individual defendants and undermines their ability to receive a fair trial. *See Veal v. Kachiroubas*, Case No. 12 C 8342, 2014 WL 321708, at *6 (N.D. Ill. Jan. 29, 2014) (granting motion to bifurcate and stay *Monell* claims until after the claims against the individual defendants were resolved). This danger weighs in favor of bifurcation. *See Tanner v. City of Waukegan*, Case No. 10 C 1645, 2011 WL 686867, at *9-10

(N.D. Ill. Feb. 16, 2011) (finding potential prejudice and granting motion to bifurcate where plaintiff sought to present misconduct and disciplinary evidence concerning non-party officers). In this situation, there is a "real danger that evidence admissible on the issues relating to conduct by [Cook County and Sheriff Dart] will contaminate the mind of the finder of fact in its consideration of the liability of the other defendants." *Ojeda-Beltran v. Lucio*, Case No. 07 C 6667, 2008 WL 2782815, at *3 (N.D. Ill. July 16, 2008) (finding potential prejudice to individual officers and granting motion to bifurcate) (cleaned up); *Lopez v. City of Chicago*, Case No. 01 C 1823, 2002 WL 335346, at *2 (N.D. Ill. Mar. 1, 2002) ("Without bifurcation, the jury would likely hear evidence against the City of various acts of alleged police misconduct committed by numerous non-party officers to establish a policy or practice. Such evidence can be prejudicial to the individual defendants."). This is because Plaintiff has already requested and presumably will seek to introduce evidence regarding alleged acts of misconduct by non-party employees to prove his *Monell* claim. *Ojeda-Beltran*, 2008 WL 2782815 at *3.

The hallmark of a Section 1983 claim is that a defendant is liable "for their own misdeeds but not for anyone else's." *Burks v. Raemisch,* 555 F.3d 592, 596 (7th Cir. 2009). Misdeeds of people other than the defendant are entirely irrelevant to the claims against that defendant. Parading non-defendant employee misconduct in front of the jury would serve as an invitation to the jury to find the defendant employees guilty by association, rather than because of their own actions. Likewise, trying *Monell* and individual claims in a single trial would prejudice Cook County and Sheriff Dart. *Monell* and its progeny provide plaintiffs with a vehicle to hold a municipality liable for its own conduct; it is not a means by which to hold a municipality liable based upon respondeat superior or vicarious liability. *See EG Milestone v. City of Monroe, Wis.*, 665 F.3d 774, 780 (7th Cir. 2011); *see also Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir.

11

2007) ("Misbehaving employees are responsible for their own conduct, units of local government are responsible only for their policies rather than misconduct by their workers."). A jury asked to weigh evidence of individual employees' misconduct and policy evidence may misconstrue the evidence or the complicated law surrounding *Monell* liability.

The claims against the Defendant employees are largely fact-specific, while the claims against the Municipality Defendants, Cook County and Sheriff Dart, are highly complex and intricate, counseling separate consideration. While the Court has the ability to alleviate prejudice through limiting instructions and rulings on motions in limine in most instances, bifurcation is the surest way to avoid prejudice in this case. *See Ackerman v. Allen*, Case No. 16 C 6199, 2017 WL 1536447, at *5-6 (N.D. Ill. Apr. 27, 2017) ("[e]vidence of other non-party officers using excessive force could lead the jury to infer that the Defendant Officers committed similar acts, even if the evidence presented at trial did not support such a finding . . . "; "while jury instructions may correct for such prejudice, bifurcation avoids it entirely").

Although it is also true that bifurcation could be granted immediately before trial, there are still compelling reasons for the Court to grant Cook County and Sheriff Dart's motion now. As discussed above, the burden of *Monell* discovery weighs in favor of bifurcation at the outset. Specifically, diverting attention from the individual claims would be a major digression and a major amount of time and effort spent on something that does not bear on the individual claims and, ultimately, could have been entirely avoidable. *See Almaraz v. Haleas*, 602 F.Supp.2d 920, 925-26 (N.D. Ill. 2008) (*Monell* discovery much broader than discovery against individual defendants and could result in lengthy and costly discovery unnecessary to the claims against the individual defendants); *see also Clarett v. Suroviak*, Case No. 09 C 6918, 2011 WL 37838, at *2 (N.D. Ill. Jan. 3, 2011) ("bifurcation likely to bring an earlier disposition of the suit because

12

bifurcation allows a bypass of discovery relating to the *Monell* claims, which can add significant, and possibly unnecessary, time, effort, cost, and complications to the discovery process").

Conversely, bifurcation and stay of the *Monell* claims does not bar Plaintiff from asserting them, should he prevail on the claims against the individual defendants. *See Andersen*, 2016 WL 7240765 at *6 (granting motion to bifurcate and stay discovery on *Monell* claims); *Castillo v. City of Chicago*, Case No. 11 C 7359, 2012 WL 1658350, at *6 (N.D. Ill. May 11, 2012) (same). If there is anything to pursue following the resolution of individual defendant claims, Plaintiff is free to do so; bifurcation does not amount to dismissal. *See Carr v. City of North Chicago*, 908 F. Supp. 2d 926, 935 (N.D. Ill. 2012) (granting motion to bifurcate and stay discovery on *Monell* claims until claims against the individual defendants were resolved).

Bifurcation and a stay of Plaintiff's *Monell* claims in this situation would reduce the risk of prejudice and narrow the focus of discovery to the claims against the Individual Defendants. Accordingly, Cook County and Sheriff Dart's motion should be granted.

## CONCLUSION

This Court should bifurcate Counts I & II against Defendants Officer Arias and Cook County employee, Susan Shebel, because it is judicially efficient, there is no prejudice, and it minimizes the complexities and burdens of this litigation. Plaintiff should be forced to prove liability against Arias and Shebel before embarking on extensive, costly discovery in Counts III and IV against the County Defendants. If Plaintiff is unable to prove liability, the *Monell* discovery pertaining to Sheriff Dart, regarding gang assaults and fights over phone use, and against Cook County, regarding denial of prescription eyeglasses, is unnecessary and improper.

WHEREFORE, Defendants COOK COUNTY and SHERIFF THOMAS DART respectfully requests that this Honorable Court enter the following Order:

1. Bifurcate Plaintiff's *Monell* claim(s), Counts III & IV, pursuant to Fed. R. Civ. P. 42(b);

2. Stay any discovery or trial of the *Monell* claims until liability has been established in Counts I & II; or

3. In the alternative, bifurcate Plaintiff's *Monell* claims against Defendants Cook County and Sheriff Dart pending resolution of any motion for summary judgment; and

4. For any other relief this Court feels reasonable and just.

Respectfully Submitted,

By:     */s/ Jason E. DeVore*
Jason E. DeVore, One of the Attorneys for Defendants

**DEVORE RADUNSKY LLC**
Jason E. DeVore (ARDC # 6242782)
Troy S. Radunsky (ARDC # 6269281)
Zachary G. Stillman (ARDC # 6342749)
230 W. Monroe Street, Ste. 230
Chicago, IL 60606
(312) 300-4479 telephone
jdevore@devoreradunsky.com
tradunsky@devoreradunsky.com
zstillman@devoreradunsky.com

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that **Defendants Cook County, Illinois and Sheriff Thomas Dart's Opposed Motion to Bifurcate and Stay Discovery on Plaintiff's *Monell* Claims w**as filed on January 26, 2023, with the Northern District of Illinois ECF System, serving a copy to all parties.

*/s/Zachary G. Stillman*
Zachary G. Stillman