

**OFFICE OF THE STATE'S ATTORNEY**
COOK COUNTY, ILLINOIS

**KIMBERLY M. FOXX**　　　　　　　　　　　　　　500 RICHARD J. DALEY CENTER
STATE'S ATTORNEY　　　　　　　　　　　　　　　　CHICAGO, ILLINOIS 60602
　　　　　　　　　　　　　　　　　　　　　　　　　(312) 603-5440

VJOSANA MATAJ
CHRISTINA FAKLIS ADAIR　　　　　　　　　　　　(312) 603 6461
ASSISTANT STATE'S ATTORNEY　　　　　　　　　Vjosana.Mataj@cookcountyil.gov
CIVIL ACTIONS BUREAU　　　　　　　　　　　　　Christina.Adair@cookcountyil.gov

January 31, 2022

<u>**VIA ELECTRONIC MAIL**</u>
Philip A. Miscimarra
Morgan Lewis
Philip.miscimarra@morganlewis.com

Re:　　*Henneberg v. Dart, et al.*, **Case No. 19 CV 7380**

Dear Counsel,

　　　　We write in response to your correspondence, dated January 12, 2022, regarding Defendants' responses to Plaintiff's discovery requests. Defendants respond to Plaintiff's individual concerns below. Because we have yet to have a Local 37.2 conference and/or both agree that we are at an impasse, any future discovery motion filed by Plaintiff related to Defendants' responses would be entirely premature.

**I.　　Cook County's Responses to Plaintiff's Request for Additional Information**

　　　*A.　　Objection that Documents and Information Are Available on PACER*

　　　Plaintiff takes issue with Defendants' objection to certain Requests and Interrogatories because Plaintiff seeks information that is publicly available on PACER. As Plaintiff's counsel, you have access to PACER and CM/ECF to conduct searches as to other lawsuits. It is not Defendants' obligation to provide publicly-available documents to Plaintiff when Plaintiff has equivalent access. Additionally, Defendants are not required to maintain a list of lawsuits filed against them (and do not have a list), especially when everything is equally available to Plaintiff on a public docket.

　　　Such "information regarding prior litigation 'can be obtained from other source that is more convenient, less burdensome, or less expensive[.]'" *Bey v. Pollard*, No. 13-CV-952-JPS, 2014 U.S. Dist. LEXIS 115901, at *8-9 (E.D. Wis. Aug. 20, 2014) (denying plaintiff's request for information publicly available by other means). The case you cite, *Biggart v. Vibra Hosp. of Springfield, LLC*, No. 19-CV-3215, 2021 U.S. Dist. LEXIS 141947, at *9 (C.D. Ill. July 30, 2021), is easily distinguishable. The court ruled on a request involving "inspection reports or evaluations

generated by any federal or state government agencies that regulate or monitor Hospitals." *Id*. Also, the requesting party noted that no public records could be found after a search. *Id*. The document request is unquestionably different than the ones made by Plaintiff here about prior lawsuits. As appointed counsel with access to PACER, you have a less burdensome and less expensive alternative to requiring Defendants to investigate and create a list of lawsuits filed against them (something they are not required to do), which will take time, money, and effort. This is especially true as Plaintiff has sued Cook County and Sheriff Dart, two parties who are sued countless times a year. You also have not indicated that you made any attempts at such searches on PACER. If you are concerned about costs associated with PACER searches, as appointed counsel, you can request your expenses be reimbursed by the court. Defendants recommend that you do so.

As a result, we are confident with Defendants' objection to Plaintiff's requests for publicly available information and will entertain further discussion on this issue if necessary.

B.     *Objections to Requests for Medical Information Based on Privacy & HIPAA*

Plaintiff also takes issue with Defendants' objection to certain Requests and Interrogatories because Plaintiff seeks information related to non-parties' medical records, grievances, and medical requests of other inmates suffering from similar health issues like Plaintiff and have been subject to assault.

The Health Insurance Portability and Accountability Act ("HIPAA") establishes national standards to protect individuals' medical records and other individually identifiable health information (collectively defined as "protected health information"). 45 CFR § 160.102. The Rule requires appropriate safeguards to protect the privacy of protected health information and sets limits and conditions on the uses and disclosures that may be made of such information without an individual's authorization. *Id.* at §§ 160.102, 160.103, 160.202, 160.203.

Plaintiff's proposal that a HIPAA protective order will protect the privacy of the pretrial detainees referenced in the documents requested still does not solve the issue that Cook County cannot produce the medical records of pre-trial detainees, who have no connection to this case, that allegedly suffered from the same medical condition as Plaintiff and/or were assaulted. Such records will not be produced without an executed HIPAA waiver from that specific detainee whose records are being released. HIPAA prohibits the disclosure of a patient's medical information without his consent. *Kizior v. Reynolds*, 2021 U.S. Dist. LEXIS 67392, *6 (S.D. Ill. April 7, 2021)(citing *See* 42 U.S.C. §§ 1320d-1 to d-7).

Moreover, detainees' medical requests or medical records from Cermak and/or Stroger Hospital are not stored based on the reason why the inmate sought medical treatment. All medical requests and medical records are stored based on the individuals' name, date of birth, and other identifying information.  Plaintiff has failed to provide the names or dates of birth for any other detainees who suffered from the same medical condition as Plaintiff and/or were assaulted, and has not provided any HIPAA executed waiver on behalf of those individuals which would allow Cook County to provide their medical records. Even more fatal to Plaintiff's request, even assuming such medical records could be released, which cannot happen without an executed

HIPAA waiver of each individual that received treatment, such information will not lead to admissible evidence under relevant case law. "Plaintiff wants to discover other complaints of mistreatment so that he can use that information to bolster his claim that defendants "mistreated" him also. *Whitmore v. Walker*, 2008 U.S. Dist. LEXIS 18976 at *1 (S.D. Ill. 2008). "However, Rule 404(b) [of the Federal Rules of Evidence] expressly forbids the use of evidence of other acts for this purpose." *Id.*

As to Plaintiff's request for detainees' grievances related to similar health issues like Plaintiff and/or complaints about assault, Defendants advise Plaintiff that detainee grievances complaining about health issues or seeking medical treatment are collected by CCDOC and delivered to Cermak. Upon receipt of a health grievance, Cermak staff will investigate and respond to the grievance in a timely matter. After Cermak has provided a response with respect to a particular grievance, that grievance and the response are returned to CCDOC. Grievances at CCDOC are not stored electronically using a computer system. Additionally, grievances at CCDOC are not stored according to the type of complaint alleged in said grievance. Instead, grievances are stored manually, according to the booking number associated with each detainee housed in CCDOC. Moreover, a single detainee has the ability to file an unlimited number of grievances at CCDOC about anything pursuant to the CCDOC grievance policies and procedures. A single detainee grievance can be a single page to multiple pages long, depending on what the detainee writes in each grievance. Accordingly, Plaintiff is requesting the Cook County Sheriff's Office to (1) identify the potentially hundreds to thousands of detainees that were housed in Division 10 over the course of approximately 6 years (Plaintiff defines "October 2015 to present" as the "relevant time frame" in his discovery requests); (2) locate the booking number for each of those detainees; and then (3) manually read and go through each and every page of all grievances ever submitted by those hundreds to thousands of detainees in search of any complaints "similar health issues like Plaintiff and assault".

"Finding these other grievances would require a review of the master files of thousands of inmates, a burden which substantially outweighs any imagined marginal probative value." *Saleh v. Pfister*, 2021 U.S. Dist. LEXIS 18053, at *11 (N.D. Ill. Feb. 1, 2021)(citing *Williamson v. Twaddell*, 2011 U.S. Dist. LEXIS 119552, at *1 (C.D. Ill. 2011). The fact that another inmate filed a grievance . . .would show only that he filed a grievance, not that the grievance had any merit or that the grievance had anything to do with this case." *Id*. "Further, allowing evidence of other lawsuits and grievances could 'result in mini-trials on the merits of those litigations, adding substantial delay to the . . . trial.'" *Gomez v. Palmer*, 2016 U.S. Dist. LEXIS 5687 at *3 (N.D. Ill. 2016). For these reasons, it is unduly burdensome, not proportional to the need of the case, and inefficient for Sheriff Dart, in his official capacity, to identify the innumerous grievances filed over more than a six-years period as requested in Plaintiff's Requests and Interrogatories.

    II.    **Sheriff Dart's Responses to Plaintiff's Request for Additional Information**

        A.    *Provision of Daily Roster Division 10 & Daily Attendance Sheet Instead of Identifying Correctional Officer Names.*

In Plaintiff's Interrogatory Nos. 11 and 12, he requests Sheriff Dart to identify (a) each Correctional Officer who was posted to the "day shift" or "second shift" in the Correctional

Exhibit D

Officers "bubble" located directly in front of the physical location of the inmate telephone system in Division 10 of the Cook County Jail, and (b) each employee at Cook County Jail who participated in or witnessed the Incident that occurred in June 2019 and to describe his or her role. Sheriff Dart correctly directed Plaintiff to Daily Roster Division 10 & Daily Attendance Sheet, dated June 17, 2019, the date in which the alleged incident took place. At that time, Plaintiff was housed in Division 10, Tier 3B. *See* Plaintiff's Housing History, Bates Labeled CCSAO Henneberg 000001-2. The June 17, 2019 Daily Roster Division 10 & Daily Attendance Sheet shows that Officer Aries, J. was the officer working in Division 10, Tier 3B during the 7AM-3PM shift.

Finally, the Incident Report shows that Officer Aries was the only CCDOC personnel involved in witnessing the June 17, 2019 incident. *See* Bates Labeled CCSAO Henneberg 001720. Based on our investigation, Officer Aries' full name is Jorge Aries and his title on June 17, 2019 was Correctional Officer. Officer Aries' job responsibilities at the time of the alleged incident included, but was not limited to, monitoring detainees' behavior and to report any unusual activity to ensure the safety and security in the jail, conducting regular head counts of detainees assigned to the tier, and conducting regular searches of the detainees' areas like cells, showers, and recreational spaces for unauthorized items.

    B.    *Objections to Requests for Information on Other Assaults and Gang Activity Based on Privacy*

In Plaintiff's Request Nos. 22, 30, 31, 32, 33, 34, and 35 he seeks documents: (a) relating to reports, complaints, warnings, grievances, or statements from other inmates about threats or restrictions placed on the telephones by "gang members" or fellow inmates; (b) identifying inmates who suffered similar assaults or threats; (c) otherwise relating to any gang activity or other disputes over the inmate telephones; and (d) reflecting recommendations or decisions about the same.

Defendants objected based on the overbroad and unduly burdensome nature of these requests, relevance, and the violation of privacy rights of non-parties. Plaintiff's proposal for a Confidentiality Order is not going to address Defendants' objections. According to the CCDOC Inmate Handbook, detainees should fill out a grievance form for any complaints, report of problems, or warnings that their safety is being at risk. *See* Inmate Handbook in effect on June 17, 2019, bates labeled CCSAO Henneberg 0001750. As explained in Part I, subsection B, grievances at CCDOC are not stored electronically in a computer system. Additionally, grievances are not stored according to the type of complaint alleged by the inmate in said grievance. Instead**,** grievances are stored manually, according to the booking number associated with each detainee housed in CCDOC. Moreover, a single detainee has the ability to file an unlimited number of grievances at CCDOC about anything pursuant to the CCDOC grievance policies and procedures.

A single detainee grievance can be a single page to multiple pages long, depending on what the detainee writes in each grievance. Accordingly, Plaintiff is requesting the Cook County Sheriff's Office to: (1) identify the potentially hundreds to thousands of detainees that were housed in Division 10 over the course of approximately 6 years (Plaintiff defines "October 2015 to present" as the "relevant time frame" in his discovery requests); (2) locate the booking number for each of those detainees; and then (3) manually read and go through each and every page of all

grievances ever submitted by those hundreds to thousands of detainees in search of any complaints about "threats or restrictions placed on the telephone by 'gang members" or fellow inmates." For these reasons, it is unduly burdensome for Defendants to identify the innumerous grievances filed over more than a six-years period as requested in Plaintiff's Requests. Even if Plaintiff's request would be narrowed to the time he was housed at CCDOC, from November 29, 2018 to December 3, 20219, it would still be impossible for Sheriff Dart to read the innumerous grievances filed during that time and identify "reports, complaints, warnings, grievances, or statements from other inmates about threats or restrictions placed on the telephones by "gang members" or fellow inmates; or identifying inmates who suffered similar assaults or threats."

In addition, any "gang activities" or "other disputes over the telephone system" would be identified by looking at grievances or incident reports. Similar to grievances, incident reports at CCDOC are stored according to the booking number associated with each detainee involved in such incidents. Incident reports are not stored based on the reason why the inmates got involved in a dispute or argument. Therefore, it is impossible for the Cook County Sheriff's Office to identify "gang activities" or "other disputes over the telephone system" as requested by Plaintiff without a specific booking number of an inmate that would have been involved in such incidents.

Finally, any recommendations or decisions regarding issues related to "gang activities" or "other disputes over the telephone system" would be part of the response the inmates get in the grievance they file or in the incident report if a dispute actually did take place. As discussed above, Plaintiff has failed to provide the booking number of any other detainee that would have grieved about these issues or was involved in an incident related to "gang activities" or "other disputes over the telephone system". "Discovery sought must not only be relevant, but it must be proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Saleh*, 2021 U.S. Dist. LEXIS 18053, at *5 (citing Fed. R. Civ. P. 26(b)(1)); *see also Buonavolanto v. LG Chem, Ltd.*, 2019 U.S. Dist. LEXIS 229629 at *2 (N.D. Ill. 2019); *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019)). Proportionality, like other concepts, requires a common sense and experiential assessment. *See Bank Direct Capital Fin., LLC v. Capital Premium Fin., Inc.*, 326 F.R.D. 171, 175 (N.D. Ill. 2018).

For the reasons stated above, it is impossible, unduly burdensome, not proportional to the need of the case, and inefficient for Defendants to provide responsive documents to Plaintiff's aforementioned Requests.

C. *Request No. 23 Seeking Reports or Complaints*

In Request No. 22, Plaintiff seeks documents reflecting any reports or complaints from other inmates to any staff member, employee, or representative of Cook County Jail about threats or restrictions placed on the use of inmate telephones by gang member or other inmates. Any documented report or complaint regarding the "threats" or "restrictions placed on the use of inmate telephones" would be in the form of inmate grievances. As explained above, grievances are not stored according to the type of complaint alleged by the inmate in said grievance. Instead,

5

grievances are stored according to the booking number associated with each detainee housed in CCDOC. For the same reasons as above, this Request cannot be answered.

### D. Request No. 23 Seeking Documents Reflecting Details of the Incident

In response to Plaintiff's request, Defendants will produce the interviews of Plaintiff and Inmate Barker, conducted by Sgt. Belletiere on June 17, 2019. These interviews are in video format, labeled MVI_0998 and MVI_0999.

### E. Request No. 27 Seeking All Surveillance Footage

In request No. 27 Plaintiff sought "all surveillance footage of Division 10 of the Cook County Jail, the inmate telephone area, the dayroom, and the 'bubble' located near the inmate telephone system in Division 10 of the Cook County Jail *at the time* of the Incident". In response, Sheriff Dart produced two surveillance footages labeled DIV_10-CAM_3.047_Tier_3B_Front-2019-06-17_10h35min00s000ms, and DIV_10-CAM_3.048_Tier_3B_Rear-2019-06-17_10h35min00s000ms, which are the only videos that show the actual incident.

Defendants will produce additional video footage recording the events immediately after the June 17, 2019 incident took place. At this time, this is the only video footage related to the June 17, 2019 incident in the possession of Defendants' counsel.

### III. Nurse Shebel's Response to Request No. 21

In Plaintiff's Request No. 21, he requests Defendant Shebel's "personnel records, scope of employment, job description, and other employment responsibilities at Cook County Jail or Cermak Health Services." Courts have discretion to limit the discovery of employee personnel files in order to protect employees' personal identifying information, as well as curtail the expense and intrusiveness. *Balderston v. Fairbanks Morse Engine Div. of Colec. Indus.*, 328 F.3d 309, 320 (7th Cir. 2003). This includes the discretion to deny discovery of employment records when it is reasonably determined that such discovery is overly broad and invasive. *Vermillion v. Corizon Health, Inc.*, 2019 U.S. App. LEXIS 9839, at *9-10 (7th Cir. Apr. 3, 2019).

Here, disclosing the personnel file of Defendant Shebel and other employment-related documents creates a serious safety concern as she works in a jail setting and depending on their contents, may be considered invasive. Although Defendant Shebel stands on her objections, including that this request is better-suited for her deposition, she is in the process of obtaining her personnel file. Her job description for a Clinical Performance Improvement Analyst will be provided to Plaintiff. So you are aware, a personnel file is always full of personal identifying information, which will take substantial time to thoroughly redact if produced. An agreed protective order covering Defendant Shebel's personnel file will also need to be entered prior to tendering any relevant documents related to this request.

Should you have any questions regarding the foregoing, please do not hesitate to contact us. Again, we are currently not at an impasse and any motion to compel would be premature as we have not had a formal Local 37.2 conference. For the reasons stated above, we do

Exhibit D

not currently agree to your proposed confidentiality order and can discuss further if you would like to. Thank you for your time and cooperation.

                                Respectfully submitted,

                                KIMBERLY M. FOXX
                                State's Attorney of Cook County

By:    */s/ Vjosana A. Mataj*
           Vjosana A. Mataj
           Christina Faklis Adair
           Assistant State's Attorney
           500 Richard J. Daley Center
           Chicago, Illinois 60602
           Vjosana.Mataj@cookcountyil.gov
           Christina.Adair@cookcountyil.gov
           *Counsel for Defendants*

Exhibit D