UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DONALD HENNEBERG, ) | |
| ) | |
| Plaintiff, ) | Case Nos. 19-cv-07380 |
| ) | 19-cv-07382 |
| v. ) | 19-cv-07883 |
| ) | |
| TOM DART, SUSAN SHEBEL, R.N., ) | |
| JOHN DOE MEDICAL DEFENDANTS, ) | Honorable Sara L. Ellis |
| CORRECTIONAL OFFICER JORGE ) | |
| ARIAS, and COOK COUNTY, ILLINOIS, ) | |
| et al. ) | |
| ) | |
| Defendants. ) | |

**OPPOSITION TO DEFENDANTS' MOTION TO BIFURCATE AND STAY DISCOVERY ON PLAINTIFF'S *MONELL* CLAIMS, COUNTS III & IV**

For well over one year, Defendants Sheriff Tom Dart ("Sheriff Dart"); Susan Shebel, R.N. ("Nurse Shebel"); Cook County, Illinois; and Correctional Officer Jorge Arias ("Officer Arias") (together, "Defendants") have refused to produce documents to Plaintiff Donald Henneberg that are relevant to and well within the scope of discovery for his individual claims against Nurse Shebel and Officer Arias and his *Monell* claims against Sheriff Dart and Cook County. After more than one year, Defendants have produced to Mr. Henneberg little more than his own inmate file, claiming that it would be too burdensome for them to do more. Only after Mr. Henneberg obtained a Court order requiring Defendants to do so, they produced a spreadsheet reflecting incidents of inmate fights involving the telephones.

Now, when it appears that Defendants will finally be required to produce even a portion of the documents that Mr. Henneberg has been seeking since September 2021, Defendants filed this Motion to Bifurcate and Stay Discovery on Plaintiff's *Monell* Claims, arguing that bifurcation would allow Defendants to avoid "burdensome" discovery and "promote[] judicial economy." ECF 102 at 4, 9. In doing so, Defendants improperly used bifurcation as a vehicle to try to escape their obligations and to claim that discovery in general is too burdensome.

Bifurcating this action and staying discovery that is relevant **both** to Mr. Henneberg's individual claims against Nurse Shebel and Officer Arias and to Mr. Henneberg's *Monell* claims against Sheriff Dart and Cook County and that Mr. Henneberg has been seeking for **well over one year** would not achieve the policy goals of Federal Rule of Civil Procedure 42(b) and would unfairly prejudice Mr. Henneberg. Mr. Henneberg respectfully requests that this Court deny Defendants' Motion to Bifurcate.

## BACKGROUND

I. RELEVANT FACTUAL BACKGROUND

In November 2018, Mr. Henneberg was taken into the custody of the Cook County Jail as a pretrial detainee. ECF 65 ¶¶ 16–17. While in custody, Mr. Henneberg discovered that gang-affiliated inmates controlled the telephone system and refused to allow other inmates to use the phones, using threats and violence. ECF 65 ¶¶ 36–38. Mr. Henneberg observed multiple physical altercations between the gang-affiliated inmates and inmates trying to use the phones, ECF 65 ¶ 39, and repeatedly warned Correctional Officers about the serious risk this posed, ECF 65 ¶ 41. Officer Arias had dealings with other Correctional Officers, who understood and were informed of such gang-affiliated control over the phones. ECF 65 ¶ 43. But despite Mr. Henneberg's warnings, Officer Arias took no action to address it. ECF 65 ¶¶ 45–46.

Ultimately, Mr. Henneberg tried to use the telephones one day but was blocked by a gang-affiliated inmate, prompting verbal and physical confrontation, including pushing and shoving, all in direct view of Officer Arias, who saw what was happening but did not break up the confrontation or remove the gang-affiliated inmates from their control of the phones. ECF 65 ¶¶ 50–54. Officer Arias then saw the gang-affiliated inmate attack Mr. Henneberg, hitting Mr. Henneberg on the head and causing him to lose consciousness and require hospitalization, but failed to prevent the attack. ECF 65 ¶¶ 56–60.

## II.    PROCEDURAL HISTORY

Throughout the entirety of this case, Defendants have repeatedly refused to produce documents in response to Mr. Henneberg's reasonable requests. On November 7, 2019, Mr. Henneberg, proceeding *pro se*, commenced this action, Case No. 19-cv-07382, ECF 1, 4, and the undersigned was appointed as counsel on February 19, 2020, ECF 8. Mr. Henneberg then served on Sheriff Dart a subpoena for documents, which in part requested information that would reveal the identity of the correctional officer who was assigned to the area where Mr. Henneberg was attacked. But Sheriff Dart failed to provide any documents reflecting the identities of the Correctional Officers, including Officer Arias. On January 15, 2021, Mr. Henneberg filed the Amended Complaint under 42 U.S.C. § 1983, naming among other Defendants, John Doe Correctional Officer No. 1. ECF 29. In their initial disclosures served in April 2021, Defendants again failed to identify Officer Arias as John Doe Correctional Officer No. 1.

On September 24, 2021, Mr. Henneberg served his First Set of Requests for Production of Documents and Interrogatories on Nurse Shebel, Sheriff Dart, and Cook County. Among other objections, Defendants objected to Requests and Interrogatories seeking documents and identification of other inmates suffering from similar medical issues and assaults or who filed similar medical requests or grievances based (1) on the privacy and HIPAA rights of other pretrial detainees and (2) on the burden of performing a manual review of non-computerized documents and files. *See* Exhibits A–C, Plaintiff's Requests for Production. Sheriff Dart also still did not provide Jorge Arias's first name.

On January 12, 2022, Mr. Henneberg was forced to send a letter to Defendants outlining the many deficiencies in their discovery responses and specifically asking Defendants to supply Jorge Arias' first name. Upon learning Correctional Officer Arias's full name, Mr. Henneberg filed the

3

Second Amended Complaint on April 26, 2022. *See* ECF 65. However, Defendants still refused to produce the documents Mr. Henneberg requested, citing privacy concerns and undue burden.

On April 8, 2022, the Court entered an Agreed Confidentiality Order, which specifically protects "medical information concerning any individual" and "personal identity information." ECF 59 ¶ 2. But still, Defendants would not produce the requested documents, claiming it was overly burdensome to do so. Pursuant to Local Rule 37.2, the parties engaged in two meet-and-confer telephone conferences, on April 22, 2022, and May 16, 2022, and followed up on these telephone conferences via email summations. On November 23, 2022, the Parties filed a Joint Discovery Motion regarding Defendants' refusal to produce ***any*** documents reflecting similar incidents. ECF 85. On November 30, 2022, the Court held a telephone conference on the Motion, followed by a January 4, 2023 in-person hearing. At the January 4 hearing, the Court ordered Defendants to produce certain incident reports, followed by certain other grievances and documents that Mr. Henneberg would specify in supplemental document requests. *See* ECF 102, Ex. B, Jan. 4, 2023 Hearing Transcript. On January 13, 2023, the Parties filed a Proposed Joint Scheduling Order, outlining the timing for this process. ECF 97. Thirteen days later, on January 26, 2023, Defendants filed this Motion to Bifurcate and Stay *Monell* Discovery. ECF 102.

## **ARGUMENT**

Rule 42(b) allows a court to order a separate trial of one or more issues or claims "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). In deciding whether to bifurcate discovery and trial, a "court must balance considerations of convenience, economy, expedition, and prejudice, depending on the peculiar facts and circumstances of each case." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008). The decision of whether to bifurcate is within "the court's discretion and will be overturned only upon a clear showing of abuse." *Id*.

4

I. **DEFENDANTS HAVE WAIVED ANY ARGUMENT TO BIFURCATE DISCOVERY**

After more than two years litigating this case and eighteen months into fact discovery, Defendants have waived any argument that discovery should be bifurcated. Mr. Henneberg filed his Amended Complaint on January 15, 2021, ECF 29, and Defendants moved to dismiss on March 15, 2021, ECF 40. Then, on March 23, 2021, the parties filed a Joint Initial Status Report, in which Defendants made no mention of bifurcation. *See* ECF 42. Defendants answered the Complaint on September 13, 2021, again making no attempt at bifurcation. *See* ECF 55. The parties then engaged in extensive discovery beginning with Mr. Henneberg's service of Interrogatories and Requests for Production on September 24, 2021, followed by near-constant back-and-forth unsuccessful efforts to resolve discovery disputes, culminating with the filing of a Joint Discovery Motion on November 23, 2022, all with no effort by Defendants to bifurcate the case. *See* ECF 85. The parties then filed a second Joint Status Report on June 23, 2022, ECF 81, and a Proposed Joint Scheduling Order on January 13, 2023, ECF 97, both of which made no reference to bifurcation. At this point, after more than two years litigating this case—on all claims—without a hint that Defendants believed discovery or the merits warranted bifurcation, Defendants should be deemed to have waived or be estopped from seeking bifurcation now. Defendants' Motion should be denied for this reason alone.

II. **BIFURCATION WILL ADD UNNECESSARY COMPLEXITY AND CONFUSION OF THE DISCOVERY PROCESS**

Defendants' Motion is merely an attempt to avoid what they claim are "burdensome and potentially unnecessary discovery and litigation costs," ECF 102 at 4, after failing for more than one year to comply with their discovery obligations and refusing to produce documents to which Mr. Henneberg is entitled to litigate **both** the individual claims and the *Monell* claims. Granting bifurcation in this context would only add to the complexity and confusion that Defendants have already sewn in this case.

5

A recent timeline of these events is instructive:

| Date | Event |
| --- | --- |
| **April 23, 2021** | Defendants serve Initial Disclosures and fail to identify Officer Arias. |
| **September 23, 2021** | Defendants serve Supplemental Initial Disclosures and again fail to identify Officer Arias. |
| **September 24, 2021** | Mr. Henneberg serves Requests for Production and Interrogatories on Nurse Shebel, Sheriff Dart, and Cook County. |
| **November & December 2021** | Nurse Shebel, Sheriff Dart, and Cook County provide responses and objections, largely refusing to provide documents (1) identifying other inmates suffering from similar medical issues and assaults and (2) related to other state or federal investigations, inquiries, consent decrees, or oversight of Cook County Jail or Cermak Health Services involving failure to provide adequate medical care and reports or complaints of assault by other inmates. Exhibits A–C. |
| **January 12, 2022** | Mr. Henneberg serves Defendants with a deficiency letter. |
| **January 23, 2022** | Defendants respond to Mr. Henneberg's deficiency letter. |
| **March 23, 2022** | Mr. Henneberg replies to Defendants' response to his deficiency letter. |
| **April 26, 2022** | After learning John Doe Correctional Officer No. 1's identity, Mr. Henneberg files Second Amended Complaint. ECF 65. |
| **April & May 2022** | Parties meet and confer regarding their discovery disputes, followed by email exchanges. |
| **June 2022** | Counsel for Defendants withdraw their appearance and current counsel enters appearance on behalf of Defendants. ECF 73–75, 77–78. |
| **June 7, 2022** | Defendants file Answer to Second Amended Complaint. ECF 76. |
| **July 22, 2022** | Mr. Henneberg serves Requests for Production and Interrogatories on Officer Arias, similar to those served on the other Defendants. |
| **August 10, 2022** | Officer Arias provides responses and objections, largely claiming that the requests were overly burdensome or that he was not in possession of the documents. Exhibit D. |
| **November 23, 2022** | Parties file a Joint Discovery Motion regarding Defendants' refusal to produce documents. ECF 85. |
| **November 30, 2022** | The Court holds a telephone conference on the Motion. |
| **January 4, 2023** | The Court holds an in-person hearing on the Motion, at which the Court orders Defendants to produce certain incident reports, followed by certain other grievances and documents that Mr. Henneberg would specify in supplemental document requests. |
| **January 12, 2023** | Parties disagree about the scope of "incident reports" to be identified by Defendants, which will then be reviewed by Mr. Henneberg's counsel to |

6

|  | identify specific inmates or incidents that would provide the basis for Defendants to conduct a manual search for grievances related to detainees identified by Mr. Henneberg in the incident reports. Mr. Henneberg argues that the "incident report" search should include production of incident reports from 1/1/2015 to 12/31/2019 involving assaults between gang members or other inmates, some of which may involve the use of telephones by inmates, and Defendants contend that the "incident report" search should only include production of incident reports involving assaults relating to the use of telephones by inmates. |
|---|---|
| **January 13, 2023** | Parties file Proposed Joint Scheduling Order, laying out the timing for Defendants to make certain document productions. ECF 97. |
| **January 26, 2023** | Defendants file Motion to Bifurcate and Stay Discovery. ECF 102. |
| **February 2, 2023** | Defendants produce an excel spreadsheet of incidents involving inmate assaults *only* relating to the use of telephones. |
| **February 13, 2023** | Mr. Henneberg files Motion to Amend Scheduling Order in light of Defendants' Motion to Bifurcate and Stay Discovery and the Parties' failure to resolve the dispute over the scope of incident reports that Defendants were required to produce. |

Against this backdrop, Defendants filed this Motion to Bifurcate as yet another tool to escape their discovery obligations, which if granted, will only weave further complexity and delay into this case and lead to additional discovery disputes. This is particularly so where the *Monell* discovery overlaps with the discovery relevant to the claims against Nurse Shebel and Officer Arias. Thus, "[i]f the Court were to grant the bifurcation motion, the need for the parties to separate *Monell* evidence from individual liability evidence may further complicate rather than simplify these proceedings." *Terry v. Cook Cnty. Dep't of Corr.*, No. 09C3093, 2010 WL 2720754, at *3 (N.D. Ill. July 8, 2010). Indeed, "much of the evidence required to litigate the individual claims will be relevant to the *Monell* claim and vice a versa, such that bifurcation could result in two rounds of depositions and document production." *Maysonet v. Guevara*, No. 18-CV-2342, 2020 WL 3100840, at *3 (N.D. Ill. June 11, 2020). Courts in the Seventh Circuit consistently hold that "forcing a court to resolve constant disputes about discovery requests' connection to *Monell* liability can introduce additional confusion to a matter and make litigation *less* efficient." *Estate of Loury*

7

*by Hudson v. City of Chicago*, No. 16-CV-04452, 2017 WL 1425594, at *3 (N.D. Ill. Apr. 20, 2017) (emphasis added) (collecting cases).

A comparison between Mr. Henneberg's requests to Nurse Shebel and Cook County and to Officer Arias and Sheriff Dart illustrates that the documents and evidence that Mr. Henneberg seeks are relevant to **both** the individual claims and the *Monell* claims. Regarding Mr. Henneberg's claim based on his failure to be provided eyeglasses despite his repeated requests, many of Mr. Henneberg's document requests to Nurse Shebel and to Cook County are identical. Below are a few examples:

- "All Documents reflecting the training, supervision, and discipline of individual employees and agents of Cook County Jail and Cermak Health Services regarding (a) processing medical request forms or grievances requesting medical care; (b) responding to medical requests and grievances requesting medical care and expressing concerns about medical or mental health; and (c) providing medical, mental health, or optometric care to inmates, including but not limited to training regarding the Policies in effect during the Relevant Period." *Compare* Exhibit A ¶ 13, *with* Exhibit C ¶ 12.

- "All Documents identifying all inmates presenting with, diagnosed with, or treated for deficient vision or other optometric issues at the Cook County Jail during the Relevant Period." *Compare* Exhibit A ¶ 18, *with* Exhibit C ¶ 17.

- "All Documents identifying all inmates who requested or filed a grievance related to medical care or deficient vision or other optometric issues at the Cook County Jail during the Relevant Period." *Compare* Exhibit A ¶ 19, *with* Exhibit C ¶ 18.

For instance, not only are documents reflecting the treatment of other inmates relevant to establishing a pattern of conduct, but they are also relevant to determining whether Nurse Shebel's conduct was consistent with the policy of the Cook County Jail and whether her treatment of Mr. Henneberg differed from the way other Cook County Jail employees in her role treated inmate optometric issues. Similarly, grievances related to medical care filed by other inmates are not only relevant to proving a policy or practice for Mr. Henneberg's *Monell* claim, but they are also relevant to determining whether Nurse Shebel treated other inmate grievances the same way and whether that treatment differed from the way others in her role addressed grievances.

A comparison of Mr. Henneberg's document requests to Officer Arias and to Sheriff Dart also reveals that many are identical and that there is extensive overlap in the evidence relevant to the claim against Officer Arias and to the claim against Sheriff Dart. A few examples follow:

- "All Documents identifying inmates who suffered assaults, batteries, attacks, or threats by gang members (including, but not limited to, the 'Latin Kings' or any other gang groups) in Cook County Jail during the Relevant Period." *Compare* Exhibit D ¶ 21, *with* Exhibit B ¶ 30.

- "All Documents related to any gang activity, inmate control, violence, disputes, or other altercations among inmates related to the inmate telephones in the Cook County Jail, including but not limited to any inmate grievances, discipline, surveillance footage, or other records related to same during the Relevant Period." *Compare* Exhibit D ¶ 24, *with* Exhibit B ¶ 33.

- "All Documents reflecting or relating to real or perceived assaults, batteries, or threats by gang members (including, but not limited to, the 'Latin Kings' or any other gang groups) in Cook County Jail during the Relevant Period." *Compare* Exhibit D ¶ 25, *with* Exhibit B ¶ 34.

Like the medical claims, the evidence relevant to establish Mr. Henneberg's individual claims against Officer Arias and his *Monell* claims against Sheriff Dart and Cook County overlaps significantly. Documents identifying other inmates who suffered assault and reflecting gang activity or violence in the Cook County Jail are relevant to establishing Officer Arias's knowledge of this issue and how other incidents were handled, which is necessary to proving that his conduct was "objectively unreasonable." *McCann v. Ogle County*, 909 F.3d 881, 886 (7th Cir. 2018). At a bare minimum, each document reflecting similar assaults or gang-related violence against an inmate in which **Officer Arias** was involved is relevant to Mr. Henneberg's individual claim against Officer Arias and his *Monell* claim. Defendants have repeatedly refused to produce even those records.

In short, with many of the same document requests directed at both the individual and *Monell* defendants, and with overlapping evidence relevant to proving both sets of claims, bifurcating and staying *Monell* discovery will only lead to repeated discovery disputes about whether Mr. Henneberg's discovery requests invoke only the *Monell* claims or also are relevant to the individual

9

claims. *See Estate of Loury*, 2017 WL 1425594, at *3 ("Given the factual overlap between the *Monell* claims and the constitutional claims, a stay of *Monell* discovery will likely result in continual discovery disputes between the parties about whether Plaintiff's discovery requests invoke h[is] *Monell* claim or her other claims."). Accordingly, bifurcation will further complicate and delay this action and Mr. Henneberg's right to prosecute his claims.

### III. BIFURCATION WOULD NOT SERVE JUDICIAL ECONOMY OR EXPEDITE THE LITIGATION

Defendants also contend that bifurcating the claims and staying discovery will serve judicial economy because "a plaintiff cannot prevail on a *Monell* claim without first establishing an underlying constitutional violation" and if Mr. Henneberg fails in his claims against individual employees, his *Monell* claims will become moot. ECF 102 at 4, 10. But Defendants are incorrect the Mr. Henneberg cannot prevail on his *Monell* claims without establishing that either Nurse Shebel or Officer Arias violated Mr. Henneberg's Fourteenth Amendment rights.

It is well-settled in the Seventh Circuit that "a municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an *inconsistent* verdict." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010) (emphasis in original). The most common situation in which this occurs is when a defendant asserts the defense of qualified immunity. For example, "when a plaintiff loses his claim against a police officer based on qualified immunity, he can still recover against the municipality if he can prove a constitutional deprivation caused by a municipal policy or custom." *Medina v. City of Chicago*, 100 F. Supp. 2d 893, 896 (N.D. Ill. 2000).

Nurse Shebel and Officer Arias have asserted the defense of qualified immunity, ECF 76 at 30, which "creates the possibility that a jury could find [Sheriff Dart and Cook County] liable for *Monell* violations despite [Nurse Shebel and Officer Arias] being shielded from liability," *Maysonet*, 2020 WL 3100840, at *2. Indeed, a jury could find that Nurse Shebel and Officer Arias are "immune

10

and not individually liable, while also finding that Plaintiff's constitutional rights were indeed violated and that the [Cook County or Sheriff Dart's] policies caused the harm." *Estate of Loury*, 2017 WL 1425594, at *3; *see also Arsberry v. Wexford Health Sources, Inc.*, No. 17 CV 50044, 2021 WL 4942039, at *2 (N.D. Ill. Oct. 22, 2021) (instructing that "it is possible that a jury could find that the individual defendants were not deliberately indifferent to Plaintiff's medical needs, but rather that they could not respond adequately because of Wexford's unconstitutional policies").

If this Court were to grant bifurcation and that situation were to occur, "where Plaintiff's *Monell* claim is ultimately addressed on the merits after the completion of discovery and a trial of the other claims, bifurcation would in fact 'add unnecessary complexity and confusion,' and 'create additional costs and inefficiencies . . . without achieving any offsetting benefit.'" *Estate of Loury*, 2017 WL 1425594, at *3 (omission in original) (quoting *Cadiz v. Kruger*, No. 06 C 5463, 2007 WL 4293976, at *5 (N.D. Ill. Nov. 29, 2007)). Similarly, if this Court were to grant bifurcation and stay discovery on Mr. Henneberg's claims against the *Monell* Defendants, "there might be a need for two rounds of discovery, two trials to prepare for, and two trials that would include much redundant evidence," which "would excessively prolong this case and would not serve judicial economy." *Terry*, 2010 WL 2720754, at *3. Accordingly, "it is premature to assume 'that there can be no municipal liability in the absence of underlying individual liability.'" *Id.* (quoting *Estate of McIntosh v. City of Chicago*, No. 15 C 1920, 2015 WL 5164080, at *8 (N.D. Ill. Sept. 2, 2015)).

### IV. DEFENDANTS WILL NOT BE PREJUDICED BY DISCOVERY AND TRIAL ON ALL CLAIMS

Defendants' allegation that a single trial of all claims will unfairly prejudice Defendants, ECF 102 at 10–13, is speculative when almost no evidence has been produced, fails to meaningfully consider that prejudice can be cured with limiting instructions, and is outweighed by the prejudice to Mr. Henneberg.

11

Courts in the Seventh Circuit "have rejected bifurcation arguments based on undue prejudice because it is speculative to determine at the discovery stage what evidence will actually be offered at trial and whether that evidence will unfairly prejudice either the defendant officers or the municipality." *Estate of Loury*, 2017 WL 1425594, at *4. Particularly in this case when ***virtually no*** *Monell* discovery has been produced, "neither the parties nor the Court has the least idea what evidence actually would be offered at trial on the *Monell* claim or just how prejudicial that evidence might actually be to the officers." *Cadiz*, 2007 WL 4293976, at *6 (quoting *Medina*, 100 F. Supp. 2d at 897). In other words, although this case is not at the early stages of litigation, neither the Court nor Mr. Henneberg can determine what evidence the parties intend to introduce at trial because Defendants have produced very little discovery at all—whether *Monell* discovery or otherwise. *See Love v. City of Chicago*, 363 F. Supp. 3d 867, 875 (N.D. Ill. 2019) (Ellis, J.) ("The Court cannot determine the evidence the parties intend to introduce at trial, making it difficult to assess the potential prejudice the Defendant Officers and the City would face if the individual and municipal liability claims proceeded to trial together.").

Furthermore, any prejudice to Nurse Shebel and Officer Arias from trying the case jointly would be cured through the Court's limiting instructions, and "our trial system 'relies upon the ability of a jury to follow instructions.'" *Houskins*, 549 F.3d at 496 (quoting *Opper v. United States*, 348 U.S. 84, 95 (1954)) (holding court properly declined to bifurcate trial where "there was an overlap in the facts, evidence, and witnesses required" between plaintiff's individual claims and *Monell* claims and court gave a limiting instruction). In sum, any risk of unfair prejudice is speculative and outweighed by the prejudice to Mr. Henneberg, particularly when Defendants have produced almost no discovery that could allow the Court to evaluate what evidence actually would be produced at trial.

V.   **MR. HENNEBERG WILL BE PREJUDICED IF DISCOVERY AND TRIAL ARE BIFURCATED**

In their Motion, Defendants conveniently omit a portion of the standard for bifurcation under Rule 42(b). In addition to the above criteria, before bifurcating claims, "the court also 'must be satisfied that the decision to bifurcate does not unfairly prejudice the non-moving party.'" *Arsberry*, 2021 WL 4942039, at *2 (quoting *Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1121 (7th Cir. 1999)). Bifurcation would severely prejudice Mr. Henneberg in a case like this where he has already been repeatedly delayed from obtaining relevant discovery and advancing his claims.

Mr. Henneberg's case has been ongoing since November 2019. Throughout this time, a persistent pattern has emerged of Defendants attempting to prevent Mr. Henneberg from obtaining the documents he needs—and to which he is entitled under the Federal Rules of Civil Procedure—to litigate his claims. This pattern began with Defendant's repeated failure to provide Mr. Henneberg with the name of John Doe Correctional Officer No. 1, delaying Mr. Henneberg from being able to amend his complaint to name Officer Arias as the proper defendant. This pattern continued throughout the past more than one year, when Defendants have refused to produce documents to Mr. Henneberg that are relevant to **both** his individual and *Monell* claims. Mr. Henneberg also is in poor health, so "[t]he risk of prejudice in waiting for a summary judgment ruling or verdict on the claims against the individual defendants before proceeding to *Monell* discovery is especially pronounced." *See Arsberry*, 2021 WL 4942039, at *3. When this case is already over three years old, "[u]nnecessarily delaying the final resolution only increases the risk of prejudice against him." *See id.*

Finally, Defendants' comment that "the *Monell* claim will add little monetary value to his damages" is misplaced. *See* ECF 102 at 9. Defendants' remark "overlooks the important nonmonetary considerations a plaintiff has in litigating a *Monell* claim against a municipality" and "misunderstands the policy value in finding that [Defendants'] policy and practices were

13

constitutionally deficient, and the precedential value of such findings for other plaintiffs in future cases who might seek to hold [Defendants] liable for similar policies." *Maysonet*, 2020 WL 3100840, at *4 (citation omitted). In short, after stonewalling Mr. Henneberg for more than one year from the evidence he needs to establish both his individual claims **and** his *Monell* claims, granting bifurcation would only further delay Mr. Henneberg from a final resolution of his case and from the policy value of litigating his *Monell* claims, resulting in unfair prejudice to him.

## CONCLUSION

For all these reasons, Mr. Henneberg respectfully requests that the Court deny the Motion to Bifurcate and Stay Discovery.

Dated: February 21, 2023

Respectfully submitted,

By: /s/ *Liza Fleming*
Philip A. Miscimarra
Maria E. Doukas
Liza B. Fleming (*pro hac vice*)
Morgan, Lewis & Bockius LLP
110 N. Wacker Drive, Suite 2800
Chicago, IL 60606-1511
Phone: 312.324.1000
Fax: 312.324.1001
philip.miscimarra@morganlewis.com
maria.doukas@morganlewis.com
liza.fleming@morganlewsi.com

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing document was served via CM/ECF on February 21, 2023 upon all counsel of record.

/s/ *Liza Fleming*
Liza Fleming