UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DONALD HENNEBERG, ) | |
| ) | |
| Plaintiff, ) | Case Nos. 19-cv-07380 |
| ) | |
| v. ) | |
| ) | |
| SHERIFF DART, SUSAN SHEBEL, R.N., ) | |
| and COOK COUNTY, ILLINOIS et al. ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO BIFURCATE AND STAY DISCOVERY ON PLAINTIFF'S *MONELL* CLAIMS, COUNTS III & IV**

NOW COME Defendants, SHERIFF THOMAS DART ("Sheriff Dart"), SUSAN SHEBEL, and COOK COUNTY, ILLINOIS ("Cook County") (collectively, "Defendants"), by and through their attorneys Jason E. DeVore and Troy S. Radunsky of DeVore Radunsky LLC, pursuant to Federal Rule of Civil Procedure 42(b), and for their Reply in Support of their Motion to Bifurcate and Stay Discovery, state as follows:

**BACKGROUND**

This matter involves a claim regarding plaintiff's request for eyeglasses that Defendants provided to him, and a single incident on June 17, 2019 that allegedly arose from Plaintiff's interaction with another detainee regarding making a phone call. Dckt. No. 65.

During a March 7, 2023, court appearance this Court reiterated the same directives that were made clear during a January 4, 2023, hearing where all parties were present at an in-person hearing. (Dckt. No. Not Yet Available). During the January 4, 2023, court hearing, which included an Information Technology professional Cook County and a Director from the Cook County Sheriff's Office, it became evident that a Motion to Bifurcate may be appropriate and Defendants suggested so at that time. *See* 1.4.23 Hearing Transcript, attached hereto as **Exhibit A**, 36:18-21.

1

#378192v1

Plaintiff's counsel responded that plaintiff would object to the motion. *Id.* at 36:22. Defendant's motion was filed three weeks thereafter.

The court also explained that Plaintiff's request for grievances regarding failure to protect from 2013 to the present would produce "many thousands of grievances over this ten-year time span" and that they were "not relevant to a *Monell* claim[.]" *Id.* at 12:1-9. The Court further advised that what it did not "want to do is send the defendants off to do an initial part of a search if we know that to really get to what is relevant, it's the tail wagging the dog on a *Monell* claim." *Id.* at 12:8-12.

Moreover, this Court explained that Plaintiff "cannot get to a *Monell* claim without some underlying constitutional violation, and in the end the *Monell* claim doesn't add any more to the damages." *Id.* at 34:21-25. "It doesn't matter that that this was a one-off thing that applied to [plaintiff] or that this was a result of a policy or a practice or a custom" *Id.* at p. 35:5-7. Logically, this Court then suggested that Plaintiff "should have sufficient information at this point to make a demand based on the damages ... suffered" without *Monell* discovery and referred the matter to Magistrate for settlement discussions prior to any addressing of potential *Monell* discovery." *Id.* at p. 35:8-9.

Shortly thereafter, Defendants timely filed their Motion to Bifurcate. Pursuant to the clear language of this Court's January 4 order and Judge Ellis's comments during the proceeding, Defendants understood the need to produce a significant number of incident reports, so they did. Defendants thus produced detailed information regarding nearly 2200 incident reports regarding telephone use, fights and gangs. *See* January 4 Order; Joint Scheduling Order, Dckt. Nos. 92, 104. On March 7, 2023, Plaintiff's admitted that he failed to identify any detainees within those incident

reports to allow Defendants to provide grievances associated with those detainees, as discussed at the January 4 hearing. Ex. A at 38:22-25 and 39:1-4, 14.

As discussed by IT professionals at the January 4 hearing, the term "eyeglasses" is on every intake form for every detainee in the jail, and the PDF healthcare service request forms are not text searchable and are more akin to an "image-type" photograph, therefore it is not possible to perform the above process, searching specifically for telephone use. *See* Ex. A. Thus, audit reports are being sought from the Department of Justice ("DOJ"), pursuant to the parties' Joint Scheduling Order, Dckt. No. 97, as adopted by the Court in its January 26, 2023, order. Dckt. No. 104. Plaintiff has asked to effectively stay this process, pending resolution of this motion.

## ARGUMENT

### I. PLAINTIFF'S BASELESS WAIVER AND NOTICE ARGUMENTS ARE UNSUPPORTED BY ANY CASELAW OR FACTS

Defendants never waived their right seeking bifurcation by any intentional act or otherwise. According to the Seventh Circuit and the United States Supreme Court, waiver consists of "the intentional relinquishment or abandonment of a known right." *Eddie Bradley v. Vill. of Univ. Park, Ill.*, No. 22-1903, p. 8 (7th Cir. Feb. 3, 2023) (citing *Henry v. Hulett*, 969 F.3d 769, 786 (7th Cir. 2020) (en banc) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993))).

The paucity of Plaintiff's argument is underscored by its lack of legal support, coupled with its false assertions regarding notice. Plaintiff's failure to cite case law in its assertions "is not fatal by itself[,]" *Eilenfeldt v. United C.U.S.D. #304 Bd. of Educ.*, 169 F.Supp.3d 867, 875 (C.D. Ill. 2016), but "[t]his Court will not do the parties' legal research and analysis." *In re: Matter of Maurice*, 21 F.3d 767, 774 (7th Cir. 1994).

#378192v1

Plaintiff contends that Defendants' Motion was brought too late into the discovery process to matter, deeming the issue of bifurcation "waived or … estopped[.]" Dckt. No. 110 p. 5. Estoppel is an equitable remedy equating to "sitting on one's hands[,]" and unfair surprise, that has no application here whatsoever. Defendants' motion was filed mere weeks after the prospect of bifurcation was discussed in open court on January 4. *See* Ex. A.

Plaintiff failed to identify any detainees from nearly 2200 incident reports spanning from 2015- 2019 and stalled the process regarding obtaining DOJ audit reports, yet claims that the tail should wag the dog by forcing the parties to engage in *Monell* discovery. To date Plaintiff has yet to identify any legal support for its claim that obtaining eyeglasses on a timeline established by himself is a constitutional right.

Plaintiff's argument ignores these facts and the prevailing law – likely because the facts and the law refute Plaintiff's argument. Plaintiff failed to provide any supportive case law regarding waiver or estoppel and his argument fails. *See* Dckt. No. 110 p. 5. Instead, Plaintiff argues that the parties have been engaging in written discovery for a lengthy time and Defendants purportedly waived their right to bifurcation by engaging in the discovery process. This argument is entirely without merit.

Importantly, this Court has only deemed requests for bifurcation tardy when discovery was imminently closing, and the moving party specifically refused to file the same motion three months prior. *See Edward Lowe Indus., Inc. v. Oil-Dri Corp. of Am.*, Case No. 94 C 7568, 1995 WL 609231, at *5 (N.D. Ill. Oct. 13, 1995). Conversely, in this case Defendants filed their motion to bifurcate mere weeks after advising the court of their intentions.

Courts rightly expect litigants to submit *legally substantiated* arguments, as opposed to the alternative. *See* Model Rule of Professional Conduct 3.1 ("A lawyer shall not ... assert or controvert

4

an issue ... unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law."). Plaintiff instead baldly asserts that he was entitled to Plaintiff of Defendants' motion prior to filing it.

Despite Plaintiff's assertions, parties in litigation have no obligation or requirement to share materials or product representing their planned litigation or trial strategies. *See Waste Mgmt., Inc. v. Int'l Surplus Lines Ins. Co.*, 144 Ill.2d 178, 196 (1991); Restatement (Third) of the Law Governing Lawyers § 87(2) (2000). Specifically, materials revealing a lawyer's opinions, mental impressions, or trial strategy, "prepared by a lawyer for litigation then in progress or in reasonable anticipation of future litigation[,]" Restatement (Third) of the Law Governing Lawyers § 87(1), constitute work product entitled to protection "from unnecessary intrusion by opposing parties and their counsel." *People v. Spiezer*, 316 Ill.App.3d 75, 80-81 (2000). Plaintiff wants more but is not entitled to more under the law.

## II. PLAINTIFF CANNOT AVOID PROVING A CONSTITUTIONAL CLAIM BEFORE PROCEEDING WITH A *MONELL* CLAIM

Plaintiff misstates the law in an effort to convince this Court that bifurcation would add complexity and confusion to the discovery process. A plaintiff must prove a constitutional violation by individual defendants before proceeding against a municipality. *Matthews v. City of East St. Louis*, 675 F.3d 703, 709 (7th Cir. 2012); *Adams v. City of Chicago*, No. 06 CV 4856, 2012 WL at *3 (N.D. Ill. Nov. 2, 2012) (citing *City of Los Angeles v. Helle*r). The first required element of a *Monell* claim requires that Plaintiff prove "that he or she possessed a constitutional right of which he or she was deprived." *Id.*

Plaintiff glosses over this imperative requirement by suggesting it is simpler to wade through thousands of pages of extraneous information that could theoretically show a custom,

5

policy or practice. Dckt. No. 110 pp. 5-10. During the January 4 hearing, this Court suggested the opposite by stating that "what I don't want to do is send the defendants off to do an initial part of a search if we know that to really get to what is relevant, it's the tail wagging the dog on a *Monell* claim." Ex. A. at 12:8-12. This statement was in the context of discussing Plaintiff's desire to obtain 10 years of records related to thousands of grievances dealing with failure to protect, when Plaintiff's claim relates to a single assault on June 17, 2019.

Thus, Defendants are attempting to proceed in a manner that makes sense in light of the law and pending claims. Plaintiff should not be allowed to litigate both claims at once. Plaintiff's objective to obfuscate the underlying and *Monell* issues is clear.

This Court already stated that the thousands of grievance documents Plaintiff seeks related to failure to protect are "not relevant to a failure to protect claim." Ex. A at 12: 8-12. Despite this admonition, Plaintiff insists that he merely wants to make things simpler and easier. In reality his case relies on making things murky.

Plaintiff's brief claims Defendants' Motion to Bifurcate is "merely an attempt to avoid what they claim are 'burdensome and potentially unnecessary discovery and litigation costs, after failing for more than one year to comply with discovery obligations and refusing to produce the documents to which [Plaintiff] ... is entitled to litigate **both** the individual claims and the *Monell* claims." Dckt. No. 110 p. 5**.** Plaintiff's assertion could not be further from the truth of the matter. As explained above, Plaintiff's assertions regarding Defendants' failure to produce what he would describe as ***any*** documents to which Plaintiff claims entitlement is a blatant mischaracterization of the discovery produced and exchanged to date. On top of this, Plaintiff argues in his response that, as a mere tool for Defendants to escape their discovery obligations, granting bifurcation here "will only weave further complexity and delay into this case and lead to additional discovery disputes[,]"

6

"particularly so where the *Monell* discovery overlaps with the discovery relevant to" the individual claims. Dckt. No. 110 p. 7. Again, here too, Plaintiff mischaracterizes the nature of the claims he himself brings before this court, and bifurcation will in actuality make determination of the ultimate issues that the standing of any *Monell* claim rests upon occur easier and faster.

Plaintiff's *Monell* claims require there to be a constitutional violation at minimum, which Plaintiff cannot show. *Matthews* 675 F.3d at 709. The individual claims must involve a constitutional violation or deprivation, in order for the *Monell* related claims to potentially arise. *Id.* Therefore, the ability of Plaintiff to proceed with his *Monell* claims is contingent on the results of the individual claims, and whether any constitutional violation exists.

Plaintiff suggests that bifurcation can also complicate matters where there is a resultant need for parties "to separate *Monell* evidence from individual liability evidence[.]" *Terry v. Cook Cnty. Dep't of Corr.*, No. 09C3093, 2010 WL 2720754, at *3 (N.D. Ill. July 8, 2010). Notably, however, the *Terry* Court described a scenario that should not exist here - potential for municipal liability without individual liability, where "it could be shown that the public entity's 'policies caused the harm, even if the officer was not individually culpable.'" *Terry*, 2010 WL 2720754, at *2-3 (internal citations omitted). Bifurcation in those cases "assumes that the parties are never required to go back and conduct *Monell* discovery at some later date." *Cadiz v. Kruger*, No. 06 C 5463, 2007 WL 4293976, at *5 (N.D. Ill. Nov. 29, 2007).

Here, where the standing of Plaintiff's *Monell* related claims is contingent on whether the individual claims involved constitutional violations, after individual liability is proven there will be no need for the rehashing of old witnesses or evidence such that judicial economy is negatively impacted, and the costs and complexities of litigation rise. At said time, *Monell* discovery necessary to the litigation of Plaintiff's *Monell* related claims against the municipality Defendants

7

would reasonably proceed, without either side having engaged in premature, cost heavy *Monell* discovery, with disputes involving the Court at every step.

The same scenario was seen in *Maysonet v. Guevara*, Case No. 18-CV-2342, 2020 WL 3100840, at *3 (N.D. Ill. June 11, 2020), where "much of the evidence required to litigate the individual claims ... [was] relevant to the *Monell* claim and vice a versa, such that bifurcation could result in two rounds of depositions and document production." There too, there was "the possibility that a jury could find ... liab[ility] for *Monell* violations despite the individual officers being shielded[.]" *Id.* Plaintiff's assertion that bifurcation will result here in duplicative rounds of discovery fails as the circumstances clearly differ.

Plaintiff attempts to bolster its position by relying on a case involving use of deadly force and Plaintiff's claims that an officer's use of deadly force arose from the City's failure to train and supervise its police officers by not properly investigating and disciplining them. *Estate of Loury by Hudson v. City of Chicago*, No. 16-CV-04452, 2017 WL 1425594, at *3 (N.D. Ill. Apr. 20, 2017). The *Hudson* court pointed out that plaintiff sought "to present evidence that Officer Hitz's version of the shooting is false and that the City's investigation into his use of deadly force failed to analyze available evidence contradicting Officer Hitz's version." *Id.* Hence, "if the Court were to bifurcate for purpose of trial, the parties and jury would still have to untangle any such overlapping evidence — possibly twice." *Id.*

Here, by contrast, Plaintiff first claims medical indifference under the 14th Amendment, related to not receiving the type of eyeglasses he wanted when he wanted them because he wanted metal frames, which are a danger within the jail. His second individual claim relates to a fight that he alleges resulted from a dispute regarding use of a telephone made available to detainees. According to the complaint, Plaintiff was detained in Cook County Jail for approximately one year

#378192v1

and was attacked by another detainee on July 17, 2019. (Dckt. No. 65, par. 15). The *Monell* claims are based upon generalized allegations regarding lack of training and discipline. The discovery related to the single attack and plaintiff's need for eyeglasses should not introduce confusion or make litigation less efficient.

Unlike *Estate of Loury,* the two individual claims are not interwoven with the *Monell* claims, despite Plaintiff's efforts to make it so. The *Monell* claim cannot exist, absent a constitutional issue and alleged violation.

Defendants cannot control what discovery is propounded by Plaintiff, but this Court can prevent, rather than promote, expansive *Monell* discovery before a constitutional violation is shown. This matter is factually distinct from *Estate of Loury*, which involved factual overlap between the *Monell* and individual constitutional claims, *Estate of Loury*, 2017 WL 1425594, at *3. Unlike here, where Plaintiff has already sought "all" grievances for a 7-year period related to assaults, which is not relevant to Plaintiff's *Monell* claim. Here, this Court has already cautioned against such a path. (Plaintiff's request for grievances regarding failure to protect from 2013 to the present would produce "many thousands of grievances over this ten-year time span" and that they were "not relevant to a *Monell* claim[.]") Ex. A. at 12:1-9.

The interests of efficiency and preventing "the tail wagging the dog on a *Monell* claim" favor bifurcation.

Plaintiff attempts to conflate his individual and *Monell* claims and confuse the issues by arguing that plaintiff's substantially similar discovery requests to the municipal and individual Defendants reflect a purported need for ballooning discovery involving all claims. This is more aptly described as plaintiff's attempt to encourage bloated discovery when there is no true overlapping discovery needed. Critically, plaintiff has not shown that he has a constitutional claim

9

for at least his eyeglasses claim. Additionally, if can show he has a constitutional right to have eyeglasses, there is no need for contemporaneous *Monell* discovery on that claim and his "fight" claim.

Plaintiff's design to conjure excuses by relying on his own discovery requests is just a thinly veiled attempt to confuse the issues. Plaintiff argument that his own actions prove factual overlap fails and is unsupported by the law or the facts in this case. If Plaintiff's position were he law, then the possibility of "overlaps" would be endless. A party cannot rely on what are essentially "cut and pasted" discovery requests to multiple parties, then weaponize them to advance an argument to defeat a necessary motion to bifurcate.

### III. DISCOVERY PRODUCED TO DATE SHOWS THAT BIFURCATION IS APPROPRIATE AND PROMOTES EFFICIENCIES

Defendants have produced nearly 2200 incident reports that plaintiff has admittedly not examined in any level of detail, as reflected in this Court's March 7, 2023, hearing. Defendants' voluminous production, made in accordance with this court's clear instructions from its January 4, 2023, hearing, includes the names of thousands of detainees. Yet, Plaintiff has not identified a single detainee or anything else meaningful within those documents that raises the specter of the need for further swelling discovery here. Instead, plaintiff has pilloried defendants with commentary wrongly suggesting that defendants produced "nearly nothing" in discovery while seeking to delay the time period for Plaintiff to review documents that he received well over a month ago. If it takes such a long to review "nearly nothing", it could take forever to navigate the massive discovery involved in two individual claims and two separate *Monell* claims (without knowing if his eyeglasses claim has the markings of a constitutional claim).

#378192v1

However, Plaintiff alleges that any prejudice to Defendants relative to burgeoning discovery requests is speculative and Defendants have produced "nearly nothing." Dckt. No. 110 p. 11. Perhaps this is because, as admitted by Plaintiff's counsel at the 3.7.23 hearing, none of what Defendants have produced to date have even been reviewed yet.

He further asserts that Defendants fail to meaningfully consider that this sort of prejudice can be cured by limiting instructions, and that any such prejudice is outweighed by the prejudice to Plaintiff. *Id.* The facts of this case are discrete from the cases relied upon by Plaintiff where courts rejected bifurcation arguments based on undue prejudice due to speculation.

Ultimately, Plaintiff urges this Court to endorse nearly limitless discovery, but proposes a solution of un-ringing the bell through use of limiting instructions. This is not a prudent solution to a problem that Plaintiff intends to cause. As support for this contention, he cites to *Houskins v. Sheahan*, 549 F.3d 480, 496 (7th Cir. 2008), where the Court declined bifurcation on account of an "an overlap in the facts, evidence, and witnesses required" between plaintiff's individual claims and *Monell* claims. Instead, the Court there determined that a limiting instruction would properly serve the purpose of limiting prejudice to Plaintiff as a result of the other claims. *Id.* However, *Houskins* dealt with a first amendment retaliation claim by a social worker employed by Cook County corrections who alleged receipt of physical disciplinary measures in retaliation for their report of an assault by an officer. *Id.* at 480-83. Notably, the *Monell* claims there were noted by the Court to have failed by reason of the plaintiff's failure "to establish that she was deprived of a constitutional right." *Id.* at 493. As such, it was fitting that a limiting instruction to the jury was all that was required by the court. Where, as here, there is a need to engage in discovery and trial to prove the merits of *both* claims entirely, a simple limiting instruction does not suitably alleviate the risk of prejudice to Defendants as bifurcation suitably would. The overlap in the facts,

evidence, and witnesses between the individual and *Monell* claims described in *Houskins* simply cannot be found here.

Here, bifurcation is the most sensical remedy as a result of the lack of overlap between the claims. *See, e.g., Houskins*, 549 F.3d at 496. Accordingly, the risk of prejudice to Defendants is not prejudicial, as shown, and limiting instructions would not be the most effective or sensical way for this Court to limit prejudice to Defendants, nor to limit the breadth of *Monell* discovery, where such has no relevance to the individual claims.

**IV. BIFURCATION OF CLAIMS WILL NOT PREJUDICE PLAINTIFF** .

Plaintiff claims that Defendants' request for bifurcation is merely "antics" meant to delay reflects the paucity of merit to his argument. Bifurcation benefits this litigation and provides a necessary tether on plaintiff while causing him no harm whatsoever. Stated simply. Plaintiff will not be prejudiced by bifurcation.

Finally, plaintiff resorts to a laughable suggestion that his patient is elderly to show prejudice. Plaintiff is 48 years old. Plaintiff is not the same as a declining elderly patient. Plaintiff has plenty of time to litigate his claims and, ultimately, if necessary, seek *Monell* liability after proving the occurrence of the underlying constitutional violation in the Individual claims. Hence, the *Arsberry* decision is of no moment. *Arsberry*, 2021 WL 4942039, at *3 The *Arsberry* plaintiff was 76 years old – old enough to be 48-year-old Plaintiff Donald Henneberg's father. The *Arsberry* Court asserted the age of the non-movant as being the most impactful in its analysis of the risk of prejudice against him. *Arsberry*, 2021 WL 4942039, at *3 The New York and Florida cases relied upon by plaintiff are similarly unpersuasive. *See Galati v. Pharmacia & Upjohn Co.*, No. 10-CV-3899, 2011 WL 2470047, at *2 (E.D.N.Y. June 17, 2011) (67-year-old plaintiff); *Rutledge v. NCL (Bahamas) Ltd.*, 08-21412-CIV, 2010 WL 11629649 (S.D. Fla. Oct. 21, 2010) . Crucially, the

*Arsberry* ruling was not decided on the basis of the prejudice to Plaintiff, but rather on the basis of bifurcation not advancing judicial economy. *Arsberry*, 2021 WL 4942039, at *3 ("[T]he Court technically need not address the issue of whether Plaintiff (as the non-moving party) would be prejudiced because it has not found that bifurcation is warranted[.]").

Plaintiff's final assertion under this argument calls Defendants' argument that the *Monell* claims add little monetary value to the damages misplaced in that it "overlooks the important nonmonetary considerations a plaintiff has in litigating a *Monell* claim against a municipality" and "misunderstands the policy value in finding that [Defendants'] policy and practices were constitutionally deficient, and the precedential value of such findings for other plaintiffs in future cases who might seek to hold [Defendants] liable for similar policies." Dckt. No. 110 pp. 13-14. *Maysonet*, 2020 WL 3100840, at *4 (citation omitted).

Also, the *Arsberry* Plaintiff, unlike this plaintiff, had "non-economic objectives" that would have been prejudiced by bifurcation. Finally, as noted by this Court in the January 4 hearing, Plaintiff's *Monell* claims will not add to his monetary damages. Hence, plaintiff's argument crumbles in light of the facts before this Court.

## CONCLUSION

This Court has good reasons to bifurcate Counts I and II, which are individual claims against Defendants Officer Arias and Cook County employee, Susan Shebel. If Plaintiff is unable to prove liability, the *Monell* discovery pertaining to Sheriff Dart, regarding gang assaults and fights over phone use, and against Cook County, regarding denial of prescription eyeglasses, is unnecessary and improper. There is no need for extensive, costly Monell discovery unless and until any constitutional claims can be proven.

#378192v1

WHEREFORE, Defendants COOK COUNTY and SHERIFF THOMAS DART respectfully requests that this Honorable Court enter the following Order:

1. Bifurcate Plaintiff's *Monell* claim(s), Counts III & IV, pursuant to Fed. R. Civ. P. 42(b);

2. Stay any discovery or trial of the *Monell* claims until liability has been established in Counts I & II; or

3. In the alternative, bifurcate Plaintiff's *Monell* claims against Defendants Cook County and Sheriff Dart pending resolution of any motion for summary judgment; and

4. For any other relief this Court feels reasonable and just.

Respectfully Submitted,

By: */s/ Jason E. DeVore*
Jason E. DeVore, One of the Attorneys for Defendants

**DEVORE RADUNSKY LLC**
Jason E. DeVore (ARDC # 6242782)
Troy S. Radunsky (ARDC # 6269281)
Zachary G. Stillman (ARDC # 6342749)
230 W. Monroe Street, Ste. 230
Chicago, IL 60606
(312) 300-4479 telephone
jdevore@devoreradunsky.com
tradunsky@devoreradunsky.com
zstillman@devoreradunsky.com

### CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that **Defendants Cook County, Illinois and Sheriff Thomas Dart's Reply in Support of their Motion to Bifurcate and Stay Discovery on Plaintiff's *Monell* Claims** was filed on March 7, 2023, with the Northern District of Illinois ECF System, serving a copy to all parties.

*/s/ Zachary Stillman*
Zachary Stillman

#378192v1