UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DONALD HENNEBERG, ) | |
| ) | |
| Plaintiff, ) | Case Nos.: 19-cv-07380 |
| ) | |
| v. ) | |
| ) | Honorable Jeremy C. Daniel |
| TOM DART, SUSAN SHEBEL, R.N., ) | |
| JOHN DOE MEDICAL DEFENDANTS, ) | |
| CORRECTIONAL OFFICER JORGE ) | |
| ARIAS, and COOK COUNTY, ILLINOIS, | |
| et al., | |
| | |
| Defendants. | |

**DEFENDANTS' OPPOSED[1] MOTION FOR ENTRY OF PROTECTIVE ORDER**

NOW COMES Defendant Sheriff Thomas Dart in his official capacity, and Cook County, by and through their attorneys, DeVore Radunsky, LLC, pursuant to Fed. R. Civ. P. 26(b)(2)(C), and for their Motion for Entry of Protective Order, state the following:

**BACKGROUND**

Plaintiff was incarcerated at the Cook County Jail from November 29, 2018, to November 19, 2019. He filed this lawsuit on November 7, 2019, against the defendants generally alleging that he was denied access to the phones in Division 10, and that he was the alleged victim of an assault by other detainees while trying to use the telephone. He also alleged that the defendants were medically indifferent when they failed to provide him proper vision care.

---

[1] Defendants' counsel has conferred with plaintiff's counsel and the parties have agreed upon the following briefing schedule: (1) Plaintiff files his response to this motion by January 12, 2023; (2) Defendants file their reply in support of this motion by February 2, 2023.

Defendants seek a protective order due to the burdensome nature of Plaintiff's request for nearly 1,000 PDF versions of previously produced incident reports, and another 588[2] related associated grievances, for a ten-year period (2010-2019).

Defendants bring this motion after multiple meet and confers between June and November of 2023, producing multiple witnesses for an in-person hearing on January 3, 2023, producing almost 2,000 pages of documents on multiple occasions, running numerous ESI searches resulting in two spreadsheets containing 2,178 incident reports, and attempting reach an agreement with Plaintiff concerning the reasonable scope of production of additional information proportional to the needs of the case. Plaintiff's counsel has refused to consider the burdensome nature of the requests despite being provided evidence of it and has equally refused to shrink the scope of discovery. Unfortunately, the parties are now at an impasse.

As discussed more fully below, this case is relatively straightforward and boils down to basic legal and factual questions. Nevertheless, despite Defendants' efforts to participate in the discovery process in good faith, Plaintiff resisted all efforts to narrow the scope of his expansive discovery requests and refused Defendant Sheriff's repeated offers to produce a reasonable number of incident reports and related grievances on a rolling basis. (*See e.g.* 10/27/23, 11/14/23 and 11/20/23 emails from Plaintiff's counsel, attached as ***Group Ex. 1***.) Instead, Plaintiff is insisting that Defendant Sheriff dedicate hundreds of hours to extract incident reports and related grievances.

Instead of limiting requests to the 2015-2019 period, Plaintiff actually expanded his request to include an additional 5-year period from 2010-2014. The reason appears to be because Plaintiff

---

[2] As discussed more fully below, this "588" number is misleadingly low. Plaintiff has asked for grievances filed by detainees whose names appear on 588 incident reports regarding fights. Given that fights often include multiple detainees, and sometimes a great many detainees, there are likely thousands of detainees named on those 588 incident reports, requiring a search for thousands of grievances.

is seeking Department of Justice monitoring reports of the jail and Cermak, and communications between them, following a Consent Decree (see 10 cv 4269) which he thinks may provide relevant information. However, that Consent Decree was terminated by Judge Kendall in June of 2018 (six months before plaintiff was incarcerated) following compliance by Sheriff Dart's office and Cermak. (*See Ex. 2*, *United States of America v. Cook County, et al*, 10 cv 2946, orders entered June 12, 2018, and June 26, 2018).[3] Plaintiff is also requesting the production of medical records related to other detainees' vision care from 2010-2019. That request alone triggers HIPAA concerns.

The burdens related to production of disproportionate discovery far outweigh any potential discoverable information.

**Defendants' Production of 965 Incident Reports & 588 Incident Reports**

Plaintiff Henneberg was in custody of the CCDOC between November 29, 2018, and November 19, 2019. His lawsuit challenges a purported policy that allows gangs to control phones in the CCDOC, which he alleges was the cause of his attack on June 20, 2019. (See Dkt. #65; PageID #418). CCSO has no written policy that would allow gangs to control phones, so Plaintiff

---

[3] On June 12, 2018, the United Sates and Cook County submitted a Joint Motion to Dismiss and Terminate the Remaining Sections of the Agreed Order in *United States v. Cook County*, 10-cv-2946, Dkt. 375 (N.D. Ill. 2010.) That Joint Motion stated:

> Since the inception of the Agreed Order, the Sheriff and Cook County consistently demonstrated a commitment to providing constitutional conditions of confinement and services for inmates in the CCDOC facilities. In conjunction with extensive technical assistance and consultation by the Court-appointed monitors, the Sheriff and Cook County achieved significant improvements in the operation of CCDOC's facilities through the development and implementation of new policies and practices, which evolved over the course of the Agreed Order. The monitors documented this progress towards compliance in semi-annual reports to the Court, which are based on formal compliance visits, interim site visits, and the continuous exchange of information and consultation. Representatives from the Department of Justice have participated in the monitors' compliance visits and have confirmed the monitors' findings.

(Id. at p. 2.)

The Court granted that motion, ending the Federal Monitor, on June 26, 2018. Order, *United States v. Cook County*, 10-cv-2946, Dkt. 377 (N.D. Ill. 2010) (Kendall, J.)

3

seeks to support his *Monell* claim by using past incidents in the jail to establish a *de facto* policy of "gang-controlled phones" and an open tolerance of the same. But since Plaintiff cannot point to any incidents in which the CCDOC openly permitted, tolerated, or condoned gang control of telephones, Plaintiff has demanded the Defendant Sheriff find similar incidents that may support his claims. Plaintiff demanded that Defendant Sheriff search for and produce all detainee complaints concerning gang control over telephones.

As discussed in detail at the January 4, 2023, hearing before Judge Ellis, Defendant Sheriff is unable to search detainee grievances by keyword for that kind of highly specific allegation, assuming such information exists. Accordingly, the Court ordered the Sheriff to look for incident reports documenting fights over the tier telephones as a work-around, so that Plaintiff could use the incident reports to then search for grievances/detainee complaints. (See January 4, 2023, transcript p.15 lines 8-19, attached as *Ex. 3*)

Defendants have advised Plaintiff that detainee incident report data is maintained by the CCDOC in a system called CCOMS in data format. The responsive data is exported from CCOMS into Microsoft Excel format for easier production of multiple incident reports meeting the search criteria.

Following a broad ESI term search requested by the Plaintiff, on February 27, 2023, the Defendant Sheriff produced 2,178 CCDOC incident reports in a Microsoft excel spreadsheet (and related data) covering the period from January 1, 2015, through December 31, 2019. The search query for this search was based on the following: Incidents occurring between 01/01/2015-12/31/2019 in which (A) the "Inmate Fight" field equals "Yes" OR the "Incident Category" includes "fight" AND (B) the "Incident Narrative" OR "Incident Summary Narrative" fields contain the words "phone" or "telephone."

4

Because Plaintiff was not satisfied with the results from this search, on September 21, 2023, Defendant Sheriff, through counsel, produced a new spreadsheet of 8,527 Incident Reports. The search query here was much more expansive than before, which accounted for the vast number of reports. Plaintiff's counsel explained in his August 30, 2023, e-mail the search process:

- Defendants formulated the word searches, based on their understanding of the Cook County Jail incident report database, in order to identify incident reports that fall within the verbal description described in my email dated August 25, 2023 (4:30 pm ET) which stated the following: "Plaintiff requests summaries (like the Excel spreadsheets previously produced) that provide the text and other data in all database fields for all 1/1/2015 to 12/31/2019 Incident Reports that reflect or relate to any inmate altercation (e.g., a fight, fights, fought, fighting, battery, batteries, batter, assault, assaults, assaulted, assaulting, attack, attacks, attacked, attacking, punch, punches, punched, punching, strike or struck, striking, hit, hitting, threat or threaten, threatening, threats, injure or injury, injuries, injuring, or kill, kills, killing, killed, altercation, altercations, confront, confronted, confrontation, beat, beating) that involves or arises over the use of a phone or telephone."

- Please confirm that, in the word searches, the phrase "includes word like phone" would mean the search would flag text that include all variations of the word "phone" (e.g., phone, phones, phoning, etc.) including variations of the word "telephone" (e.g., telephone, telephones, telephoning, etc.).

- As one point of clarification, during our August 29, 2023, discussion, I asked whether the two different word search "sections" – which are described as "Section 1" and Section 2" – would be run independently of each other, and it appeared that the answer was "yes." I mentioned the example of a Venn diagram (consisting of two circles that partially overlap), and we appeared to agree, after the word searches were run, Defendants would produce (i) all incident reports that were identified <u>only</u> by the "Section 1" search, and (ii) all incident reports that were identified <u>only</u> by the "Section 2" search, although the two groups of incident reports would partially overlap (meaning that many of the same incident reports would be flagged by both searches). <u>After further reflection, I think that the two-word search "sections" are intended to be run in sequence, with Defendants only producing incident reports which, first, are flagged during the "Section 1" search, and those incident reports would be narrowed further by the "Section 2" search</u>. Therefore, Defendants would only produce incident reports that satisfied at least one of the conditions set forth in the "Section 1" search <u>and</u> that satisfied one of the conditions set forth in the "Section 2" search.

(*See* 8/30/23 email from Plaintiff's counsel, attached as **Ex. 4**.)

\* \* \*

Despite Defendant Sheriff's best efforts, which included producing an updated spreadsheet of 8,527 Incident Reports on September 21, 2023, Plaintiff asked for more information two months later. On November 14, 2023, Plaintiff asked Defendant Sheriff to produce in PDF format 965 of the incident reports contained as data in the Excel spreadsheet. Sheriff's Counsel has explained that that was not practicable.

Unlike the CCOMS system data search, which exported hundreds to thousands of incident reports into a spreadsheet based upon a single search, multiple incident reports cannot be exported into PDF format simultaneously. As a result, Plaintiff's request would require a member of CCSO Legal Staff to individually generate 965 PDF documents, which takes approximately 3 minutes each. It is estimated that that would take approximately 49 hours to accomplish. And, the information in those 965 PDF documents would be substantially similar to the information already provided in the spreadsheets, though formatted differently.

Plaintiff also currently demands that Defendant Sheriff search for and produce "all existing inmate Grievance Documents relating to the subset of 588 Incident Reports." Plaintiff's November 14, 2023, email identified the subset of 588 incident reports from 965 incident reports gleaned from 8,257 incident reports produced by defendants. (*See* **Ex. 1.**)

This new request would require a member of CCSO Legal staff to (1) personally review all 588 incident reports, (2) search a second grievance database for the names of every single detainee listed in each of those 588 incident reports, to determine whether said detainee filed a detainee grievance with the CCDOC, and (3) download save, organize and produce all such grievances only with the related reports.

Because there can be and often is more than one detainee involved in an incident report (particularly incident reports about detainee fights), this request would require a search and review

6

of the grievances of much more than 588 detainees. Notably, as discussed in the January 4, 2023, hearing, detainee grievances are handwritten documents which the CCDOC scans into a database. These documents are not OCR capable and cannot be searched electronically by keyword. Thus, once the 588 Incident Reports are searched for detainee names, and the grievances filed by those several hundred or thousands of detainees are pulled, those thousands of handwritten grievances will also need to be manually reviewed to determine whether the grievance pertains to a fight about a phone.

Despite defendant Sheriff's counsel advising Plaintiff's counsel of the massive undertaking and the burden attendant to generating the PDFs, Plaintiff insists on defendants to search for *all* grievances associated with those incident reports. The defense asked the Plaintiff to consider a smaller, more reasonable figure: "If you could prioritize your requests and provide 50-100 reports within the next few days this week, it would be helpful, and we can move forward with the process." Defendant's request was based on calculations from "test runs" discussed below.

Notwithstanding Defendant's explanations and attempts at reaching a reasonable compromise regarding the amount of production, Plaintiff has steadfastly refused compromise or otherwise be reasonable. In multiple meet and confers with counsel over the months, Defendants repeatedly offered a reasonable, good faith compromise to produce a targeted subset of incident reports of the Plaintiff's choosing, and associated grievances. Those overtures were rejected.

The Plaintiff's pattern of recalcitrance continued when, on October 30, 2023, in response to Defense counsel's inquiry regarding potential prioritization of certain Incident Reports as a result of the workload associated with that production, Plaintiff's counsel again refused to make any concessions.

Similarly, on November 20, 2023, via correspondence, Plaintiff's counsel reiterated his demand that "Defendants move forward with the production of all of the requested [incident] reports," along with the search for grievances related to 588 of those reports. A minimum of two detainees are involved in fights. Thus, there would be at least 1176 detainees that would need to be included in any manual searches regarding those fights.

In order to assess and verify what Defendant Sheriff believes to be a tremendous burden, Defendant Sheriff's staff performed two test runs to verify how long it might take to generate over 900 Incident Report PDFs, and then to use Incident Report data to pull detainee grievances for all detainees listed as involved in the incident.

**Test Run 1:**

- 1 incident report: 3 minutes and 2 seconds.
- Grievance Search: 2 detainees.; 8 mins and 51 seconds (Search determined that <u>no grievances</u> had been filed.)

The steps to perform a search for possible grievances include:

- Look up Incident Report in CCOMs.
- Download Incident Report from CCOMs.
- Identify IICs on Incident Report (not ALL IICs listed in the Summary Narrative are listed under Inmate Involvement).
- Look up IIC in InVize - Review Grievances. If no grievances at all, double check for any NC Grievances or Disciplinary Reports to ensure IIC's placement in InVize (confirmation step.)
- Cross reference findings with Tableau to make sure numbers match. If not match, determine why (i.e. non-compliant grievances).

**Test Run 2:**

- 9 incident reports: 27 minutes, 36 seconds
- Grievance Search: 2 hours and 38 minutes. 11 detainees. Only <u>1 grievance</u> was <u>found</u> and it did not relate to a fight over the phones.

(*See Incident Reports, attached as Group Ex. 5.*)

\* \* \*

It took Defendant Sheriff 30 minutes and 38 seconds to search for and save 10 incident reports (including test runs 1 and 2). It took Defendant Sheriff another 2 hours and 46 minutes to search and identify any possible associated grievances filed by 11 detainees related to those 10 incident reports. In order to meet Plaintiff's request, it would take 49 working hours alone to convert the selected 965 incident reports into PDF format, and several hundred more hours to locate any potentially related grievances for 588 of them.

The background leading to this motion reflects that diving further into additional mountains of information would be overly burdensome, duplicative, and would not advance the needs of the case.

Separately, Plaintiff has also requested to take the deposition of Scott Jakubowski, Chief Data Officer for the Defendant Cook County Sheriff's Office. As discussed below, Mr. Jakubowski is not a party and was not involved in any decisions or disputes related to Plaintiff's claims. He gathered information during the course of discovery, and spoke to Plaintiff's counsel multiple times about the ESI production process. Thus, his deposition would not be relevant to the issues between the parties.

## ARGUMENT

**A. Additional ESI Discovery for 2015-2019 is Disproportionate to Needs of Case**

Pursuant to Fed. R. Civ. P. 26(b)(2)(B), "[a] party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost." District courts may limit discovery "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Bless v. Cook Cnty. Sheriff's Off.*, No. 13 C 4271, 2017 WL 1344522, at *2 (N.D. Ill. Apr. 12, 2017). A court may appropriately make rulings to limit discovery in furtherance of Fed. R. Civ. P. 26(c)(3), which

expressly authorizes the district court, in order to protect a person from "annoyance, embarrassment, oppression, or undue burden or expense," to direct "that discovery may be had only by a method of discovery other than that selected by the party seeking discovery. Fed. R. Civ. P. 26(c)(3). The Seventh Circuit has confirmed that "[a] district judge's discretion in supervising pretrial discovery is broad." *Gehring v. Case Corp.*, 43 F.3d 340, 342 (7th Cir. 1994); *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 744 (7th Cir. 1985).

The court in *Bell v. Fredrickson,* No. 05-1054, 2006 WL 771199 (C.D Ill. March 22, 2006), determined that it would be overly burdensome to force defendants to locate and produce documents in a manner akin to what Plaintiff wants in this case. The *Bell* plaintiff requested the following:

> *Any and all documents relevant to complaints about procedures and practices of the way defendant Fredrickson ran the inmates' commissary lines.*
>
> *Any and all documents which relate or refer in any way to grievances, complaints or letters lodged by other inmates against defendant Fredrickson with respect to defendant Fredrickson not allowing them to shop.*
>
> *Any and all documents which relates, or refers in any way to grievances, complaints, or letters lodged by any inmate at the facility against defendant Fredrickson, with respect to or refer in anyway to the remarks, or statement, "We're all family here."*

The *Bell* court agreed with defendants that grievances or complaints by other inmates against defendant Fredrickson were irrelevant and not likely to lead to relevant information. The Court held that "This case is about what Frederickson did to the plaintiff, not what he did to other inmates. Witnesses with first-hand knowledge of what Fredrickson did and said to *the plaintiff* might be relevant, but not witnesses who talk about their own problems with Fredrickson. What plaintiff seeks to do is admit evidence of Fredrickson's wrongs against other inmates in order to prove Fredrickson's similar wrongs against the plaintiff. That evidence is not admissible, Fed. R. Ev. 4(b), and, even if it was admissible for some other purpose, it would be excluded as a waste of

time, confusing and prejudicial, Fed. R. Ev. 403. Additionally, the court agrees with defendants that locating all these complaints would be overly burdensome, "requir[ing] a manual search of the files over every inmate housed at Hill Correctional Center" for a three-year period." 2006 WL 771199, at *1.

This case is similar to *Bell*. Like *Bell*, here, the Plaintiff requested that Defendant produce unrelated incident reports and grievances for a ten-year period. Such a request is overly burdensome and prejudicial. Also like *Bell*, the Plaintiff is seeking to admit evidence of Defendant's alleged wrongs against other inmates in order to prove Defendants' alleged wrongs against the Plaintiff. Such records production has nothing to do with Plaintiff's claim and what happened to him, or one specific officer's (Arias) limited involvement. Producing the discovery is a waste of time, overly burdensome and likely requires a manual search of the files at various stages. That is particularly so where the PDF versions of Incident Reports substantially duplicate the spreadsheet versions Plaintiff already has, and the derivative grievances, if they exist, are just unsubstantiated and likely inadmissible allegations made by individuals who surely do not wish to be housed in a jail. No one should want to create 588 mini cases within this case about whether the allegations in those grievances are true or evidence of anything at all.

In a similar vein, producing other inmates' medical records related to vision care for a ten-year period, when plaintiff was not even incarcerated, is irrelevant, a waste of time, and overly burdensome, especially when the court terminated DOJ oversight in 2018 following compliance. In addition, production of those records likely requires a time-consuming manual search at certain stages.

Similarly, in *Rowe v. Morton*, 525 Fed. Appx. 426, 429 (7th Cir. 2013),) the plaintiff requested 30 years of records to identify the criminal gang membership of certain inmates. The

11

*Rowe* Court held that the request was unduly burdensome as the plaintiff could not explain why the names and gang affiliations of fellow inmates would result in discovery of relevant evidence of his claim for medical indifference. Similar to *Rowe*, Plaintiff's requests encompass a ten-year period and relate to other incidences and inmates, not what happened to him. He has not identified any items in the listing of 2,178 incident reports from 2015-2019 produced by Defendant Sheriff that impact Plaintiff's individual claims. Thus, production of those records would be extremely burdensome as a result of the immense manual effort involved in pulling them for production, as well as overly time consuming, and could further implicate HIPAA concerns as a result of the dissemination of unrelated inmates' records.

In *Wright v. City of Chicago*, No. 09 C 3489, 2010 WL 4875580 (N.D. Ill. Nov. 23, 2010) the plaintiff filed suit against the city arising out of four incidents. Plaintiffs alleged numerous *Monell* claims related to the city policies and practices. The plaintiff had issued broad discovery requests to the city requesting information (a) related to other suits filed against the City and or its officers for various issues and (b) all investigative files for a five-year period related to civilian abuse. The *Wright* Court held that plaintiff's "claims against the city cannot be as broad as alleging failure to supervise or discipline police officers in general, because that would be, in effect, alleging a negligence claim against the city, which is unavailable under *Monell*." 2010 WL 487 5580, *3. Similar to *Wright*, the request for 955 incident reports and 588 related grievances are overly broad to try and prove the claims alleged as they simply do not need this extent of resources to prove their case if it indeed has any validity.

Defendants have produced several thousand pages of materials in this case and offered to produce a reasonable subset of incident reports and related grievances. Based on Plaintiff's refusals to reasonably limit the breadth of their requests to a smaller subset in light of the demanding

process involved, Defendants are now seeking entry of a protective order to limit the number of incident reports that they are required to produce for a second time, now in PDF format, along with the related detainee grievance search.

At this point, the burden of Plaintiff's request for incident reports in a second format cannot be justified. Plaintiff can just as easily fish in the ocean of information he already has in spreadsheet form to try to support his *Monell* claim.

### B. 2010-2014 Timeframe Is Not Related to Plaintiff's Claims

As noted above, Plaintiff also renews his demand for records from the 2010-2014 timeframe. That is an irrelevant timeframe. *See*, e.g., *Conwell v. Cook County*, No. 12 C 10062, Dkt. 152 at p. 2-3 (N.D.Ill. Feb. 2, 2017) (Castillo, J.) (*in limine* ruling barring references to a 2006-2007 investigation, as being inapplicable to allegations from 2012-2013); *See* Mem. Op. and Order, *Mitchell v. Cook County* at p. 6-7, 10 CV 4873 (N.D. Ill. Sept. 14, 2011) (Gettleman, J.) (Dkt. 41) (discussing 2008 DOJ letter and noting that Cook County disputed the contents of that letter, and that by 2010 CCJ could have taken steps to correct the conditions in the letter). Plaintiff was only incarcerated at CCDOC from November 29, 2018, to November 19, 2019. There is no justification for Plaintiff to seek records from 2010-2014.

Defendant has offered and produced records from 2015-2019, which is already a broad time frame for a June 20, 2019, incident. Nevertheless, Plaintiff insists on pursuing documents covering the 2010-2014 timeframe. That request is burdensome, unreasonable, costly, and outside the scope of relevance permitted by Fed. R. Civ. P. 26(b)(1).

In light of the above, and pursuant to Fed. R. Civ. P. 26(b)(2)(C)(iii), this Court should accordingly enter a protective order limiting the required production of incident Reports, related

grievances, and vision care related discovery, by Defendants to those from the 2015 to 2019 timeframe.

### C. Scott Jakubowski's Deposition is Not Necessary

Plaintiff has also requested to take the deposition of Scott Jakubowski, Chief Data Officer for the Defendant Cook County Sheriff's Office. Discovery like this is not designed to address the issues among the parties and is not promoted under Fed. R. Civ. P. 26. Mr. Jakubowski's role in this case was limited to running ESI searches on the terms provided by Plaintiff. He has not been disclosed as a witness, and he is not in possession of any factual information regarding any of the issues in this case. Plaintiff's counsel has not identified a single issue in Plaintiff's claims that would require Mr. Jakubowski's testimony.

In order to facilitate discovery and assist in helping Plaintiff's counsel understand the limits of CCSO's production capabilities, Defendant Sheriff's counsel arranged a lengthy meeting spanning more than 1.5 hours on May 22, 2023, involving Mr. Jakubowski and Plaintiff's counsel to discuss Plaintiff's ESI requests and explain the CCOMS ESI search process in detail. There is no suggestion that Plaintiff's lacks an understanding of the ESI search process or the information that has or can be produced.

The current dispute relates to the significant burden of obtaining additional volumes of information. Defendant Sheriff has offered to stipulate as to the authentication of the CCOMS production or use a sworn declaration as to the CCOMS queries described. These compromises have been rejected.

The design and operation CCOMS database utilized by CCSO has nothing to do with the issues of this litigation, and such discovery goes far beyond Plaintiff's individual or *Monell* claims. The issues in Plaintiff's lawsuit relate to his access to glasses and phones from late November

2018 to November 2019. Mr. Jakubowski has no knowledge of any substantive facts related to any claims. Accordingly, Defendant Sheriff therefore requests that Plaintiff not be allowed to proceed with the deposition of a non-party with no knowledge of the facts underpinning Plaintiff's claims.

## CONCLUSION

It is axiomatic that discovery issues should be worked out by the parties. Defendants have tried to be reasonable and accommodating while still producing a vast quantity of material to Plaintiff. With every inch given, Plaintiff has sought another mile, and that is an untenable arrangement. Plaintiff wants to depose the CCSO Chief Data Officer who played no role at all in any of Plaintiff's underlying allegations, and whom Plaintiff's counsel has already spoken to on multiple occasions. That is abusive. Plaintiff wants records from a ten-year timespan, even though Plaintiff was only held at CCDOC for little more than a year. That is abusive. Plaintiff wants to force Defendant to spend hundreds or thousands of manhours tracking down documents that will almost certainly play no role in determining liability or damages, and which are largely duplicative of material that Plaintiff already possesses. That too is abusive.

WHEREFORE, Defendants Sheriff Thomas Dart and Cook County, by and through their attorneys, DeVore Radunsky, LLC, respectfully request an order entered as follows:

1. Defendants' Motion for Protective Order is granted;
2. Limit Defendant Sheriff's PDF incident report production to 50 incident reports and related grievances, allowing Defendant Sheriff 30 days to complete this work;
3. Find that information requested for the 2010–2014-time frame is outside of the scope of relevance to Plaintiff's claims;
4. Find that Cook County is not required to produce any further information;
5. Find that Plaintiff cannot depose Scott Jakubowski; and

6. Any further relief this Court deems appropriate.

                                                Respectfully submitted,

                                                */s/ Troy S. Radunsky*
                                                *Attorneys for Defendants*
                                                Troy S. Radunsky (ARDC# 6269281)
                                                DeVore Radunsky LLC
                                                230 W. Monroe Suite 230
                                                Chicago, IL 60606
                                                312-300-4484

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that he electronically filed the foregoing document on December 19, 2023, with the Northern District of Illinois ECF System, serving a copy to all parties.

                                                */s/ Zachary G. Stillman*
                                                Zachary G. Stillman