IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DONALD HENNEBERG,<br><br>      Plaintiff,<br><br>v.<br><br>TOM DART, ET AL.,<br><br>      Defendant. | Case No. 1:19-cv-07380<br><br>Judge:    Honorable Jeremy Daniel |

**PLAINTIFF'S OPPOSED CROSS-MOTION TO COMPEL DISCOVERY
AND MEMORANDUM OPPOSING DEFENDANTS' MOTION FOR PROTECTIVE
ORDER**

Dated: January 12, 2024

Respectfully submitted,

By: /s/ *Maria E. Doukas*
Philip A. Miscimarra
Maria E. Doukas
Morgan, Lewis & Bockius LLP
110 N. Wacker Drive, Suite 2800
Chicago, Illinois 60606-1511
Phone: 312.324.1000
Fax: 312.324.1001
philip.miscimarra@morganlewis.com
maria.doukas@morganlewis.com

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................................. 1

II. BACKGROUND ............................................................................................................... 2

III. PLAINTIFF'S DISCOVERY REQUESTS AND PREVIOUS DISCOVERY MOTION .......................................................................................................................... 2

IV. APPLICABLE LEGAL STANDARDS ........................................................................... 5

V. ARGUMENT .................................................................................................................... 6

    A. Defendant Dart Should be Compelled to Produce the Requested Incident Reports and Inmate Grievance Documents for Phone-Related Assaults ............... 6

        1. Incident Reports and Grievances Between 2015-2019 ............................. 6

        2. Incident Reports and Grievances Between 2010-2014 ............................. 9

    B. Defendants Should be Compelled to Produce Medical-Related Documents from January 1, 2010 to December 31, 2019 ....................................................... 10

    C. The Deposition of Scott Jakubowski Should Be Allowed ................................... 11

    D. Additional Discovery Defendants Should be Compelled to Produce ................. 12

        1. Information Regarding Other Civil/Criminal Claims Against Defendants ................................................................................................ 12

        2. Information Regarding DOJ Investigation in Case No. 10-02946 .......... 13

        3. Information Regarding Potential Witnesses ........................................... 14

        4. Information Regarding Internal Policies and Complaints ...................... 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Arsberry v. Wexford Health Sources, Inc.*,
    No. 3:17-CV-50044, 2021 WL 5232733 (N.D. Ill. Nov. 10, 2021) ......................................6, 14

*Awalt v. Marketti*,
    No. 11 C 6142, 2012 WL 6568242 (N.D. Ill. Dec. 17, 2012) .............................................6, 13

*Biggart v. Vibra Hosp. of Springfield, LLC*,
    No. 19-CV-3215, 2021 WL 3264409 (C.D. Ill. July 30, 2021).................................................11

*Bond v. Utreras*,
    585 F.3d 1061 (7th Cir. 2009) ...................................................................................................5

*Howell v. Wexford Health Sources, Inc.*,
    987 F.3d 647 (7th Cir. 2021) .....................................................................................................7

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978)...................................................................................................................5

*Prince v. Kato*,
    18 C 2952, 2020 WL 1874099 (N.D. Ill. Apr. 15, 2020) ............................................7, 8, 9, 11

*Reed v. Wexford Health Souces, Inc.*,
    No. 20-CV-01139-SPM, 2023 WL 7678975 (S.D. Ill. Nov. 15, 2023).........................8, 10, 15

I.        **INTRODUCTION**

Defendants have steadfastly refused to engage in meaningful discovery for more than 18 months—spanning two assigned judges—despite Plaintiff's repeated efforts to compromise regarding the scope of discovery, and persistent efforts to engage Defendants in meet-and-confer discussions. As set forth below, Plaintiff seeks the Court's assistance regarding straightforward issues, through Plaintiff's Opposed Motion to Compel Discovery. Additionally, for most of the same reasons, this submission also constitutes Plaintiff's Memorandum in Opposition to Defendants' Motion for a Protective Order (Dkt. 149) (hereinafter, "Defendants' Motion").

Defendants' rationale for refusing to produce responsive information boils down to their contention that Defendants need not provide relevant discovery—regardless of its relevance and reasonableness—because complying with their discovery obligations would be time-consuming. Not only is Defendants' view as to what constitutes "unduly burdensome" discovery incorrect, it also ignores Plaintiff's repeated and reasonable efforts to reach a compromise by narrowing the scope of discovery. Moreover, Defendants' reference to the hours they claim would be required to provide the requested discovery, if true, is a problem of their own creation due to Defendants' outdated method of storing files in Cook County Jail and at Cook County Cermak Health Service ("Cermak"). As Judge Ellis aptly stated during the parties' January 4, 2023 hearing relating to these same discovery issues, "the jail does need to come into the 21st century in terms of how it keeps its records." Dkt. 149-3 at 8:1-3. Plaintiff should not be precluded from pursuing important claims—as to which the Court long ago denied Defendants' motion to dismiss, and Defendants' motion to bifurcate Plaintiff's individual and *Monell* claims—merely because of Defendants' outdated record-keeping methods. For these reasons, Defendants' Motion for a Protective Order should be denied, and Plaintiff's Motion to Compel should be granted.

## II. BACKGROUND

As outlined in the Second Amended Complaint, Plaintiff's claims include not only violations of his fourteenth amendment rights for (i) deliberate indifference to his medical condition and (ii) failure to provide to safe and hospitable prison conditions resulting in an assault by another inmate, but also the following two *Monell* claims: (i) failing to implement an adequate policy to ensure access to prescription eyeglasses, and (ii) failing to implement policies and train correctional officers to protect detainees from physical assault by other detainees. Dkt. 65. Notably, the Court denied *both* Defendants' Motion to Dismiss the *Monell* claims (Dkt. 54), *and* Defendants' Motion to Bifurcate and Stay Discovery on the *Monell* claims (Dkt. 125).

## III. PLAINTIFF'S DISCOVERY REQUESTS AND PRIOR DISCOVERY MOTION

On November 23, 2022, the parties filed a Joint Discovery Motion asking the Court to help resolve then-pending discovery disputes. Dkt. 85. Specifically, Plaintiff sought documents (such as grievance forms) identifying other inmates suffering from similar medical issues and/or assaults similar to Plaintiff's claim, as this information is relevant to Plaintiff's pending *Monell* claims.

On January 4, 2023, the parties appeared before Judge Sara L. Ellis to discuss the Joint Discovery Motion. Of relevance to Defendants' Motion and Plaintiff's Cross-Motion to Compel, at this January 4, 2023 hearing, the parties discussed Plaintiff's request for grievances of other inmates who had also suffered from assaults related to phone use in Cook County Jail. At the hearing, Defendants presented a witness, John Mueller, who discussed the process by which Cook County Jail maintains records of grievances filed by inmates. Dkt. 149-3 at 5:4-9. At the hearing, Defendants also presented arguments much like those they rehash now regarding the supposedly undue burden of searching for grievances of other inmates, including arguing at the January 4 hearing that Defendants "just can't do the grievances." Dkt. 149-3 at 15:5-7.

In response, Judge Ellis expressly asked Defendants if, for telephone-related assaults, they

would be willing to search for relevant incident reports, provide those reports to Plaintiff, and have Plaintiff review those reports to identify individuals involved from which related grievances can be located and produced. Dkt. 149-3 at 15:8-23. Defendants stated that these sorts of searches for grievances "are feasible," and the parties agreed on this process to address Plaintiff's request for other inmates' grievances for phone-related assaults. Dkt. 149-3 at 16:12-19; *see also id.* at 16:20-17:8. Judge Ellis granted the Joint Discovery Motion "as stated on the record." Dkt. 92.

Following this hearing, on February 2, 2023 and February 27, 2023, based on a word search devised unilaterally by Defendants without consultation with Plaintiff, Defendants produced 2,178 Incident Report summaries for the 2015-2019 time period that it stated encompassed all phone-related assaults. Dkt. 149-3 at 5-6. After receiving these Incident Report summaries, Plaintiff's counsel devoted enormous time reviewing every one of these summaries and, on April 10, 2023, Plaintiff identified to Defendants (i) a subset of 1,534 Incident Reports for Defendants to produce in hard copy form ("pdf" format), and (ii) a subset of 876 Incident Reports for Defendants to produce the existing inmate Grievance Documents that reflected or related to those Incidents.

However, Plaintiff's counsel also advised Defendants that the Incident Report summaries produced by Defendants appeared obviously incomplete. Most notably, missing from the production was the incident report reflecting Plaintiff's June 17, 2019 phone-related assault by another inmate—which gives rise to one of Plaintiff's two primary claims in this case. After back-and-forth exchanges between the parties, on September 21, 2023, Defendants provided an updated list of Incident Report summaries that included nearly four times as many as they had originally produced in February 2023. Specifically, the September 21, 2023 spreadsheet produced by Defendants contained 8,527 Incident Reports from the 2015-2019 time period. Dkt. 149-3 at 5.

Significantly, this subsequent production of Incident Report summaries was based on

substantially expanded word searches—jointly formulated by Plaintiff's and Defendants' counsel. It reflected extensive videoconferences and exchanges between Plaintiff's counsel, Defendants' counsel, and Scott Jakubowski—the Cook County Sheriff's Chief Data Officer—who was the person identified by Defendants' counsel as being most knowledgeable about the structure and content of the Cook County Jail "Incident Report" database. This database had been modified at different times and had many different types of complicated fields—some involving drop-down menus and others permitting the entry of narrative text and additional variables.

Plaintiff's counsel took additional time and effort to go through each of the 8,527 Incident Report summaries, in an attempt to narrow them down to a smaller subset of Incident Reports from which associated grievances should be pulled. Specifically, Plaintiff identified a subset of 965 Incident Reports that it requested Defendants produce in hard copy form (i.e., pdf), and then requested the associated grievance documents related to only 588 of these Incident Reports. In other words, Plaintiff **significantly narrowed** the universe of Incident Reports about which it sought further discovery, going from the more than 8,500 identified by Defendants to requesting associated grievances for less than 7% of the total Incident Reports (i.e., 588 Incident Reports). Dkt. 149-3 at 5. Despite these efforts by Plaintiff, and the discussion before the Court at the January 4, 2023 hearing, Defendants still maintain their refusal to provide this discovery to Plaintiff. Instead, Defendants have arbitrarily demanded that Plaintiff narrow its requests down to only 50 Incident Reports and related grievances. Dkt. 149 at 15; Dkt. 149-3 at 10.

In addition to inmate grievances for phone-related incident reports, Plaintiff also seeks other categories of information relevant to his claims. Specifically, as summarized in the parties' correspondence, Plaintiff seeks the following categories of information: (i) information and documents on similar claims and lawsuits against Defendants; (ii) phone-related incident reports

from January 1, 2010 – December 31, 2014 and associated inmate grievance reports; (iii) information and documents relating to government investigations into Cook County Jail's failure to provide adequate medical care or failure to protect inmates'; (iv) identification of potential witnesses; (v) training and discipline related documents; and (vi) documents relating to Defendant Sheriff Dart's policies and procedures. Dkt. 149-1 at 1-4; *see also* Ex. A. Despite this information being responsive to interrogatories and/or requests for production served on Defendants, Defendants have refused to provide this information.

On October 27, 2023, Plaintiff also served his request to take the deposition of Mr. Scott Jabukowski, Chief Data Officer within the Cook County Sheriff's Office. Dkt. 149-1 at 11. As noted in Defendants' Motion, Defendants refuse to make him available.

## IV. APPLICABLE LEGAL STANDARDS

Discovery is designed "to help define and clarify the issues" of the case. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). To that end, "[t]he Federal Rules of Civil Procedure broadly permit parties in litigation to obtain discovery 'regarding any nonprivileged matter that is relevant to any party's claim or defense.'" *Bond v. Utreras*, 585 F.3d 1061, 1067 (7th Cir. 2009) (citing Fed. R. Civ. P. 26(b)(1)). Relevant discovery is expansively construed and constitutes "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer,* 437 U.S. at 351. Federal Rule of Civil Procedure 26(b)(1) provides "[a] party seeking such discovery should point to something that demonstrates that the requested documents are both relevant and proportional to the needs of the case." Rule 26(b)(1) requires parties and the court to consider the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Arsberry v. Wexford Health*

*Sources, Inc.*, No. 3:17-CV-50044, 2021 WL 5232733, at *3 (N.D. Ill. Nov. 10, 2021). Additionally, the scope of relevance does not require discovery documents be admissible. *Awalt v. Marketti*, No. 11 C 6142, 2012 WL 6568242, at *3 (N.D. Ill. Dec. 17, 2012).

V.     **ARGUMENT**

    A.     **Defendant Dart Should be Compelled to Produce the Requested Incident Reports and Inmate Grievance Documents for Phone-Related Assaults[1]**

        1.     **Incident Reports and Grievances Between 2015-2019**

Defendants' request for a protective order relating to the 965 Incident Reports and 588 associated grievances should be denied, and Defendant Dart should be compelled to produce these requested documents. As discussed in Section III, *supra*, Defendants produced over 8,500 Incident Report Summaries for phone-related assaults occurring between 2015-2019. Plaintiff, consistent with Judge Ellis' January 4, 2023 Order, spent considerable time and effort combing through these summaries to identify a narrower subset of incidents for which to seek further discovery. Specifically, from the more than 8,500 summaries provided, Plaintiff requested that Defendants only produce hard copies of 965 of the Incident Reports, and requested that Defendants search and produce related inmate grievances for only 588 of those Incident Reports. This amounts to less than 7% of the total Incident Report Summaries that Defendants originally produced.

Despite Plaintiff's substantially narrowed request and repeated efforts to compromise, Defendants steadfastly refused to produce this responsive information under the guise of undue burden. But Defendants' argument ignores statements that it made before Judge Ellis at the January 4, 2023 hearing, at which the parties discussed Defendants' outdated recordkeeping system and how Plaintiff can still obtain the information to which he is entitled through discovery into his

---

[1] These incident reports and inmate grievances are responsive to at least Second RFP Nos. 43-44 to Defendant Dart (Ex. F); *see also* Dkt. 149-1 at 2; Ex. A at 3-4.

claims. Judge Ellis expressly asked Defendants if they could search for and produce grievances related to specific incident reports; Defendants stated this would be "feasible." Dkt. 149-3 at 15:8-17:8. Defendants have no basis to refuse to produce the subset of documents that Plaintiff requests, particularly after Plaintiff did his part substantially narrowing the universe of discovery sought.

Defendants' argument that it "would be overly burdensome, duplicative, and would not advance the needs of the case" to produce this information, Mot. at 9, is unavailing and ignores the nature of *Monell* claims, which necessitates a broader discovery standard than the typical standard. *See Prince v. Kato*, 18 C 2952, 2020 WL 1874099, at *2 (N.D. Ill. Apr. 15, 2020) ("[T]he Court is mindful that *Monell* discovery is inherently time-consuming and voluminous, and the Court should also not excessively limit discovery such that it affects Plaintiff's ability to prove his claim at trial."); *see also Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 655 (7th Cir. 2021) ("[T]here can be little doubt that a practice or custom theory will be more persuasive if a plaintiff can show that the defendant government or company treated other, similarly situated [individuals] in similar unconstitutional ways.").

Defendants' argument also ignores Plaintiff's substantial burden in proving his *Monell* claims, and the relevance of the information sought that outweighs any alleged burden. To succeed on his *Monell* claim, Plaintiff must prove the widespread unwritten policies or practices of the municipality caused his injuries. *See Prince,* 2020 WL 1874099, at *1. Plaintiff can prove a widespread practice or policy, and that it resulted in his injuries, by showing similarly situated inmates were subject to the same policies that resulted in the same injury and outcome. *See Reed v. Wexford Health Souces, Inc.*, No. 20-CV-01139-SPM, 2023 WL 7678975, at *5 (S.D. Ill. Nov. 15, 2023). Plaintiff seeks to prove, by act or omission, the correctional officers at Cook County Jail and Sheriff Dart's policies failed to adequately protect inmates from violence. To prove this,

Plaintiff must receive incident reports and grievance documents from various inmates detailing the same acts or omissions from Defendants caused the inmates injuries similar to Plaintiff's.

The information sought in the incident reports and grievance documents are akin to that of the homicide files in *Prince v. Kato*. In *Prince*, plaintiff claimed he was coerced into a confession through intimidation, physical violence, starvation, and sleep deprivation. *Prince*, 2020 WL 1874099, at *2. Plaintiff requested, and the court approved, for Defendants to produce all homicide files in his area, to prove that others who were under investigation also fell victim to the widespread unwritten policy and custom of coercing suspects into false pleas. *Id.* ("It is important to recognize that Plaintiff is attempting to prove a widespread policy or custom of significant misconduct by police officers in homicide investigations at Area Four prior to the 1991 Porter murder. In general, homicide files are important pieces of evidence of what actually transpired during Area Four homicide investigations up to that point.").

Similarly, Plaintiff seeks to prove Defendants Cook County Jail and Sheriff Dart failed to protect inmates from gang-affiliated control of the telephones and, as a result, that individuals fell victim and suffered injuries due to the widespread customs and failure to implement appropriate safety policies. This relevant information is located within the incident reports and grievance documents that Plaintiff seeks.

The cases Defendants cite do not support their argument. Neither *Bell v. Fredrickson* nor *Rowe v. Morton* involved *Monell* claims. *Bell*, 2006 WL 2850477, at *1 (C.D. Ill. Oct. 3, 2006); *Rowe*, 525 F. App'x 426, 427 (7th Cir. 2013). While *Wright v. City of Chicago* alleged a *Monell* claim, the plaintiff was not an incarcerated individual, but rather a citizen who was arrested, had his car impounded, released, had his charges dropped, and then arrested and had his car impounded a second time. 2010 WL 4875580, at *1 (N.D. Ill. Nov. 23, 2010). The *Wright* plaintiff claimed

his car was impounded a second time in retaliation for having his previous charges dropped; he requested discovery, which the Court deemed too broad in scope given his claims. *Id.*, at \*1-2. For example, plaintiff requested *all* internal disciplinary records related to assaults and battery, when his *Monell* claim challenged the widespread customs and policies of the City's impounding procedures. *Id*. This is not the case here, where Plaintiff already narrowed the scope of his request to incident reports and grievance documents for phone-related inmate violence in Cook County Jail—the very misconduct Plaintiff himself suffered.

Thus, Defendants' Motion should be denied, Plaintiff's Motion should be granted, and Defendants should be compelled to produce the 965 incident reports and all existing Inmate Grievance documents relating to the subset of 588 Incident Reports identified by Plaintiff.

### 2. Incident Reports and Grievances Between 2010-2014

Plaintiff not only requested incident reports and inmate grievances between 2015-2019, but also seeks this information going back to 2010. Defendants have not provided any such records before 2015, maintaining their objection that this is "an irrelevant timeframe." Mot at 13. Not so.

The central burdens that Plaintiff must address in this case is whether Defendants acted "purposefully, knowingly, or perhaps recklessly," exhibited "deliberate indifference," and/or violated the rights of Plaintiff and other inmates by failing to "implement policies and to train correctional officers to protect detainees from physical assault by other detainees" and provide for adequate medical care. *See, e.g.*, Dkt. 54 at 1, 6-10 (Court's order denying motion to dismiss). Significantly, as recognized by Defendants, in 2010, one or more Consent Decrees were entered in a case initiated by the Department of Justice against Cook County Jail (No. 10 cv 2946), which pertained to Defendants' violations of inmate rights by failing to protect them from violence while incarcerated and regarding medical care. Mot. at 2-3. Given the relevance of this Consent Decree and subsequent monitoring reports, whereby Cook County Jail was put on notice of safety risks of

inmates, Plaintiff is entitled to seek discovery over this timeframe. That the Consent Decree was dismissed a year before Plaintiff was incarcerated is irrelevant to Plaintiff's *Monell* claim. Plaintiff must only demonstrate an ongoing custom and policy that resulted in their injuries and is entitled to seek discovery from before 2015. *See Reed*, 2023 WL 7678975, at *5.

As such, Defendants should be compelled to produce incident reports and associated grievances for phone-related inmate assaults occurring between 2010-2014.

### B. Defendants Should be Compelled to Produce Medical-Related Documents from January 1, 2010 to December 31, 2019

Plaintiff has also requested documents from Cook County Jail and/or Cermak from January 1, 2010 through December 31, 2019 relating to the evaluation, assessment, and/or response to Cook County Jail inmates' requests, grievances, or complaints regarding similar medical claims as that suffered by Plaintiff (i.e., prescription eyeglass need).[2] While Defendants have produced some policy documents, they have failed to produce inmate grievances and responses to inmate grievances relating to vision care of Cook County Jail inmates.

Defendants argue that they cannot produce this information because it is "irrelevant, a waste of time, and overly burdensome." Mot. at 11. Yet again, Defendants' argument ignores that "*Monell* discovery is inherently time-consuming and voluminous," and Plaintiff is entitled to seek discovery to support this claim. *Prince*, 2020 WL 1874099 at *2. Moreover, Defendants' argument that this information is "irrelevant" ignores that their Motion to Dismiss conceded that to establish a *Monell* claim, "Plaintiff must show a pattern of constitutional violations; a single act of misconduct will not suffice," Dkt. 40 at 10; must point to "other incidents where other detainees did not receive prescription eyeglasses or were denied medical care despite their serious needs";

---

[2] This information is responsive to at least RFP No. 11(g) to Defendant Cook County (Dkt. 85-3) and Defendant Dart (Dkt. 85-7), as well as RFP No. 12(g) to Defendant Shebel (Dkt. 85-5).

and must "allege specific similar incidents where other detainees were Assaulted," *id*. at 12. Therefore, by Defendants' own admission documents reflecting similar incidents and identifying other inmates who suffered similar deprivations are necessary for Plaintiff to evaluate and prove his claims. Defendants' refusal to provide this same information unfairly prejudices Plaintiff.

Defendants also object to Plaintiff's request based on "HIPAA concerns." Mot. at 3. But, as noted by Plaintiff in earlier correspondence, privacy and HIPAA rights of other pretrial detainees is no basis to withhold relevant documents in their entirety when the parties can enter into a HIPAA protective order. *See Biggart v. Vibra Hosp. of Springfield, LLC*, 2021 WL 3264409 at *8 (C.D. Ill. July 30, 2021) (overruling objection and holding defendant had to produce records of employees who had made particular complaints because "[a]ny documents governed by HIPAA shall be subject to the terms of the HIPAA Protective Order.").

Plaintiff is alleging injury due to failure to respond timely and an indifference to requests, grievances, and complaints of eye issues like those Plaintiff raised, as well as harm stemming from those eye issues. Since these directly align with Plaintiff's injuries, the requests are relevant, limited in scope, proportional to the needs of the case, and are not burdensome. For the reasons above, Defendants should be ordered to produce the requested medical-related documents.

### C. The Deposition of Scott Jakubowski Should Be Allowed

Plaintiff also requests that the Court deny Defendants' Motion that Mr. Scott Jakubowski cannot be deposed and instead issue an order compelling his deposition because his testimony is relevant to issues present in the case for the following reasons.

*First*, as discussed, a central issue in this case involves how many inmates, according to the Cook County Jail's Incident Report database, have been assaulted based on the Jail's failure to adopt reasonable protective measures relating to disputes that involve or arise from the inmates' use of telephones. Through discovery, it has become readily apparent that the structure and content

of this database is complicated; the types of data fields and their functions were modified at multiple points in time; and it is predictable that details regarding the "Incident Report" database will bear on central issues to be addressed at trial and in the remainder of discovery. Moreover, Mr. Jakubowski was identified by Defendants' counsel as the person most knowledgeable regarding the content and structure of the "Incident Report" database because he is the Chief Data Officer for the Defendant Cook County Sheriff's Office.

*Second*, as discussed in Section III, Defendants initially produced a set of Incident Report summaries in February 2023 based on its unilaterally formulated word searches that, most notably, did not identify or include Plaintiff's own June 17, 2019 assault by another inmate—even though the Incident Report expressly states that the assault occurred because of a dispute over the phone.

*Third*, as Plaintiff's requests include inmate grievance forms and incident reports from the 2010-2014 timeframe, and Defendants have represented that such electronic records do not exist, Mr. Jakubowski's deposition will shed light on the extent to which relevant information regarding the 2010-2014 timeframe is readily available, and in what form it has been retained. As such, Plaintiff respectfully requests the Court compel Mr. Jakubowski to present himself for deposition.

    **D.**    **Additional Discovery Defendants Should be Compelled to Produce**

        **1.**    **Information About Other Civil/Criminal Claims Against Defendants**

Plaintiff seeks information (both documents and interrogatory responses) regarding other civil and/or criminal claims against Defendants between January 1, 2010 and December 31, 2019, regarding (i) the failure to protect inmates from violence at Cook County Jail, and/or (ii) deficient medical care to inmates by Cermak Health Services at Cook County Jail, including documents reflecting the DOJ's investigation and findings of any unconstitutional conditions at Cook County

Jail.[3] Defendants have refused to provide such information, arguing, among other things, that these requests for documents and information are irrelevant, unduly burdensome, unlikely to lead to admissible evidence, and can be obtained by other discovery methods.

But discovery does not need to be admissible evidence. *See Awalt v. Marketti*, 2012 WL 6568242, at *3 (N.D. Ill. Dec. 17, 2012). The requested information is relevant for Plaintiff to prove there is an ongoing and widespread policy or custom that placed similarly situated inmates in the same place, and who experienced similar injuries. Moreover, the requests are relevant, within a defined time period, limited in scope to the specific types of investigations, lawsuits, and complaints, and are not burdensome, as such documents are within Defendants' possession.

### 2. Information Regarding DOJ Investigation in Case No. 10-02946

Plaintiff has also requested information relating to the DOJ's investigation in Case No. 10-02946, including identifying current employees of Defendant Dart and/or Defendant Cook County that had a role in the DOJ investigation.[4] Plaintiff also requests documentation provided by Defendants to the DOJ during this litigation, which gave rise to the 2010 Consent Decree. For reasons discussed, the Consent Decree and the corresponding litigation are highly relevant to Plaintiff's *Monell* claims as they implicate the same issues. The relevance of this information outweighs any alleged burden by Defendants to produce such information.

---

[3] This information is responsive to at least Interrogatory Nos. 6-9 to Defendant Cook County (Ex. B); Interrogatory Nos. 28-31 to Defendant Dart (Ex. C); RFP Nos. 22 and 29 to Defendant Shebel (Dkt. 85-5; Ex. D); RFP Nos. 19 and 30 to Defendant Cook County (Dkt. 85-3; Ex. E); RFP Nos. 38 and 48 to Defendant Dart (Dkt. 85-7; Ex. F).

[4] This information is responsive to at least RFP No. 19 to Defendant Cook County (Dkt. 85-3), RFP No. 22 to Defendant Shebel (Dkt. 85-5), RFP No. 38 to Defendant Dart (Dkt. 85-7), as well as responsive to Second Interrogatory No. 5 to Cook County (Ex. G) and No. 27 to Defendant Dart (Ex. H).

### 3. Information Regarding Potential Witnesses

Plaintiff has also requested documents identifying inmates who filed vision-related grievances at Cook County Jail and identifying inmates in Division 10, where Plaintiff was housed, in 2019.[5] Federal Rules of Civil Procedure 26(a)(1)(A)(i) requires Defendants to disclose the information of individuals who may have discoverable information. Plaintiff seeks the identity of additional inmates who, upon information and belief, have also been victimized by Defendants' policies and customs that failed to protect them from violence and receiving adequate medical care. It is established law that plaintiffs alleging inadequate medical treatment are entitled to medical records of other inmates similarly situated for *Monell* and Fourteenth Amendment claims. *See Arsberry v. Wexford Health Sources, Inc.,* No. 3:17-CV-50044, 2021 WL 5232733, (N.D. Ill. Nov. 10, 2021); *see also Reed v. Wexford Health Souces, Inc.*, No. 20-CV-01139-SPM, 2023 WL 7678975 (S.D. Ill. Nov. 15, 2023). All information requested is relevant, limited in scope, and narrowly tailored as it pertains to Plaintiff's claims of inmate violence, inadequate medical treatment associated with vision and head trauma, and the housing unit where he was detained. The burden of producing such requests do not outweigh the relevance of the information for Plaintiff to reach his burden of proof.

The above information and documents requested are relevant to Plaintiff's case and should be provided by Defendants.

### 4. Information Regarding Internal Policies and Complaints

Plaintiff also requested various policy documents, including (i) policies and training for correctional officers, including Defendant Arias, for responding to inmate safety concerns; (ii) Cook County Jail and Cermak policies from January 1, 2010 through December 31, 2019, as well

---

[5] This information is responsive to at least RFP No. 17 to Defendants Cook County (Dkt. 85-3), RFP Nos. 17 and 29 to Defendant Dart (Dkt. 85-7), and RFP No. 18 to Defendant Shebel (Dkt. 85-5).

as documents reflecting training, supervision, and discipline of employees of Cook County Jail and Cermak, regarding the diagnosis, treatment, and monitoring of Cook County Jail inmates relating to vision-related issues; and (iii) Defendant Dart's responsibilities, policies, and management.[6] Plaintiff has also requested documents reflecting reports or complaints from inmates, including Plaintiff, regarding gang violence, the "Latin Kings," or restrictions placed on phone use in Cook County Jail.[7]

For similar reasons, this information is relevant to Plaintiff's *Monell* claims, as it will help prove a widespread policy and custom by Defendants to violate Plaintiff's constitutional rights, is narrowly tailored, limited in scope, relevant, and the burden of producing such documents in Defendants' possession does not outweigh the relevance and necessity of such documents for Plaintiff to adequately his claims.

## VI. Conclusion

For all the reasons stated herein, Plaintiff respectfully requests the Court deny Defendants' Motion for Protective Order and grant Plaintiff's Cross-Motion to Compel.

---

[6] This information is responsive to at least RFP No. 10-12 to Defendant Arias (Ex. I), RFP Nos. 11(d) and 12 to Defendant Cook County (Dkt. 85-3), RFP Nos. 12(d) and 13 to Defendant Shebel (Dkt. 85-5), and RFP Nos. 11(d), 12, 19, and 21(b) to Defendant Dart (Dkt. 85-7).

[7] This information is responsive to at least RFP Nos. 22 and 30-35 to Defendant Dart. (Dkt. 85-7).

Dated: January 12, 2024

Respectfully submitted,

By: /s/ *Maria E. Doukas*
Philip A. Miscimarra
Maria E. Doukas
Morgan, Lewis & Bockius LLP
110 N. Wacker Drive, Suite 2800
Chicago, Illinois 60606-1511
Phone: 312.324.1000
Fax: 312.324.1001
philip.miscimarra@morganlewis.com
maria.doukas@morganlewis.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

      I certify that a copy of the foregoing document was served via CM/ECF on January 12, 2024 upon all counsel of record.

/s/ *Maria E. Doukas*
Maria E. Doukas