UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DONALD HENNEBERG, ) | |
| ) | |
| Plaintiff, ) | Case No. 19-cv-07380 |
| ) | |
| v. ) | Hon. Jeremy Daniel |
| ) | |
| TOM DART, SUSAN SHEBEL, R.N., ) JOHN DOE MEDICAL DEFENDANTS, ) CORRECTIONAL OFFICER JORGE ) ARIAS, and COOK COUNTY, ILLINOIS, ) ) Defendants. ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S CROSS MOTION TO COMPEL AND REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

NOW COME Defendants, COOK COUNTY SHERIFF THOMAS DART, and COOK COUNTY, a body politic and corporate, by their attorneys Jason E. DeVore and Troy Radunsky, of DeVore Radunsky LLC, for their Response to Plaintiff's Cross-Motion to Compel Discovery (Dkt. 157) and Reply in Support of Defendants' Motion for Protective Order (Dkt. 149), and state as follows:

**INTRODUCTION**

The premise and primary theme of Plaintiff's Cross Motion to Compel is wrong. It is undisputed that Plaintiff has known since early 2023 that fulfilling his remaining discovery requests would require hundreds of hours to complete and are duplicative and unduly burdensome. Indeed, Plaintiff does not challenge Defendants' contentions that his discovery is costly and unduly burdensome. Plaintiff instead asserts that he is entitled to the requested documents because of the "substantial burden" of proof for his *Monell* claims. Although Plaintiff asserts that he has "significantly narrowed" the scope of discovery, a review of his requests for nearly one thousand PDF-format Incident Reports (duplicating data already produced), that assertion is belied by the

1

request for a separate search for documents supporting nearly 600 of those Incident Reports, as well as a decade of documents untethered from his complaint. As such, Plaintiff's requests are specifically prohibited by Rule 26(b)(2)(B) and his arguments to the contrary are unavailing. For the reasons set forth in Defendants' Motion for Protective Order and their Reply, Plaintiff's Motion to Compel should be denied and Defendants' Motion for a Protective Order should be granted.

Plaintiff's assertion that the spreadsheets produced by Defendant Sheriff in February 2023 containing the substantive data for 2,178 Incident Reports covering the period of January 1, 2015, through December 31, 2019,[1] were "based on a word search devised unilaterally by Defendants without consultation with Plaintiff . . . ." Dkt. 157 at 3 (hereinafter "Pl.'s Br.") is patently untrue. The initial word search was conducted pursuant to Plaintiff's January 2023 request. Ex. A at 4 (describing Plaintiff's request to produce "any incident reports involving gang fights or jail fights of any kind between 2015-2019"). Plaintiff puts forth no evidence to the contrary.

In response to Defendants' February 2023 production, Plaintiff's counsel insisted that they were entitled to data concerning *all* fights over that four-year period, but never requested different word search terms. *See, e.g.*, Ex. A at 3 ("[W]e reiterate our strong disagreement with your suggestion that the production of 'incident reports' can be limited in scope to those incident reports that only pertain to inmate assaults and the use of telephones during the 2015-2019 period."). In

---

[1] Defendants produced the substantive data for 2,130 Incident Reports covering the period of January 1, 2015, through December 31, 2019, in Excel form. To do so, Defendant first produced detailed data for all the Incident Reports it located which met Plaintiff's word search criteria of "fights" over "phones" or "telephones." Ex. B. Defendant CCSO exported directly from its offender management system the detailed data for 2,030 Incident reports and produced the same to Plaintiff on February 2, 2023. *Id.*; *see* CCSAO 001996. On February 27, 2023, Defendants produced the substantive data for an additional 148 Incident Reports. Ex. C.

On September 21, 2023, Defendants produced another Excel spreadsheet that contained 8,527 Incident Reports covering the same 2015 to 2019 period. *See* Pl.'s Br. at 6; Defs.' Br. at 2, 5, 6.

fact, Plaintiff's counsel's repeated objections—that Plaintiff was entitled to *all* incident reports about fights in the CCDOC, not just fights over about phones—demonstrates that Plaintiff was aware of the word search parameters but wanted no search terms at all. Plaintiff wanted *all* reports about *all* fights, period. *See* Ex. A at 2 ("Defendants have persisted in only providing descriptions of incident reports that pertained only to phone or telephone use, while disregarding all other incident reports during the relevant period relating to inmate assaults generally, and/or relating to inmate assaults involving potential gang members.").

During proceedings on March 7, 2023, the Court stated that Plaintiff's discovery should "focus on what happened to Mr. Henneberg, the reason for the assault, [and] the number of incidents that would have put the jail on notice that this is the type of interaction that would require tightened monitoring." Ex. D at 7:17-22 (transcript of proceedings on Mar. 7, 2023).

Plaintiff ultimately identified a subset of 965 Incident Reports from the data contained in the February 27, 2023 spreadsheet and requested that they be reproduced in individual PDF reports rather than a single spreadsheet. Dkt. 149-1 at 5. Plaintiff also identified 588 Incident Reports and requested Defendant CCSO search to see if any of the detainees named in those 588 reports filed a grievance. *Id.* Defendants replied that this request would require hundreds of hours to satisfy and asked Plaintiff to identify any priorities so that Incident Reports could be produced while the parties work on a compromise. *Id.* at 10.

Although the burden of Plaintiff's requested production has been explained multiple times, Plaintiff has been unwilling to work with Defendants to bring his requests down to a manageable level, relying instead on "narrowed" scope of his request. Yet at every turn, Defendants have timely complied with Plaintiff's requests by working with his counsel to adjust the search terms as

3

requested and provide extensive Incident Reports data. Ex. E at 17-21, 22, 7-13, 1; Dkt. 149-4 at 3-5.

Now, despite Defendants' good-faith attempts to resolve this discovery dispute through many meet and confers,[2] numerous emails, multiple searches conducted pursuant to Plaintiff's requests, plus a jointly agreed upon discovery schedule, Plaintiff reiterates the same objection he had raised since April 2023: He simply does not like the results of his word searches and refuses to discuss production parameters that might take size and burden into account. Plaintiff, unable to identify similar situations or witnesses to support his *Monell* claim, now seeks to harangue Defendants with the burden of finding evidence to support his claim that, in the words of the Court, is "like icing on the cake" and "doesn't translate into monetary value" for Plaintiff. Dkt. 149-3 at 34:25, 35:11-12 (transcript of proceedings on Jan. 4, 2023).

Remember, Plaintiff's claim is that Defendants failed to protect him from a fight that resulted from a dispute over the use of the phones on his tier, and separately, that he did not receive glasses fast enough. The discovery Plaintiff wants is a sideshow to a sideshow—detainee grievances (handwritten, subjective complaints written by detainees) that Plaintiff hopes may describe the reason for other detainee fights Plaintiff was not a part of. That is, at best, a fishing expedition, and more likely a brute force attempt to make Defendants give up in the face of costly, unnecessary, and abusive discovery. Plaintiff refuses to litigate his actual claim and refuses to use the Incident Report data that he already possesses.[3] Instead, Plaintiff focuses inordinately on *Monell* aspect of this litigation even though it does nothing to strengthen his claim or establish

---

[2] *See* 149-1 at 1 (describing meet-and-confer sessions between counsel on November 13, 2023 and November 21, 2023; Dkt. 149-4 (describing a meet-and-confer on August 29, 2023).

[3] For example, Plaintiff can easily identify individuals named in those reports and investigate or depose the persons involved.

4

damages. Plaintiff is not entitled to more discovery, especially when he has made no attempt to use the substantive incident information that he has possessed for almost a year. Plaintiff's Cross Motion remains meritless and should be denied.

## **ARGUMENT**

As an initial matter, although Plaintiff claims that the information he seeks is responsive to his requests, responsiveness is not the standard courts apply.[4] Rather, Federal Rule of Civil Procedure 26 sets the scope of discovery to include "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). Multiple factors guide the court's analysis of proportionality, including the importance of the issues, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Id.* These factors favor Defendants and Plaintiff's requests fail that fundamental test.

I. **Plaintiff's Request for Duplicate Production of 965 Incident Reports and a Minimum of 588 Searches for Grievance Records Spanning from January 1, 2014, to December 31, 2019, is the Definition of Overbroad and Unduly Burdensome.**

Plaintiff argues that his requests are not burdensome because he has "significantly narrowed the universe of Incident Reports" he seeks. Pl.'s Br. at 4. However, the broad scope of Plaintiff's request is of his own making, and he cannot now pretend that his request is reasonable when he merely made an unreasonable request slightly less unreasonable.

---

[4] Plaintiff also misstates the scope of discovery. Citing *Oppenheimer*, 437 U.S. at 351, Plaintiff asserts that "relevant discovery is expansively construed and constitutes any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" Pl.'s Br. at 5. This standard, however, ignores the 2015 amendment to Rule 26, which was "designed to reduce the amount of unnecessary and excessive discovery that often takes place . . . ." *Prince v. Kato*, No. 18 C 2952, 2020 WL 1874099, at *4 (N.D. Ill. Apr. 15, 2020).

5

It is important to first make plain the Incident Report data that has already been produced. Plaintiff has the substantive data for all 965 Incident Reports, including the time, date, location, involved parties, nature of dispute, and the reporting officer summary and supervisor report. What Plaintiff seeks now is to have this same data exported into individual PDFs even though he already has it in a cumulative spreadsheet. As described in Defendants' Motion for Protective Order,

> As Defendant CCSO has estimated, converting 965 individual Incident Reports to PDF format at a rate of approximately three minutes each would require forty-nine hours to accomplish.

*See* Dkt. 149 at 6 (hereinafter "Defs.' Brief"). This is because exporting the same data into individual PDFs requires a manual search for each Incident Report number, and then individually exporting each Incident Report as a PDF because multiple Incident Reports cannot be simultaneously exported as PDFs. *Id*. Furthermore, it would take approximately 162.25 hours, or four full weeks, to satisfy Plaintiff's request for documents associated with 588 Incident Reports.[5] Considering that Plaintiff's additional requests for documents span nearly a decade, the cumulative effect of his discovery imposes a substantial burden on Defendant CCSO and must be denied. *See DeLeon-Reyes v. Guevara*, No. 18 C 1028, 2021 WL 3418856, at *5 (N.D. Ill. Aug. 5, 2021) (requiring plaintiffs to take reasonable steps to avoid imposing an undue burden or expense, particularly where the cumulative burden discovery is significant). Notably, Plaintiff has continued to decline to identify a smaller subset of reports that he believes best support his *Monell* claim.

Furthermore, Plaintiff's instant request for the grievance documents associated with 588 Incident Reports is misleadingly low. Because every fight includes at least two people, the name

---

[5] *See id.* (estimating that searching for, identifying, and compiling grievances associated with 10 incident reports requires 2.75 hours). Applying a rate of 10 Incident Reports per 2.75 hours yields 161.7 hours: 2.75(588/10) = 161.7.

of each detainee in each Incident Report would have to be searched in order to determine who filed a grievance. This results in more than 588 searches for potentially more than 588 grievances. As such, Plaintiff's demand that Defendant CCSO conduct a search for any associated grievance documents for 588 Incident Reports is unduly burdensome and must be denied.

*DeLeon-Reyes* is instructive about the overly burdensome nature of Plaintiff's requests. There, the plaintiff sought to establish that the Chicago Police Department's (CPD) illegal and widespread policies related to homicide investigations resulted in his wrongful conviction for murder and nearly 20 years in prison. *Id.* at *1. After the CPD produced 347 homicide files from Area Five, plaintiff subpoenaed the Cook County Public Defender's (CCPD) office for the corresponding criminal defense files for 263 of those cases.[6] *Id.* The CCPD located boxes containing 191 homicide files. *Id.* at *4.

Although the plaintiff offered to reduce the CCPD's burden of production by hiring vendors to move boxes, scan files, and review privileged documents, the CCPD argued that production was still burdensome because its employees would need to supervise the vendors and review contract attorneys' work product. *Id.* at *6. The CCPD proposed to limit the production of the defense documents to a random sample (20%) of the homicide files. *Id.*

The court considered the relevant case law and found that the defense documents relating to 69% of the 191 homicide files, or 132 homicide files total, would provide a statistically

---

[6] The court had previously limited plaintiff's request for Area Five's homicide files, with no limitations, for the seven years prior to his conviction in 2000. *DeLeon-Reyes v. Guevara*, No. 18 C 1028, 2019 WL 4278043, at *1 (N.D. Ill. Sept. 10, 2019). The CCPD estimated there were 600 files over the seven-year period and that it would require approximately eleven months to locate, review, and produce them. *Id.* at *8. Using this guideline, the court estimated that the approximately 343 homicide files from 1995 to 1998, plus 138 homicide files produced in another case, constituted a "sufficient sample size from which a potential pattern of conduct could be demonstrated" under *Monell*. *Id.* & n.9. The court determined that the discovery of an additional three years of homicide files, from 1992 to 1994 would lead to "unnecessarily time-consuming and expensive" production and "would be unlikely to yield much additional benefit." *Id.*

significant sample. *Id.* at *6-7. The *DeLeon-Reyes* court also found that in other cases, a different sample size may be appropriate depending on the volume of files requested after weighing the benefits and burdens of production. *Id.* at *7.

Applying the general principle from *DeLeon-Reyes*, the evidence that Plaintiff seeks to uncover through his instant request can be determined by a much smaller sample size. As defense counsel has repeatedly stated, Plaintiff's request for the grievance documents associated with those 588 Incident Reports is misleadingly low as it is the beginning of a much more expansive search. Defense counsel has already offered to conduct a search for the grievance documents associated with 50 to 100 Incident Reports identified by Plaintiff. In its current form, Plaintiff's request is "unnecessarily time-consuming and expensive" and "would be unlikely to yield much additional benefit." *Id.* at *8. Such an unduly burdensome request should be denied.

II. **Plaintiff's Requested Timeframe, from January 1, 2010, to December 31, 2019, Exceeds Any Reasonable Boundary and Is Unrelated to Plaintiff's Claims or Actual Confinement.**

Even more astounding is Plaintiff's failure to consider the burden of his broad requests for *all* Incident Reports, inmate grievances, internal and external memos, and other documents as well as the supporting documents for an unidentified number of Incident Reports, and all lawsuits, investigations, judgments, and consent decrees, from January 1, 2010 to December 31, 2019 related to inmate safety and security, inmate-on-inmate altercation, telephone use, alleged gang control of telephones, and "inmate vision care and optometric issues."[7] Plaintiff's failure to limit these requests in any meaningful way is unduly burdensome and his requests should be denied.

---

[7] *See, e.g.*, Pl.'s First Set of Request for Production to Defendant Sheriff Nos. 30, 31, 32, 33, 34, 35, 37, 38, 39; Pl.'s Second Set of Requests for Production to Defendant Sheriff, Nos. 43 (Incident Reports and an known number of PDF copies of Incident Reports); No. 44 (all grievance related documents for an unknown number of Incident Reports identified by Plaintiff); No. 49 (lawsuits, investigations, etc.); No. 50 (internal memos, emails, studies, reports, literature related to vision care and optometric issues.); No. 51 (all internal and external memos, emails, studies,

Contrary to Plaintiff's argument, his present discovery requests are nothing like those in *Prince v. Kato*, upon which he relies. No. 18 C 2952, 2020 WL 1874099 (N.D. Ill. Apr. 15, 2020). There, the plaintiff claimed that he was wrongly convicted of murder due to the Chicago Police Department's widespread policies that resulted in false confessions, suppression of evidence, and violent interrogations, among other misconduct. *Id.* at *1. The plaintiff requested five years of homicide files, which the defendant City estimated to be 548 files. *Id.* at *4.

The City raised "genuine concerns about the burdens and expenses with retrieving, reviewing, and producing hundreds of homicide files from Area Four," including the limited availability of CPD personnel to perform the required tasks as well as the low quality of old hard-copy paperwork. *Id.* Rather than ordering the production of "all homicide files in his area," as Plaintiff in the instant case demands, the *Prince* court ultimately concluded that the production of 400 homicide files is "generally consistent with the productions ordered in other, similar cases," and so limited production to a four-year period. *Prince*, 2020 WL 1874099, at *4. *Prince* stands for the proposition that burdensome discovery should be limited, which Defendants seek here, and not that Plaintiff should get whatever he wants.

In other similar cases, courts have limited the relevant period of discovery when necessary, or granted requests seeking at most, five years of records. *See, e.g.*, *DeLeon-Reyes*, 2019 WL 4278043, at *8 (finding request for seven years of homicide investigation records unnecessarily broad and limiting discovery to a four-year period); *Awalt v. Marketti*, 2012 WL 6568242, at *6 (N.D. Ill. Dec. 17, 2012) (granting request for documents spanning five-year period); *Padilla v.*

---

reports, literature related to "inmate violence"); No. 52 (internal analysis regarding inmate vision care and optometric issues); No. 53 (internal analysis regarding alleged control over phones by inmates and its alleged impact on "inmate violence"); No. 54 (all documents that describe, reflect, summarize or allude to what constituted or were considered to be "generally accepted correctional standards" regarding inmate vision care, the use or control of phones, and the role of telephones in inmate violence).

*City of Chicago*, 2011 WL 3651273, at *2-*4 (N.D. Ill. Aug. 18, 2011) (permitting discovery of documents over a five-year period); *Johnson v. City of Joliet*, 2007 WL 495258, at *4 (N.D. Ill. Aug. 18, 2011) (requiring production of documents relating to complaints or lawsuits for the five-year period prior to demolition of plaintiff's garage).

Further, in *Reed v. Wexford Health Sources*, the plaintiff sought discovery of information related to the *Lippert* reports to support his *Monell* claim. No. 20-CV-01139-SPM, 2023 WL 7678975, at *4 (S.D. Ill. Nov. 15, 2023). The *Lippert* reports were generated as a result of a massive class action whose class included all inmates with serious medical or dental needs. *Id.* at *4. The *Reed* plaintiff sought communications and general discussions of medical care in relation to the *Lippert* report; changes in documents relating to changes in policies, practices, rules, procedures, budgeting, recruiting, training, retention, or discipline in light of the *Lippert* reports; all documents or communications relating to the *Lippert* reports and descriptions of medical care provided to persons with cancer. *Id.* The court found that, like Plaintiff's instant demands, these requests were overly broad and not tailored to the claims in the plaintiff's case. *Id.*

Although Plaintiff correctly points *to Biggart v. Vibra Hosp. of Springfield, LLC*, 2021 WL 3264409 (C.D. Ill. July 30, 2021) to support an entitlement to medical records, he neglects to note that the request at issue there spanned a four-year period and was limited to one type of injury. *See Biggart*, 2021 WL 3264409, at *6 (finding that a "four-year period is a reasonable time limitation because the request is limited to one type of injury"). Here, the scope of Plaintiff's requests for medical records is unlike *Biggart* because they span a ten-year period and include an array of medical issues.

Like the requests in *Prince*, *Deleon-Reyes*, and *Reed*, Plaintiff's broad requests for a decade of documents is disproportionate to the needs of this case and out of step with other decisions in

this district which routinely limit discovery to a four- or five-year period preceding the incident. Given the breadth of Plaintiff's general requests seeking thousands of documents, this court should limit the relevant period of discovery to four years preceding the incident.

### III. Plaintiff's Additional Discovery Requests Are Equally Overbroad.

#### A. Deposition of Scott Jakubowski

Plaintiff's arguments for deposing Scott Jakubowski are unavailing. He is not a witness with personal knowledge about this case, and any information he could provide regarding the structure and content of Incident Report database could easily be provided via affidavit. Discovery like this is not designed to address the issues among the parties and is not promoted under Fed. R. Civ. P. 26. A district court considering a motion to compel the deposition of a witness must evaluate such factors as timeliness, good cause, utility, and materiality. *CSC Holdings v. Redisi*, 309 F.3d 988, 993 (7th Cir. 2002) (citing *Farmer v. Brennan*, 81 F.3d 1444, 1449 (7th Cir. 1996). A court may deny a motion to compel a deposition when the deposition would not aid in "the exploration of a material issue." *Israel Travel Advisory Serv. v. Israel Identity Tours, Inc.*, 61 F.3d 1250, 1254 (7th Cir. 1995); *see also Brown v. Health Care Serv.*, 606 Fed. App'x 831 (7th Cir. 2015) (affirming denial of motion to compel deposition of a witness who lacked personal knowledge of the issue).

Here, Mr. Jakubowski's role in this case was limited to running ESI searches on the terms provided by Plaintiff. He has not been disclosed as a witness, and he does not possess any factual information regarding the material issues in this matter. Plaintiff's counsel has not identified a single issue in Plaintiff's claims that would require Mr. Jakubowski's testimony.

Plaintiff's counsel has had lengthy meetings with Mr. Jakubowski in the past, and it has not been explained what information they hope to obtain from him such that his deposition would be necessary. There is no suggestion that Plaintiff lacks an understanding of the ESI search process,

or the information that has or can be produced. Therefore, no deposition should be required. The design and operation CCOMS database utilized by CCSO has nothing to do with the issues of this litigation, and such discovery goes far beyond Plaintiff's individual or *Monell* claims.

The issues in Plaintiff's lawsuit relate to his access to glasses and phones from late November 2018 to November 2019. Mr. Jakubowski has no knowledge of any substantive facts related to those claims. Accordingly, Defendant Sheriff therefore urges the court to deny Plaintiff's request to depose Mr. Jakubowski, a non-party with no knowledge of the facts underpinning Plaintiff's claims.

Defendant Sheriff also notes that Plaintiff's access to Mr. Jakubowski during ESI discovery refutes Plaintiff's suggestion that Defendants unilaterally searched for the Incident Reports without Plaintiff's involvement. Defendants ensured that Plaintiff understood how the data was stored, and how it could, or could not, be searched or exported.

### B. Identification of Potential Witnesses Who Filed "Vison-Related Grievances" and Have Been "Victimized" By Defendants

Plaintiff also seeks documents identifying inmates in Division 10 who have filed vision-related grievances at Cook County Jail, as well as those "who, upon information and belief, have also been victimized by Defendants' policies and customs that failed to protect them from violence and receiving adequate medical care." Pl.'s Br. at 14. These requests, RFP No. 17 to Defendants Cook County, RFP Nos. 17 and 29 to Defendant Dart, and RFP No. 18 to Defendant Shebel, are not limited in time, nor are they narrowly tailored to a specific type of incident. A vision-related grievance can encompass a variety of complaints and medical conditions that Plaintiff did not make or does not have. Moreover, the term "victimized" is overly broad and requires a subjective review of each potential grievance. The request suggests that each grievance related to inmate

violence is caused by Defendants' alleged policies and customs and does not differentiate among other potential causes of violence. Therefore, this request is overly broad and should be denied.

**C.     Documents Reflecting Reports or Complaints from Inmates, Including Plaintiff, Regarding Gang Violence, the "Latin Kings," or Restrictions Placed on Phone Use in Cook County Jail.**

Plaintiff's requests for complaints concerning gang activity are overly broad and should be denied.[8] Pl.'s Br. 14-15. Plaintiff's complaint does not allege that the gang activity he allegedly witnessed is related to the "Latin Kings" as the phrase does not appear in his complaint. Plaintiff's request for information related to "gang violence" is not narrowly tailored to produce a result consistent with or supportive of his claims. Instead, the term functions as a catch-all phrase seemingly related to any violence that occurs in Cook County Jail. Moreover, Defendants produced incident reports concerning alleged gang control over phones in 2023. *See* CCSAO 001996.

Indeed, in his recent deposition, apart from the individual with whom he had an altercation, Plaintiff was unable to name a single individual affiliated with a gang. Therefore, his requests related to "Latin Kings" are a thinly disguised fishing expedition and reveal only the shallow nature of his claims. They should, accordingly, be denied.

**D.     Policy Documents**

Plaintiff's request for policy documents is also improper. Defendants have previously produced policy documents responsive to Plaintiff's discovery requests without issue or dispute from Plaintiff. *See* CCSAO 333-370; 1762-1770; 1830. If there were issues with Defendants' production, they should have been addressed during one of the many meet-and-confers and Rule 37 meetings held between the parties—not for the first time via Motion before the court. *See*

---

[8] *See* Pl.'s Request for Production to Defendant Sheriff, No. 55 (seeking all internal or external memos, emails, studies, reports, and literature related to alleged or actual efforts by gangs to control telephone and the role played by gangs in "inmate violence").

*Houston v. C.G. Sec. Servs.*, 820 F.3d 855, 858 (7th Cir. 2016) (citing FED. R. CIV. P. 37). Accordingly, Plaintiff's request for policy documents, made here for the first time, should be denied.

   **WHEREFORE**, Defendants, by and through their attorneys, DeVore Radunsky, LLC, respectfully request an order entered as follows:

1. Defendant's Motion for Protective Order is granted;

2. Plaintiff's Motion to Compel Discovery is denied;

3. Limit Defendant Sheriff's new Incident Report production to 50 to 100 PDF Incident Reports to be identified by the Plaintiff, along with any related grievances, allowing Defendant Sheriff 30 days to complete this work;

4. Find that information requested for the timeframe of 2010 to 2014 is outside of the scope of discovery under Rule 26.

5. Find that Plaintiff cannot depose Scott Jakubowski;

6. Find that Plaintiff cannot obtain policy documents or reports/complaints of gang violence in the jail as requested in his Motion to Compel; and

7. Any further relief this Court deems appropriate.

                Respectfully submitted,

                <u>/s/ Troy S. Radunsky</u>
                *Attorneys for Defendants*
                Troy S. Radunsky (ARDC# 6269281)
                DeVore Radunsky LLC
                230 W. Monroe Suite 230
                Chicago, IL 60606
                312-300-4484

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that he electronically filed the foregoing document on February 2, 2024, with the Northern District of Illinois ECF System, serving a copy to all parties.

/s/ *Zachary G. Stillman*
Zachary G. Stillman