1              IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF ILLINOIS
2                    EASTERN DIVISION

3  DONALD HENNEBERG,             )  No. 19 C 7380
                           )
4              Plaintiff,     )
                           )
5            vs.            )  Chicago, Illinois
                           )
6  TOM DART, SUSAN SHEBEL, R.N., JOHN  )
  DOE MEDICAL DEFENDANTS, JOHN DOE    )
7  CORRECTIONAL OFFICER NO. 1, and    )
  COOK COUNTY, ILLINOIS, et al.,     )
8                           )  March 7, 2023
              Defendants.    )  9:45 a.m.
9

                TRANSCRIPT OF PROCEEDINGS
10          BEFORE THE HON. SARA L. ELLIS

11  APPEARANCES:

12  For the Plaintiff:    MR. PHILIP A. MISCIMARRA
                       MS. MARIA E. DOUKAS
13                   Morgan, Lewis & Bockius LLP,
                     110 North Wacker Drive, Suite 2800,
14                   Chicago, Illinois  60606

15                   MS. LIZA B. FLEMING
                     Morgan, Lewis & Bockius LLP,
16                   1701 Market Street,
                     Philadelphia, Pennsylvania  19103
17
  For the Defendants:    MR. JASON E. DeVORE
18                   MR. TROY S. RADUNSKY
                     DeVore Radunsky LLC,
19                   27 North Wacker Drive, Suite 431,
                     Chicago, Illinois  60606
20

21

22

                PATRICK J. MULLEN
23            Official Court Reporter
            United States District Court
24      219 South Dearborn Street, Room 1412
             Chicago, Illinois  60604
25             (312) 435-5565

1    (Telephonic proceedings on the record.)

2         THE CLERK:  2019 CV 7380, Henneberg versus Dart.

3         MR. DeVORE:  Good morning, Your Honor.  Jason DeVore

4    and Troy Radunsky on behalf of defendant.

5         MR. MISCIMARRA:  And, Your Honor, Philip Miscimarra

6    for plaintiff Donald Henneberg.  Also joining me are my

7    co-counsel, Liza Fleming and Maria Doukas.

8         THE COURT:  All right.  Okay.  So we've got a couple

9    of motions at docket 114 and 116.  So I guess I'm having a

10   little bit of trouble understanding what it is that is unclear.

11   So what are you fighting about?

12        MR. MISCIMARRA:  Your Honor, regarding the current

13   motion, the joint discovery motion --

14        THE REPORTER:  Counsel --

15        MR. MISCIMARRA:  -- I'll make three points.

16        THE REPORTER:  -- counsel --

17        THE COURT:  All right.  Hold on.  Hold on.  Everybody

18   needs to identify themselves before they speak so that my court

19   reporter can take down who's speaking.

20        MR. DeVORE:  Of course.  This is Philip Miscimarra,

21   counsel for plaintiff Donald Henneberg.

22        THE COURT:  All right.  Go ahead.

23        MR. MISCIMARRA:  Your Honor, I'll just make three

24   points regarding the current motion, the joint discovery motion

25   regarding the scope of discoverable incident reports.  Point

1    number 1 is the plaintiff's section 1982 claims in this case

2    relate generally in part to the defendants' failure in the Cook

3    County jail system on assaults by other inmates.

4            Our motion that's currently before you -- and this is

5    point number 2 -- involves the scope of discoverable incident

6    reports over a five-year period from 2015 to 2019, and it's

7    undisputed that these incident reports contain electronic data

8    or have electronic data that is word-searchable.  That was

9    established in the hearing that occurred before you in early

10   January.

11           Then the third point is that the defendants have taken

12   the position that the only incident reports that they should

13   produce in discovery as a basis for our review, which in turn

14   may provide information that can produce a searching of

15   handwritten grievance reports, the defendants have taken the

16   position that the only discoverable incident reports at this

17   time -- and these are the word-searchable documents -- are

18   those that contain the word "telephone" or "phone" because

19   Mr. Henneberg, it happens that the one assault against

20   Mr. Henneberg occurred after he used or tried to use the

21   telephone.

22           As indicated in the joint discovery motion that's

23   before you, I would direct you to paragraph 7.  We believe it's

24   very clear in this case, given the scope of the allegations and

25   your rulings allowing the defendants' motion to dismiss, that

1  incident reports that relate to any kind of assault during the

2  relevant period which are word-searchable are all relevant if

3  they involved some type of assault by inmates against one

4  another during the relevant period, and for that reason,

5  considering the broad scope of discovery, we think that's -- we

6  would ask that the joint discovery motion be granted for

7  Mr. Henneberg, the plaintiff.

8         THE COURT:  But, counsel, think about this for a

9  second.  So Mr. Henneberg was attempting to use the phone,

10 right?  He then was assaulted because he was attempting to use

11 the phone.  If you ask for and ask them to provide to you

12 incident reports of all assaults during a four-year period just

13 randomly, how many incident reports do you think are filed on a

14 daily basis?

15        MR. MISCIMARRA:  Well, Your Honor, if you're asking

16 about how many incident reports are filed on a daily basis

17 involving assaults between inmates --

18        THE COURT:  In Cook County Jail.

19        MR. MISCIMARRA:  -- I would hope, I would hope that

20 there would not be dozens of incident reports per day involving

21 assaults from one inmate to another.  But if there were such a

22 large number of those assaults, that would be relevant to our

23 claim that the defendants are engaging in an unconstitutional

24 failure to protect inmates from assaults of other inmates.

25        THE COURT:  So I can tell you that it is a large

1  number because when you put people together in a confined space

2  there will be assaults.  Okay?  They might be minor.  It might

3  be shoving or tripping.  It could be more significant.  But if

4  it's just simply assaults, there are going to be lots and lots

5  and lots of them.  That's why I had said -- and maybe I wasn't

6  clear -- that we're focusing on assaults relating to use of the

7  telephone and we'll go from there.

8           MR. MISCIMARRA:  May I briefly respond, Your Honor?

9           THE COURT:  You may.

10          MR. MISCIMARRA:  Two points.  One is because these

11  incident reports are word-searchable and it's clear from the

12  partial production that the defendants have engaged in that

13  it's not burdensome for the defendants to identify or produce

14  these incident reports, we think that they are clearly relevant

15  to Mr. Henneberg's claims.

16          If there's a large number of incident reports that are

17  produced, well, that will put the burden on us, the plaintiff,

18  to review those incident reports, since this is discovery, and

19  identify those incident reports that can produce people or

20  events that are relevant to our claims.  That's the purpose of

21  discovery, but we believe that the --

22          THE COURT:  I understand what the purpose of discovery

23  is.  You may not think I do, but I do.  I practiced for a long

24  time before I became a judge, and I've been a judge almost ten

25  years.

1          MR. MISCIMARRA:  Understood, Your Honor.

2          THE COURT:  I also understand that oftentimes the tail

3     can wag the dog, and that's not what I want to happen here.  I

4     suspect if we limit this to assaults over the phone that you're

5     still going to get a lot of incident reports over a four-year

6     time span.  If I'm wrong, you can come back to me and we'll

7     expand it.

8          MR. MISCIMARRA:  Your Honor, may I make one other

9     point?

10          THE COURT:  You may.

11          MR. MISCIMARRA:  My second point is we believe that if

12     one -- if the focus of this case is on whether Cook County Jail

13     engages in unconstitutional failure to protect inmates from

14     assaults by other inmates, if one limits our discovery to only

15     those assaults that happen to involve the telephone or where

16     the incident reports have the mention of the word "phone" or

17     "telephone," we believe it's predictable that the type of

18     discovery we'd get from telephone-related assaults will not be

19     representative of the jail's practices generally regarding

20     assaults from other inmates, which is the nature of our claim.

21          And I would note that we know there's a consent report

22     that dates back to 2010 which in part advises the jail that it

23     needs to improve its practices and policies regarding assaults

24     from other inmates or between inmates.  For example, the

25     monitor reports, that consent decree that was entered in 2010,

1    they're not specific as to assaults that occur for one reason,

2    like a personality dispute or a drug-related issue or a theft.

3    They talk about protecting inmates against assaults from other

4    inmates which particularly could occur for a variety of

5    reasons.

6            So we believe respectfully that if we are limited to

7    merely discovery into types of assaults that pertain to a

8    particular reason that appears to underlie the assaults, those

9    assaults, we will not be -- we won't have the ability to get a

10   representative, representative information regarding the Cook

11   County Jail's practices generally pertaining to what's at issue

12   in this case, which is protecting inmates from assaults

13   generally relating to other inmates.

14           THE COURT:  So again, counsel, I hear you, but I want

15   to start with this and let's see what you get.  If it seems as

16   though there isn't enough there or you need more information as

17   to that, then we can deal with it.  So rather than taking a

18   wide swath of incident reports, I would rather that you focus

19   on what happened to Mr. Henneberg, the reason for the assault,

20   the number of incidents that would have put the jail on notice

21   that this is the type of interaction that would require

22   tightened monitoring --

23           MR. MISCIMARRA:  And, Your Honor --

24           THE COURT:  -- and we'll go from there.

25           MR. MISCIMARRA:  -- may I make one additional point?

1   Because I believe we're already at that point where we can make

2   an evaluation of the available data and we do believe that it's

3   insufficient, I'll direct you to our joint discovery motion,

4   page 2, footnote 4. So the defendants, having done a partial

5   production of incident reports which again are word-searchable,

6   did not produce the reports but produced a spreadsheet that

7   shows the data in the reports, and you can see for the

8   five-year period they have identified 2,030 incident reports,

9   which at this point is slightly higher than that number because

10  they did a supplemental production that covered nine or ten

11  months that had been omitted.

12         But using this 2,000 incident report number, the

13  defendants' own review suggests that there was about 1440,

14  1,440 incidents that were not relevant, and that's 500 -- that

15  leaves 590 incident reports that the defendants from their

16  review suggest were assaults that pertained in some way to the

17  use of the telephone. Now that's 590 incidents over a

18  five-year period.

19         You just suggested that if you look at the number of

20  assaults that occurred in Cook County Jail there are a large

21  number of assaults that occur, but based on this partial

22  production that was used because of the criteria identified by

23  the defendants, this partial production suggests in Cook County

24  Jail that there are only over a five-year period roughly

25  500-some assaults per year, which does not appear to be a large

9

1   number.  That might be one or two assaults per day involving

2   inmates.

3        And, Your Honor, if it's correct that there are

4   magnitudes or larger numbers of assaults between inmates, well,

5   then we believe the partial production that the defendants have

6   already provided to us which, by the way, is not burdensome to

7   the defendants because this is word-searchable, we're not

8   getting a representative sample of the extent of violence that

9   occurs between inmates at Cook County Jail if one limits the

10  incident reports to those that mention the words "phone" or

11  "telephone."  We think that's self-evident from footnote 4 on

12  page 2 of our joint discovery motion.

13       THE COURT:  All right.  Let me hear from the county

14  now.

15       MR. DeVORE:  Good morning, Your Honor.  Jason DeVore

16  on behalf of the county.  You know, we did produce, well, 2,032

17  incident -- the raw data from the incident reports.

18       MR. RADUNSKY:  It was 2,178, Jason.

19       MR. DeVORE:  Sorry.  2178.

20       THE COURT:  I've got the numbers in front of me.

21  Please don't interrupt each other.

22       MR. DeVORE:  Thank you.

23       Then that increased, as counsel noted, to 2178, and we

24  provided that in a way to try to winnow it down to what the

25  Court had ordered and suggested on January 4.  We wanted to

1    make it searchable, and we even provided an explanation of the

2    document we provided.  Each of the -- those documents we

3    provided had significant detail of thousands of detainees from

4    which counsel was supposed to then identify, and then we could

5    do additional actions.  Okay?

6          So we produced that, as I said, on February 2nd, 2023,

7    and also, you know, we offered the background information.  So

8    there was, there was a dispute apparently with respect to

9    counsel's view that we didn't -- that this was a partial

10   production, and we didn't think that was the case.

11         We tried mightily to try to come to some level of an

12   agreement, but based upon those documents themselves it was

13   thousands that could be identified and none of it's been done.

14   Instead we have this -- or we had a motion to modify the joint

15   scheduling order which --

16         THE COURT:  So you're not answering my question,

17   right?

18         MR. DeVORE:  Yes.

19         THE COURT:  I don't care so much about the

20   back-and-forth.

21         MR. DeVORE:  Okay.

22         THE COURT:  Right?  So if you had worked something

23   out, you wouldn't be here.

24         MR. DeVORE:  Understood.

25         THE COURT:  So --

```
 1              MR. DeVORE:  We were --

 2              THE COURT:  So with the 2,000-plus incident reports,

 3   how difficult is it to pull those incident reports and just

 4   give them to the plaintiff?

 5              MR. RADUNSKY:  Judge, this is Troy Radunsky for the

 6   defense.

 7              THE COURT:  Go ahead.

 8              MR. RADUNSKY:  Sure.  This is Troy Radunsky, Your

 9   Honor, for the defendant.  It's not -- I guess to answer the

10   Court's question, we searched the terms and we pulled -- we

11   gave them a spreadsheet, Your Honor, that is the exact same

12   information as a PDF.  It's our understanding -- and the

13   spreadsheet is completely searchable and even has words, Judge,

14   if you did a search, for more than "fight" and "telephone" and

15   "assaults."  I mean, there are words for "fight" and "kick" and

16   "battery" and all these words that they're saying that they now

17   want.  Okay?  So those have been produced.

18              THE COURT:  Yes, but here's the thing.  My question to

19   you is this.

20              MR. RADUNSKY:  Sure.  Yes.

21              THE COURT:  How hard is it to actually pull those

22   reports and produce the reports themselves, so not in a

23   spreadsheet, not as raw data, but to produce the reports and

24   say here you go?

25              MR. RADUNSKY:  My understanding, Your Honor, my
```

1  understanding is we would have to individually print out every

2  one of those PDFs because of the way that they're stored.

3       I said to plaintiff's counsel, I said:  Here are the

4  2,178 hits.  That's the exact same thing that would be in the

5  actual template.  The raw data is just -- just pushes out a

6  template that's called an incident report.  The raw data is the

7  same thing.

8       And I said to counsel, Judge:  Listen, why don't you,

9  if you want 50 or 60 or 100 of the 2,178 that we produced, that

10  would be less burdensome than having to produce all 2,178

11  because that's going to be -- from what I'm being told, we're

12  going to have to go in and, you know, manually I guess return

13  -- I don't know the exact process, but it wasn't going to be

14  easy.

15       That's why I thought that when we produced the

16  spreadsheet, Your Honor, that we were doing the plaintiffs a

17  favor in giving them searchable information in an easy-to-read

18  format.  The only thing that's different is they want to see

19  the template that all the information was then printed out on.

20  To us it was just duplicative, but we did offer to meet them

21  halfway and said:  Hey, if you found 50 things on the

22  spreadsheet that you'd like, then we'll call our client and

23  we'll have those printed out.  But if you can avoid having us

24  print out 2,178 which are relevant and not relevant, we're

25  happy to -- you know, we want to work with you to narrow the

1  discovery.

2        You know, so we disagree that our spreadsheet doesn't

3  include words that they want to expand on.  They do, but we

4  also agree with the Court that if they keep adding words,

5  Judge, like you said, "punch, stab, fight, kick, assault," of

6  course, there's going to be 20,000 hits.  All assaults at the

7  jail between 2015 and 2019 will generate way over 10,000,

8  15,000 hits, I bet.  And if that's something the Court wants to

9  see, like a hit count for words like that, we're happy to

10  provide that to the Court.

11        But Your Honor knows, as you've been on the bench for

12  a long time, there's going to be thousands of these, Your

13  Honor, that are unrelated and not relevant to fights on phones.

14  That's why we are limiting what we feel is obviously Monell

15  discovery.

16        Your Honor on January 4th brought up or at least

17  planted the idea in my head, Your Honor -- and this isn't your

18  fault -- the motion to bifurcate.  I mean, it was at that

19  moment where, you know, the Court said to counsel:  Look,

20  counsel, this is what you have to prove.  You have to prove

21  your underlying case before you get to Monell.

22        Then I thought to myself:  We should file a motion to

23  bifurcate, she's right.

24        I mean, that's why we did that, Your Honor.  We have a

25  settlement discussion also coming up on Monday.  So all of this

1   discovery they want to do may not even be necessary, and it's

2   in the face of a motion to bifurcate when our reply is actually

3   due today and the Court hasn't ruled on it.

4           So we have complied with the Court's February 2nd

5   order.  We've done everything Your Honor asked.  Then they

6   wanted to move some scheduling dates and we thought that that's

7   what was going to happen, and now here we are revisiting really

8   our motion to bifurcate prematurely before the Court has even

9   had a chance to read the briefs and rule on and do anything,

10  you know.

11          MR. MISCIMARRA:  Your Honor, may I?  Your Honor, may I

12  make one additional point which actually answers your question?

13          THE COURT:  Go ahead.

14          MR. MISCIMARRA:  There are two tasks associated with

15  producing these incident reports which we know are

16  word-searchable.  Task number 1 is identifying incident reports

17  that contain certain search terms like "assault" or "attack" or

18  "battery" and to have the electronic data for the hits for

19  those incident reports that contain those terms pulled into a

20  spreadsheet.

21          We know that that's not burdensome because the

22  defendants in a short period of time have done that with

23  respect to 2,000 incidents which we believe is

24  unrepresentative.  But it's not burdensome, we now know, to do

25  a word search through the incident reports then have the data

1    from those incident reports pulled into a spreadsheet.  That's

2    not burdensome, and it's highly relevant information for

3    assaults generally.

4         The second task is to print out the incident reports

5    themselves, and we would settle for having the incident report

6    data reflected in a spreadsheet based on search terms that

7    pertain to assaults generally for the five-year period which we

8    know is not burdensome to the defendant and is highly relevant

9    for the plaintiffs.

10        Then we would be willing based on our own undertaking

11   the task of reviewing what may be, you know, thousands of

12   additional rows in the spreadsheet reflecting this data.  The

13   plaintiff will undertake the burdens associated with reviewing

14   that and then making a request for those particular incident

15   reports that we believe are relevant but where the incident

16   report data that we received relate to assaults generally over

17   the five-year period.

18        MR. DeVORE:  Your Honor, Jason DeVore on behalf of

19   defendant again.  You know, the two IT professionals that we

20   brought into live court who testified or who provided

21   information to the Court, they were the ones who went through

22   and did all of this background information, and honestly, 100

23   percent honestly, we thought we were going exactly in

24   accordance with the Court's order.  They took extensive efforts

25   to do this, and they -- we followed what the experts inside who

1    know the system were discussing.

2           We take our IT professionals that were brought in and

3    who spoke with you, as you know, and then also director Mueller

4    with respect to what data could be extracted and how it could

5    be extracted.  And given that we have an issue involving

6    alleged gang fights, telephone use, and assaults, you know,

7    gangs, assaults, and telephone use, that was winnowed down to

8    what were corresponding with the allegations in the complaint.

9           You know, we looked back and we agree that the

10   information that was sought in part could bleed over into a

11   Monell claim and thousands of documents, and we don't want the

12   tail wagging the dog in terms of a Monell claim, particularly

13   when we don't know if one of the claims at least has a

14   constitutional basis.

15          MR. MISCIMARRA:  Your Honor, I'm left with the same

16   points.  And by the way, when it comes to burdens here, we're

17   more than a year into discovery, and we received a single

18   incident report, only the incident report relating to

19   Mr. Henneberg.

20          So at this point if the plaintiffs are put to the task

21   of taking another slice of incident reports, who knows how long

22   it will take us to take, you know, whatever is the small slice

23   of incident reports and then come back to you every time we

24   want to justify having a bigger slice because we believe what

25   we have is not representative.  It's going to be enormously

1    burdensome for Mr. Henneberg, who's already put to the task of

2    trying to get more than one incident report, more than a year

3    to get more than one incident report in a case that started out

4    with Monell claims with no objections, by the way, from the

5    defendants regarding the scope of discovery.

6           THE COURT:  Okay.

7           MR. MISCIMARRA:  So if we end up having to do this one

8    slice at a time --

9           THE COURT:  Gentlemen --

10          MR. MISCIMARRA:  -- it's going to be very burdensome.

11          THE COURT:  -- gentlemen, we have gone back and forth,

12   and I'm still at the place where I started.  So have the

13   plaintiffs gone through this spreadsheet and identified

14   incident reports that you would actually want to see out of

15   this 2100 reports?

16          MR. MISCIMARRA:  We have not, Your Honor, on the basis

17   that the defendants' own passthrough of the incidents that

18   they've produced, this slice only identifies what they believe

19   are 590 or roughly 600 incidents that are relevant over a

20   five-year period.  We don't believe that that's representative.

21   If we go through the burden of taking a highly granular review

22   of this slice of incident reports, we believe that we know

23   right now what the outcome will be, that it's not

24   representative --

25          THE COURT:  It doesn't --

1          MR. MISCIMARRA:  -- of the --

2          THE COURT:  But, counsel --

3          MR. MISCIMARRA:  -- assault risk.

4          THE COURT:  -- here's the deal.  You are complaining

5     that you've only received one incident report, correct?

6          MR. MISCIMARRA:  It took more than a year for us to

7     get more than one incident report, and that was --

8          THE COURT:  So the answer is yes.  So the answer to my

9     question is yes.  They've just given you the raw data for

10    2100-plus incident reports over five years from which they say

11    500 are relevant and 1400 are not relevant, and my question to

12    you is this.  If you look at all 2,000-plus and say you'd like

13    to look at X amount and have them pull those incident reports,

14    that then is at least a place to start and we can go from

15    there.  But if you haven't looked at what they've given you and

16    identified incident reports that you want from there, the

17    information on those incident reports may lead you to ask for

18    other categories.

19         MR. MISCIMARRA:  Your Honor -- oh, I'm sorry.

20         THE COURT:  So I think that I have been clear.

21         MR. DeVORE:  We would agree.

22         THE COURT:  So this is what's going to happen.  You

23    have your settlement conference on Monday.

24         MR. DeVORE:  Yes, Your Honor, yes.

25         THE COURT:  The way the two parties are talking, I do

1    not have high hopes that things will get resolved.  So how long

2    do plaintiffs need to go back and review the reports that

3    you've received through the spreadsheet and identify the ones

4    that you want pulled?

5            MR. MISCIMARRA:  We would request 40 days, Your Honor.

6            THE COURT:  All right.  So that would put you

7    somewhere around April 10th.  How long -- given the fact that

8    you have no idea how many reports you're going to have to pull,

9    approximately how long do you think it will take to pull the

10   reports?

11           MR. RADUNSKY:  Would the Court be -- this is Troy

12   Radunsky for the defense.  Would the Court be okay once we get

13   plaintiff's response by April 10th that we consult our client

14   immediately and determine a reasonable time for production and

15   then we can meet and confer with plaintiff's counsel to assess

16   that based on the number of incident reports they're requesting

17   copies of?

18           MR. MISCIMARRA:  We would request a date certain, Your

19   Honor.

20           MR. DeVORE:  And, Your Honor, I'm sorry.  This is

21   Jason DeVore again.  Just to be clear, we're happy to

22   provide -- this is not an overwhelming document, but in the

23   detail in those incident report spreadsheets which are

24   searchable there are thousands, there are thousands of

25   detainees to be identified or that could be identified, and the

20

1    information is also categorized by type of incident within

2    that.  It is very, very clear with an incredible amount of

3    information.

4            So 2,000 -- you know, I don't know if it's 10,000 or

5    more, but it would be certainly helpful to find out from

6    plaintiff to see if they want, you know, 4,000 pieces of

7    information based upon those detainees and the incident reports

8    or they want 400 or they want 8,000.

9            MR. RADUNSKY:  I mean, in a perfect world, Judge, I

10   mean, I guess if we're forced to give a date, I mean, I can

11   talk to my client and try to do it in 30 days, and if they say

12   they need more time, then that's something we can bring to the

13   Court's attention.

14           THE COURT:  All right.  So I'd like those reports to

15   be produced by May 12th.

16           MR. RADUNSKY:  My birthday.

17           MR. DeVORE:  Happy birthday.

18           MR. RADUNSKY:  Thanks.

19           Then I guess, Your Honor, if that's it on that, then

20   the other issue is just, you know, the issue of clarifying the

21   Court's order that was entered.  I wrote in the motion --

22   actually counsel put February 16th, and I kept changing it back

23   to February 21st.  It's actually the February 16th order for

24   docket 109 which I think clarifies what the Court's ruling is

25   today.

1           The parties have met and conferred over the Court's

2    order, and, Your Honor, we apologize.  We had some issues

3    getting into the hearing, and we missed it, unfortunately.  You

4    know, after the hearing, we spoke to counsel, and we are

5    proposing the order that's in our motion just to clarify

6    everything that the Court said today and so that we have a

7    clean record.

8           THE COURT:  Well, here's the thing.

9           MR. MISCIMARRA:  Well --

10          THE COURT:  No, I'm done, gentlemen.  I'm done.

11   You've used up every last ounce of my patience on this case.

12   So I've set the date.  You know what you need to do, right?

13          MR. DeVORE:  Okay.

14          THE COURT:  And the order that will be entered today

15   is going to deal with these issues.  We've got a ruling date of

16   April 5th on the motion to bifurcate, and at that point I

17   will -- we've got a close of fact discovery through September

18   25th.

19          MR. MISCIMARRA:  Your Honor --

20          THE COURT:  So I will --

21          MR. MISCIMARRA:  Excuse me.  There's one other open

22   date, which is the date for plaintiff to issue supplemental

23   discovery requests, and we would suggest that simply be 30 days

24   after.

25          THE COURT:  I will get it.  I will get it.  I will set

```
 1    a date for you to do that when I do the ruling on the motion to

 2    bifurcate.

 3              MR. MISCIMARRA:  Thank you.

 4              THE COURT:  All right.  I think that takes care of

 5    everything.  I'll see you back April 5th.

 6              MR. MISCIMARRA:  Thank you, Your Honor.

 7              MR. DeVORE:  Thank you, Your Honor.

 8              MR. RADUNSKY:  Thank you, Your Honor.

 9              THE COURT:  Thank you.

10         (Proceedings concluded.)

11                        C E R T I F I C A T E

12              I, Patrick J. Mullen, do hereby certify that the

13    foregoing is a complete, true, and accurate transcript of the

14    proceedings had in the above-entitled case before the Honorable

15    SARA L. ELLIS, one of the judges of said Court, at Chicago,

16    Illinois, on March 7, 2023.

17

18                              /s/ Patrick J. Mullen
                                Official Court Reporter
19                              United States District Court
                                Northern District of Illinois
20                              Eastern Division

21

22

23

24

25
```