# Morgan Lewis

**Philip A. Miscimarra**
Partner
+1.202.739.5565 (Washington DC)
+1.312.324.1165 (Chicago)
philip.miscimarra@morganlewis.com

August 12, 2024

**Filed and Served on Opposing Counsel via ECF System**

The Honorable Jeremy C. Daniel, District Judge
U.S. District Court for the Northern District of Illinois
219 South Dearborn Street
Chicago, IL 60604

RE: Resolution of Discovery Disputes – Henneberg v. Dart et al. Case No. 1:19-cv-07380

Dear Judge Daniel:

Plaintiff Donald Henneberg files this letter pursuant to the Court's 5/15/24 Order (Dkt. 181), and to note the following discovery issues in advance of the 8/15/24 status conference.

**1. Defendants' Refusal to Respond Sufficiently to Plaintiff's Five Additional Interrogatories.**
On 7/3/2024, Plaintiff requested to serve 5 interrogatories on Defendants Dart and Cook County (Dkt. 188), which the Court granted on 7/9/2024 (Dkt. 189). Plaintiff's interrogatories focused on merely identifying the individuals primarily responsible for (i) **medical/vision screening and care** at Cook County Jail, and (ii) the **telephones used by Cook County Jail inmates**, as well as the policies, procedures, rules, restrictions, and/or requirements applicable to each category. The fifth interrogatory also sought any disciplinary action against Defendant Dart and/or other employees based on telephone-related inmate assaults at Cook County Jail and problems relating to telephone-related policies, procedures, or rules from 2010 through 2019.

As Plaintiff explained, and the Court agreed, these interrogatories appropriately seek information relevant to Plaintiff's claims relating to medical/vision care and telephone-related inmate assaults. On 8/8/2024, Defendants Dart and Cook County served their responses to Plaintiff's additional interrogatories (attached as Exhibits 1 & 2), which broadly object to the information requested and do not identify a **single person** in response. Defendant Dart's responses contain a litany of boiler-plate objections and no substantive information. For example, on Interrogatories 32 and 33, Defendant Dart takes the "it wasn't me" approach, responding that any information (including the identity of possible witnesses) relating to inmate medical care at Cook County Jail falls under the jurisdiction of Cermak Health Services, which the "sheriff does not control" and thus has no responsive records or even basic information. In response to Interrogatory 34, rather than provide relevant information in the form of names of individuals with policymaking or enforcement responsibility over telephone use by Jail inmates, Defendant Dart lists several objections before declaring the information sought "is explicitly and implicitly preposterous and unreasonable."

**Morgan, Lewis & Bockius** LLP

1111 Pennsylvania Avenue, NW    T +1.202.739.3000
Washington, DC 20004-2541    F +1.202.739.3001

110 North Wacker Drive    T +1.312.324.1000
Chicago, IL 60606-1511    F +1.312.324.1001
United States

Page 2

Defendant Cook County's answers are no better. For example, in response to Interrogatory 35, which seeks information about any policies governing telephone use at Cook County Jail, Cook County states: "None known to this Defendant." Cook County also suggests that Cermak Health Services is somehow also responsible for policies or rules concerning the regulation of inmates' **telephone system** usage. This answer does not make sense and appears to be a cut-and-paste response relating to Plaintiff's medical-care claims. Given these responses, Plaintiff respectfully asks that the Court compel Defendants to serve amended and complete responses.

2. **Defendants' Refusal to Reasonably Approach Collection of 2017-19 Inmate Grievances**.
On 7/9/24, the Court resolved a dispute over inmate grievances from 2017-19, ordering Defendants to "(1) make grievances **related to phone-related assaults** that occurred in 2017-2019 available for inspection or (2) copy or scan the paper records and produce them to plaintiff." Dkt. 189 (emphasis added). On 7/16/24, Defendants informed Plaintiff that they "convinced [their clients] to allow review of the original grievance materials, with costs split for the reproduction of those materials identified as relevant." (Exhibit 3, email thread, 7/11/24 to 8/9/24.) Defendants also reported that there are at least **48 boxes** with roughly **50,000 grievances**. Defendants did not state that these 48 boxes contain only grievances "related to phone-related assaults;" rather, Plaintiff's understanding is that the 50,000 documents relate to any sort of grievance, and Defendants therefore would prefer that Plaintiff do the job of sifting through to find what might be responsive.

After assessing this information and evaluating various options, on 8/5/24 Plaintiff proposed having a third-party vendor scan/image all hard-copy documents so Plaintiff can review them electronically and tag/categorize during a single review. This would expedite and ease the burden and costs of review—including the substantial cost of attorney time required to scour through 50,000 hard-copy documents to find responsive documents, while still requiring a vendor to scan and image *those* documents, before then reviewing these materials *again* to isolate those relevant to Plaintiff's claims. Plaintiff obtained a vendor estimate of $20,000 to $25,000 to digitize these records, based on certain assumptions. On 8/9/24, Defendants rejected Plaintiff's proposal, stating that they would prefer Plaintiff's counsel—who is proceeding pro bono—to incur the burden of first sifting through 48 boxes and then, and only then, would Defendants agree to share the cost of imaging a potential subset of these materials. Plaintiff objects to Defendants' position. Plaintiff has volunteered to do Defendants' work of identifying responsive documents—and he now asks simply to split the costs of digitizing these records so the task can be done efficiently and without incurring attorneys' fees to sift through hard-copy boxes—a task Defendants have argued for years now would be too burdensome and costly *for them* to undertake. This latest attempt to "run out the clock" and dissuade Plaintiff from obtaining relevant documents is especially frustrating, given that Defendants are simultaneously advocating for a shorter remaining period of fact discovery.

3. **Defendants' Refusal to Agree to an Amenable Case Schedule**

On that final topic, the parties proposed separate timelines for the close of fact discovery (Dkts. 191 and 192). Given these outstanding issues and discovery remaining, Plaintiff believes that 9 additional months is reasonable and is prepared to discuss this at the conference on 8/15/24. As always, we appreciate the Court's consideration of these issues.

Very truly yours,

Philip A. Miscimarra

Attachments: Exhibits 1 through 3 (as referenced above)