

April 2, 2025

Judge Jeremy Daniel
Dirksen Federal Building Rm 1419/1478

   RE: *Henneberg v. Dart et al*, 19 c 7380  Defendants' Response to Plaintiff's Discovery Status Report

Dear Judge Daniel,

Defendants provide the following response to the Plaintiff's March 26, 2025, Report on outstanding discovery issues (Dkt. 211):

**Background:**

Plaintiff's Second Amended Complaint (Dkt. 65) alleges that he was involved in an altercation on June 17, 2019, while trying to use the phone in Division 10 of the Cook County Department of Corrections ("CCDOC"). Plaintiff maintains gangs controlled the phones, the officers knew it, and allowed it to continue.  He alleged that Officer Arias failed to protect him from assault, and that Sheriff Dart failed to implement a policy and practice to prevent it (the *Monell* claim).  Plaintiff also alleges that he did not receive vision care services and eyeglasses from Cermak after filing numerous grievances and health services request forms.

Simply put, this litigation is about the Plaintiff getting in a fight and not getting his glasses.

With respect to the altercation over the phone, Robert Barker, the inmate with whom the Plaintiff got into that altercation, testified he is not a gang member.  (**Ex. A**; **Barker Dep** p.26, line 12-15.)  In addition, not only did gangs have nothing to do with Plaintiff's altercation, but Mr. Barker testified the incident occurred because Henneberg cut the line.  Specifically, Mr. Barker testified, while watching video of the incident "I remember me sitting there and I had to of been waiting on the phone or something.  I think this is the guy that jumped in front of me on the phone."  (p.52, lines 22-25).  "I remember this guy, I remember how he just got up and-- and jumped on the line."  (p.54, lines 15-17). Barker stated,  "But he went-- he got in front of me or something on that phone. And then I think I-I think I remember I hit him." (p.53, line 6-7).  In other words, gang control of the phones is a red herring, as the extensive discovery to date has shown.

With respect to vision care, when the Plaintiff entered the CCDOC at intake he was not wearing any glasses.  He did not report any vision problems.  The Inmate Handbook Plaintiff received specifically informed him that he could contact a family member who could arrange to have plastic frames brought to CCDOC.  It was an easy process that Plaintiff chose not to follow.

Fed. R. Civ. Pro. 1 states  "These rules . . .should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." The Plaintiff has incorrectly suggested that Defendants' discovery responses are deficient or that Defendants did not comply with prior court orders.  That is not correct, and as detailed below, Defendants have produced hundreds-of-thousands of pages of documents and produced several witnesses during years of discovery.  Rather than seeking to resolve the issues in dispute in a just and unduly burdensome manner, Plaintiff instead relies on stale requests and refers to issues that this Court decided on February 21, 2024.  (Dkt. 167.)



**Attachments to this Letter:**

**Exhibit B is a chronological timeline of all the discovery propounded, responded to by the Defendants, relevant motion practice, joint status reports, and Court orders.** Defendants have complied with every discovery order in this matter and have provided numerous waves of responses for documents. Importantly, there has been only <u>one</u> motion to compel filed by the Plaintiff since undersigned counsel appeared in June 2022. That motion was filed by Plaintiff on January 12, 2024. (Dkt. 157). Plaintiff's motion (and 9 Exhibits) encompassed the same issues that Plaintiff complains of again today. After extensive briefing and oral arguments by the parties, (Dkt. 157, 162, 165, & 166,) the Court issued its ruling on February 21, 2024. (Dkt. 167.) The ruling contained 7 subparts, and Defendants were asked to produce documents related to rulings #1-4, 7. Following that ruling, on June 7, 2024, the Defendants produced several hundred thousand pages of records, in compliance with the Court's February 21, 2024, Order and Ruling 1-4, 7.

**Exhibit C is an Index of all records produced by Defendants to date.** Defendants have produced 236,749 pages of records during the pendency of this case. Additionally, Defendants have also recently produced six 30(b)(6) witnesses to testify on a list of topics posed by the Plaintiff.

Notably, since January 12, 2024, nearly 15 months ago, Plaintiff has not filed a motion to compel. On July 11, 2024, Plaintiff tendered a third set of interrogatories to Defendants Dart and Cook County. On July 30 and August 8, the Defendants answered that discovery, and no motion practice followed. Recently, on February 25, 2025, Plaintiff's counsel sent an email outlining 11 items that were purportedly "deficient" responses related to those discovery requests (approximately six months after Defendants responded). On March 18, 2025, Defendants responded to every issue raised in Plaintiff's email. A copy of that **letter is attached as Exhibit D.**

**Procedural History:**

On March 19, 2025, the parties appeared in court for a status conference. Despite not filing a motion to compel or responding to Defendants' March 18 letter, at that status conference Plaintiff's counsel argued that Defendants' discovery responses were "deficient". Then, on March 22, 2025**,** Plaintiff first tendered a formal Rule 34 request to produce that embraced the 11 items outlined in Plaintiff's February 25, 2025, correspondence regarding purported "deficiencies". Plaintiff's newly issued discovery request tacitly acknowledges that Plaintiff's February 25, 2025, "deficiency" email was incorrect. There was no request for the 11 items outlined in Plaintiff's February 25, 2025, correspondence until March 22, 2025, which is why Plaintiff had to issue new requests on March 22. Defendants are thus asked to show that they have complied with requests that were never made.

Notably, the table in Plaintiff's position paper (pages 3-4) outlining 11 discovery "deficiencies" cites to discovery disputes that were resolved by this Court on February 21, 2024. (Dkt #167.) Defendants complied with this court's order and all issues appeared to have been resolved amicably. Now, on the eve of fact discovery close, Plaintiffs want to rehash and relitigate what was already decided. Also, Plaintiff wishes to do this more than 6 months after Defendants produced volumes of documents in accordance with court orders.

**I.     Response to Plaintiff's Topic A.1, 2010 Justice Department Litigation and Agreed Order**

There are at least three issues with regards to the 2010 DOJ Consent Decree commentary outlined by Plaintiff.

First, the Court ruled on this issue on February 21, 2024. (Dkt. 167; Ruling #6- "the defendants represented that they have searched for documents related to the DOJ-investigation responsive to the plaintiff's request and did not find any, so there is nothing to compel").

Second, Defendants long ago advised that every audit report (70+) for the DOJ investigation is on PACER. We advised Plaintiff last year multiple times we reviewed all of those audits and could not find any reference to issues involving the scheduling of optometry appointments or gangs controlling the phones or fights over the phones. We told Plaintiff that if he found any references to those issues to advise us and we would investigate further. The Plaintiff never provided any further information.

Third, as to the 2008 DOJ letter, Courts have held that unfounded allegations in a 2008 letter based on a 2006-2007 investigation have no relevance for a case dealing with a 2016 alleged failure to protect. *See*, e.g., *Conwell v. Cook County*, No. 12 C 10062, Dkt. 152 at p. 2-3 (N.D.Ill. Feb. 2, 2017) (Castillo, J.) (*in limine* ruling barring references to a 2008 Department of Justice letter, based on a 2006-2007 investigation, as being inapplicable to allegations from 2012-2013); *See* Mem. Op. and Order, *Mitchell v. Cook County* at p. 6-7, 10 CV 4873 (N.D. Ill. Sept. 14, 2011) (Gettleman, J.) (Dkt. 41) (discussing the DOJ letter and noting that Cook County disputed the contents of that letter, that the letter was "irrelevant" to the pending motion to dismiss, and that by 2010 CCJ could have taken steps to correct the conditions in the letter). Indeed, on June 12, 2018 (before Plaintiff was incarcerated), the United Sates and Cook County submitted a Joint Motion to Dismiss and Terminate the Remaining Sections of the Agreed Order in *United States v. Cook County*, 10-cv-2946, Dkt. 375 (N.D. Ill. 2010.) The Court granted that motion, ending the Federal Monitor, on June 26, 2018. Order, *United States v. Cook County*, 10-cv-2946, Dkt. 377 (N.D. Ill. 2010) (Kendall, J.) Despite Plaintiff's protestations, requests related to the 2010 Agreed Order are one more red herring, disproportional to the needs of this case.

## II. Response to Plaintiff's Topic B. "Missing or Substantially Incomplete Responses by Defendants-11 Areas"

In response to the table in Section (B) of Plaintiff's Report, the Defendants state as follows:

### A. "Telephone-Related Assaults"

### Topics 2-4

2. Telephone Benchmarking, Comparisons to Other Jails/Prisons, and Best/Better Practices.

3. …….Rollout-Related Communications.

4. Potential Secure Phone Booths, Segregated/Supervised Phone Areas, Jail-Administered Sign-Ups/Scheduling, More Phones, and Other Changes".

Based on our review of the discovery previously propounded before March 22, 2025, the Plaintiff *never* requested this material.

**Topic (1)** - **Internal Communications and Documents Regarding Telephone Related Assaults and Changes to the phones**. Again, this was the subject of motion practice more than a year ago, (Dkt. 162,) and the Court's Order on February 21, 2024. (*See Dkt. 167, Ruling #6 regarding DOJ records*). On June 7, 2024, Defendants produced hundreds of thousands of pages of documents, including grievances and incident reports, from 2011-2019. Further, 30(b)(6) witness Donald Beachem provided deposition testimony on this issue on March 5, 2025. Despite that production, Plaintiff waited until now to raise his concern.

**Topic (5)** - **Documents that Phone Related Assaults are a Problem.** Defendants disagree with the Plaintiff's characterization that phone related assaults "are a problem". On the contrary, the records and testimony reflect that this was not a frequent problem. (*See Hosteadter, Hugar, and Beachem depositions*). Nonetheless, this issue was also the subject of the Court's February 21, 2024, Order, (*See Dkt. 167, Ruling #1-2,*) and the Defendants already produced hundreds of thousands of pages of grievances and incident reports from 2011-2019, a small percentage of which might have related to issues involving the phones.

Additionally, despite those hundreds of thousands of pages of documents and Plaintiff's opportunity to depose witnesses on this issue, Plaintiff has identified no evidence suggesting any "gang control" over any phones.

B. **Eyeglasses Requests and Optometrist Appointments**

**Topic (6) - Inmate Optometrist Requests, Appointments and Eyeglasses.** On June 7, 2024, Defendants sent Plaintiff a list of 31,000 detainees who had optometrist appointments in the prescribed timeframe (2015-2019). Notably, Defendants asked Plaintiff to identify any specific patients he wanted more information about, and the Defendants would obtain it. Plaintiff refused to compromise or try to narrow the request. Plaintiff still has not provided a single inmate's name. Defendants proposed a random sample based on the vision grievances filed by inmates from 2015-2019. Defendants advised Plaintiff that Defendant County has successfully used this sampling method in other matters. Plaintiff refused to compromise. Also, Defendants made Plaintiff aware that detainees seek treatment from the optometrist for a multitude of reasons which have nothing to do with the need for eyeglasses. The only way to search for specific requests is to go inmate-by-inmate. Looking through records for thousands of inmates is disproportional to the needs of the case, Plaintiff has not sought to compromise, and Plaintiff has not responded in a timely manner. As a means of resolving this issue, Defendant County proposes that it could perform a search for appointment records, based upon grievances related to optometrist appointments. Based on a sampling of grievances, a records search could be done.

**Topic (7) - Internal Communications and Documents regarding Vision Care/Eyeglasses.** The County Defendant produced <u>all</u> vision policies in its possession from 2011-2019 back in 2022, and further on July 18, 2024. (Bates 333-370, 236,643-236,678.) Defendant Dart also provided an Inmate Handbook to Plaintiff, and Chapter 6 address options for an inmate to obtain plastic frames. (Bates 1721, 1745). In addition, Dr. DeFuniak, a 30(b)(6) witness, testified on January 29, 2025, at length regarding the issues raised in this topic. He also provided the names of the two optometrists employed from 2011-2019, but Plaintiff has not followed-up.

**Topic (8) - Vision Care/Eyeglasses Benchmarking, Comparisons to Other Jails/Prisons and Best/Better Practices.** Defendants could not find any prior request for these records before March 22, 2025. We note a prior request for "generally accepted standards" (RFP #35), but that is different from what Plaintiff asks for here. Also, Cook County is accredited, and follows the NCCHC standards, and so there is no need for Cook County to compare or have any benchmarking.

**Topic (9) - Costs/Payments by Defendants for Optometrist Appointments/Eyeglasses.** Defendants objected to these issues in response to Plaintiff's Sept 24, 2021, discovery requests and in response to Plaintiff's May 5, 2023 discovery requests. We cannot recall Plaintiff following up until now. The request is disproportionate to the needs of the case because Plaintiff did not allege any claim or issue regarding invoices, charges, costs, or payment of optometrist services. Plaintiff was never presented with a bill. Nevertheless, there are no bills for any outside optometry services because inmates are sent to County facilities.

**Topic (10) - Contracts/Arrangements for Optometrist Scheduling and Eyeglasses.** This appears largely duplicative of topic B (9). This Defendant does not have any outside contracts with optometrists and providers or vendors who treated inmates or supplied eyeglasses during the 2015-2019 period. The County has its own optometrists. See Answer to Topic (B)(9).

**Topic (11) - Documents Mentioning or Acknowledging that Issues or Problems Exist regarding Inmate Eyeglasses and Optometry Appointments.** This is a legal conclusion. We could also find no request for these specific records prior to the February 25, 2025, email. This request also appears to overlap with Topic (B)(7).

### III. Response to Plaintiff's Topic C. "Other Outstanding Discovery"

With respect to section C of plaintiff's response, "Other Outstanding Discovery", the Defendant state as follows:

| **Plaintiff's Issue** | **Defendants' Response** |
|---|---|
| 1. The 11 Areas Described Above: | See above and Exhibit C. The Defendants would request leave to file motions regarding Plaintiff's theory that an "adverse inference" should be drawn because Plaintiff feels there is some absence of records to support his case. The theory is similar to spoliation. The negative inference arises only when documents are destroyed in bad faith, specifically to hide adverse information. That never happened here. Mere discovery disputes or inadvertent failures to produce documents do not justify an adverse inference. *Reed v. Freedom Morg*, 869 F.3d 543 (7th Cir 2017); *Park v. City of Chicago*, 297 3d 606 (7th Cir. 2002); Faas v. Sears, Roebuck & Co., 532 F.3d 633, 644 (7th Cir. 2008). |
| 2. Beachem dep cancellation | This was an inadvertent scheduling mistake. The dep proceeded the next day. We plan to contact Veritext and have the fee waived because we are a long-standing client. |
| 3. Jakubowksi & Other Deps | Defendant has proposed dates and times for Jakubowski. Witnesses were deposed for Topics 10-11. The parties are working on Shebel stip. |
| 4. Plaintiffs 03.22.25 Req to Prod | See responses in this letter, and if Defendant is ordered to answer they would have until April 22, 2025, since its new discovery. |

**Conclusion**

Plaintiff's Report devotes considerable time discussing Judge Ellis's rulings in 2023. However, this Court was well aware of those rulings and the status of discovery prior to ruling on the motion a year later on February 21, 2024. Defendants complied with this Court's order and produced responsive documents and witnesses. At the same time, by agreement and over the course of time, the parties compromised on several issues. The fact remains that, as discovery is set to close, and after Defendants have already produced hundreds of thousands of pages of documents on tangential matters concerning a straightforward case, Plaintiff is Johnny-come-lately, objecting to issues that have already been resolved months ago, and without ever actually filing a motion to compel or holding a Local Rule 37.2 conference after receiving defenses response on March 16, to counsels 2.25.25 email. Plaintiff has had plenty of bites at the apple. It is time to close fact discovery and move this litigation forward.

Sincerely,

*/s/ Jason E. DeVore*
*/s/Troy S. Radunsky*

DeVore Radunsky, LLC
Jason E. DeVore
Troy S. Radunsky
(312)-300-4479
jdevore@devoreradunsky.com

tradunsky@devoreradunsky.com
230 W. Monroe Street, Suite 230
Chicago, Illinois 60606