

## **Exhibit 10**

30(b)(6) Deposition Transcript of Peter Kramer (April 8, 2025)

Page 1

1              UNITED STATES DISTRICT COURT

2           FOR THE NORTHERN DISTRICT OF NEW YORK

3    ────────────────────────────────

4    DONALD HENNEBERG,

5              Plaintiff,

6         v.                          Case No.

7    TOM DART, SUSAN SHEBEL, R.N.,        1:19-cv-07380

8    JOHN DOE MEDICAL DEFENDANTS,

9    CORRECTIONAL OFFICER JORGE

10   ARIAS, and COOK COUNTY,

11   ILLINOIS, et al.,

12             Defendants.

13   ────────────────────────────────

14        VIDEOTAPED DEPOSITION OF 30(b)(6) CORPORATE

15     REPRESENTATIVE FOR COOK COUNTY SHERIFF TOM DART -

16                   PETER KRAMER

17   DATE:          Tuesday, April 8, 2025

18   TIME:          12:04 p.m.

19   LOCATION:      Remote Proceeding

20                  County Government Sheriff Civic

21                  Center

22                  3056 South California Avenue

23                  Chicago, IL 60608

24   REPORTED BY:   Jaz R. Ramos

25   JOB NO.:       7299425

Page 2

```
1    A P P E A R A N C E S
2  ON BEHALF OF PLAINTIFF DONALD HENNEBERG:
3    PETER M. FAY, ESQUIRE (by videoconference)
4    JOHN P. GUYETTE, ESQUIRE (by videoconference)
5    Morgan Lewis & Bockius LLP
6    101 Park Avenue
7    New York, NY 10178
8    peter.fay@morganlewis.com
9    john.guyette@morganlewis.com
10   (212) 309-6000
11
12 ON BEHALF OF DEFENDANTS TOM DART, SUSAN SHEBEL,
13 R.N., JOHN DOE MEDICAL DEFENDANTS, CORRECTIONAL
14 OFFICER JORGE ARIAS, AND COOK COUNTY, ILLINOIS:
15   JASON E. DEVORE, ESQUIRE (by videoconference)
16   JORIE R. JOHNSON, ESQUIRE (by videoconference)
17   DeVore Radunsky LLC
18   230 West Monroe Street, Suite 230
19   Chicago, IL 60606
20   jdevore@devoreradunsky.com
21   jjohnson@devoreradunsky.com
22   (312) 300-4479
23
24
25
```

Page 3

```
1    A P P E A R A N C E S (Cont'd)
2  ALSO PRESENT:
3    Lee Bowry, Videographer - Veritext (by
4    videoconference)
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 4

```
1            I N D E X
2  EXAMINATION:                    PAGE
3    By Mr. Fay                  7
4
5          E X H I B I T S
6  NO.      DESCRIPTION          PAGE
7         (None marked.)
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 5

```
1            P. KRAMER
2    THE VIDEOGRAPHER:  Please begin.
3    THE REPORTER:  All right.
4    Good afternoon.  My name is Jaz
5  Ramos, and I am the court reporter
6  assigned by Veritext to take the record of
7  this proceeding.  We are now on the record
8  at 12:04 p.m.
9    This is the deposition of Peter
10 Kramer taken in the matter of Donald
11 Henneberg vs. Tom Dart et al., on Tuesday,
12 April 8, 2025.  Our witness is located at
13 3056 South California Avenue, Chicago,
14 Illinois.
15   I am a notary authorized to take
16 acknowledgments and administer oaths in
17 New York, and parties agree that I will
18 swear in this witness remotely.
19   Additionally, absent an objection on
20 the record before the witness is sworn,
21 all parties and the witness understand and
22 agree that any certified transcript
23 produced from the recording of this
24 proceeding:
25   - is intended for all uses permitted
```

2 (Pages 2 - 5)

Page 6

P. KRAMER
1
2  under applicable procedural and
3  evidentiary rules and laws in the
4  same manner as a deposition recorded
5  by stenographic means; and
6  - shall constitute written
7  stipulation of such.
8      At this time will everyone in
9  attendance please identify themselves for
10 the record and which party they are here
11 to represent.
12     We're going to start with Counselor
13 Fay.
14     MR. FAY:  Good morning.  Peter Fay
15 with the law firm of Morgan Lewis &
16 Bockius representing the plaintiff Donald
17 Henneberg.
18     MR. GUYETTE:  John Paul Guyette, also
19 with the firm Morgan Lewis & Bockius LLP,
20 representing the plaintiff Donald
21 Henneberg.
22     MR. DEVORE:  Jason DeVore of DeVore
23 Radunsky on behalf of Defendants, and
24 representing the witness today.
25     MS. JOHNSON:  Jorie Johnson on behalf

Page 7

P. KRAMER
1
2  of Defendants and also representing the
3  witness today.
4      MR. BOWERY:  Lee Bowry, videographer
5  with Veritext.
6      THE REPORTER:  And Mr. Kramer, if you
7  could state your full name for the record,
8  please.
9      MR. KRAMER:  Peter Kramer.
10     THE REPORTER:  Thank you.
11     Hearing no objection, I will now
12 swear in this witness.
13     Mr. Kramer, if you don't mind, please
14 raise your right hand for me.  Thank you.
15 WHEREUPON,
16     PETER KRAMER,
17 called as a witness and having been first
18 duly sworn to tell the truth, the whole
19 truth, and nothing but the truth, was
20 examined and testified as follows:
21     THE REPORTER:  Counsel, please
22 proceed.
23     EXAMINATION
24 BY MR. FAY:
25  Q   Good morning, Mr. Kramer.

Page 8

P. KRAMER
1
2  Usually when I do depositions, I like to
3  refer to the deponent by their first name.
4  However, I realize we share the same first
5  name.  So to avoid confusion, is it okay
6  if I call you Mr. Kramer?
7  A   Sure.
8  Q   Okay.  Thank you.
9      And regardless of if you've done
10 depositions before, I'd just like to go
11 over some ground rules very quickly.  So
12 if I ask a question and you don't
13 understand it, please let me know and I'll
14 repeat it or try to rephrase it.  Is that
15 fair?
16 A   Yes.
17 Q   Okay.  But if you answer the
18 question, I will assume that you
19 understood it.  Is that fair?
20 A   Yes.
21 Q   Okay.  And the court reporter
22 will be transcribing the deposition.  And
23 especially in this Zoom context, they can
24 only record one person at a time.  To make
25 things easier, I would appreciate it if we

Page 9

P. KRAMER
1
2  would agree not to talk over each other
3  and to do our best not to talk over each
4  other.  So please wait until I finish
5  speaking before responding to any
6  question, and I will do my best to make
7  sure that I let you finish.  Is that fair?
8  A   Yes.
9  Q   Okay.  Also, you have to respond
10 verbally.  The court reporter cannot
11 transcribe gestures or nods or anything
12 like that.
13     Is there anyone in the room with
14 you right now?
15 A   No.
16 Q   Okay.  Do you have a phone on
17 you right now?
18 A   Three.
19 Q   Three phones.  Okay.  It's
20 important that you answer these questions
21 without input from external parties.  So
22 if you could just not use the phone during
23 the deposition, that would be great.  Is
24 that fair?
25 A   Yes.

3 (Pages 6 - 9)

P. KRAMER

1
2    Q    And we can take breaks at any
3  point in the deposition if you need one.
4  The only qualification to that is that I
5  ask that you answer any question that is
6  pending before we go on break.  Is that
7  fair?
8    A    Yes.
9    Q    And you are under oath, which
10  means you have to tell the truth just like
11  you would in a court proceeding.  And your
12  oath is continuing throughout the
13  deposition, regardless of any breaks that
14  we take.  Is that fair?
15    A    Yes.
16    Q    And there will be times today
17  when your attorney objects to certain
18  questions that I ask.  If you understand
19  my questions, I would ask that you still
20  answer the question unless your attorney
21  instructs you specifically not to answer
22  the question.  Is that fair?
23    A    Yes.
24    Q    Okay.  Is there any reason why
25  your memory would be impaired today?

P. KRAMER

1
2    A    No.
3    Q    Okay.  Is there any reason you
4  can think of that would prevent you from
5  testifying truthfully today?
6    A    No.
7    Q    And you are here today to
8  testify as a 3(b)(6) witness for of the
9  Cook County Sheriff's Office in this
10  action; correct?
11    A    Yes.
12    Q    And more specifically, you were
13  produced as a witness regarding 30(b)(6)
14  Topic 11, which pertains to disciplinary
15  action as to Sheriff Dart or any employees
16  of the Cook County Sheriff's Department
17  regarding enforcement of inmate telephone
18  usage rules or otherwise ensuring safe
19  usage of phones by inmates.  Does that
20  sound correct?
21    A    Yeah.
22    Q    Okay.  And I understand from
23  communications between counsel of the
24  parties that there was at least as of a
25  few days ago a dispute over the scope of

P. KRAMER

1
2  what you would testify to.  Are you
3  prepared solely to testify as to the OPR
4  process at the Sheriff's office?
5    A    I can testify about the entire
6  disciplinary process, which includes OPR.
7    Q    Okay.  Are you prepared to
8  discuss what the data from the OPR process
9  says or suggests regarding disciplinary
10  action taken against Cook County jail
11  staff for failing to protect inmates from
12  violence in relation to phone use?
13    A    I've not seen data, so I would
14  say no.
15    Q    Okay.  So you would say that
16  today you are prepared to discuss the
17  existence of the OPR process and the
18  existence of the disciplinary process at
19  the Sheriff's Office; correct?
20    A    Correct.
21    Q    Okay.  But you are not prepared
22  to discuss any data or analysis or
23  conclusions based off of the OPR process?
24    A    I'd have to see the data.
25    Q    Okay.  Let me ask it this way,

P. KRAMER

1
2  and I think you testified to this.  You
3  haven't seen any data from the OPR office;
4  correct?
5    A    Not related to phones usage by
6  detainees.
7    Q    Okay.  And when you say phone
8  usage by detainees, you mean in relation
9  to allegations of failure to protect
10  inmates when they attempted to use the
11  phone?
12    A    I would say anything related to
13  inmates using the phone.
14    Q    Okay.  Did you meet with anyone
15  to prepare for this deposition?
16    A    Yes.  I met with the attorneys
17  who are representing out office on the
18  case.
19    Q    Okay.  So you spoke with the
20  attorneys on the Zoom call?
21    A    And one other one.
22    Q    Okay.  When did you speak with
23  them?
24    A    Most recently yesterday.
25    Q    And how long was that

Page 14

P. KRAMER

1
2 conversation?
3      A    Approximately 20 minutes.
4      Q    And was anyone other than those
5 attorneys and yourself present at those
6 conversations?
7      A    No.
8      Q    Did you review any documents to
9 prepare for today's deposition?
10     A    I read the Complaint and I read
11 the Notice.
12     Q    Did you review any OPR policy in
13 preparation for this deposition?
14     A    No.
15     Q    And just to be completely clear,
16 you did not review any OPR data in
17 preparation for this deposition?
18     A    No.
19     Q    Anything else to prepare for
20 today's deposition?
21     A    No.
22     Q    What is your --
23     A    Sorry.  I met with the lawyers a
24 couple of weeks ago, but the dep guy
25 canceled.

Page 15

P. KRAMER

1
2      Q    Okay.  Thank you.
3           What is your highest level of
4 education?
5      A    Juris Doctor.
6      Q    Very nice.  And where did you
7 receive your law degree?
8      A    The John Marshall Law School.
9      Q    And do you have any other
10 certifications or degrees?
11     A    I have a B.A.
12     Q    Where did you --- I'm sorry.
13     A    Miami University.
14     Q    Have you ever been deposed as a
15 30(b)(6) witness?
16     A    Yes.
17     Q    How many times?
18     A    Approximately ten.
19     Q    Okay.  And were any of
20 those -- in any of those ten
21 approximately, were you representing
22 Sheriff Dart?
23     A    I would say almost all of them
24 were involving the Sheriff's Office.
25     Q    And do you recall what type of

Page 16

P. KRAMER

1
2 claims those were?
3      A    I recall the most recent one.
4 But beyond that, no.
5      Q    So the most recent one, what
6 type of claims were those?
7      A    It was an excessive force claim.
8      Q    Have you ever testified at trial
9 in any lawsuits involving claims against
10 the Sheriff's Office?
11     A    At least once, but I want to say
12 maybe two or three.
13     Q    And do you recall what type of
14 claims those were?
15     A    One I remember was an employment
16 case.
17     Q    And you don't recall the other
18 one?
19     A    Not as I sit here.
20     Q    Fair enough.
21           Where do you currently work?
22     A    I work at the Cook County
23 Sheriff's Office.
24     Q    And what's your job title?
25     A    Special counsel for labor

Page 17

P. KRAMER

1
2 affairs.
3      Q    How long have you had that
4 position?
5      A    Approximately ten years.
6      Q    How long have you been employed
7 at the Cook County Sheriff's Department?
8      A    Approximately 20 plus years.
9      Q    How many different positions
10 have you had at the Cook County Sheriff's
11 Office?
12     A    Three or four.
13     Q    And were all of those positions
14 in regard to -- where all those legal
15 positions?
16     A    Yes.
17     Q    Do you recall what your first
18 role at the Cook County Jail -- I'm
19 sorry -- at the Cook County Sheriff's
20 Office was?
21     A    Assistant general counsel.
22     Q    And what were your general
23 duties in that role?
24     A    So that role dealt mainly with
25 litigation against our office.  So

5 (Pages 14 - 17)

Page 18

P. KRAMER

1
2 assisting our outside counsel, preparing
3 defense of litigation, and then day-to-day
4 legal questions.
5     Q   And after that role, what was
6 your second role?
7     A   So for a good three or four
8 years, I was -- I was kind of a default
9 general counsel. I don't even know if I
10 was made general counsel, but I had more
11 responsibilities in terms of the
12 litigation and our collective bargaining
13 agreements and the employee discipline
14 process.
15     Q   What was your third role?
16     A   I think I went back to assistant
17 general counsel when they finally hired a
18 general counsel.
19     Q   Okay. And then is it fair to
20 say the fourth role was what you're in
21 now, special counsel?
22     A   Yes, that's fair.
23     Q   And do you interact with the OPR
24 in your present role?
25     A   I do.

Page 19

P. KRAMER

1
2     Q   What does that interaction look
3 like?
4     A   So our OPR investigators are
5 organized. So I handle the management
6 side of the negotiations with our OPR
7 investigators. And I also am involved in
8 our employee disciplinary process, which
9 involves arbitrations over discipline, so
10 they're frequently my witness.
11     Q   Okay. And I think you said
12 negotiations. Can you extrapolate a
13 little bit on what that means?
14     A   Sure. So depending on the term
15 of the contract, whenever they are up for
16 renewal, we sit down with the
17 representatives and we collectively
18 bargain the successor contract.
19     Q   Okay. So negotiations in
20 collective bargaining?
21     A   Correct.
22     Q   Okay. Thanks.
23         And are you at all involved in
24 creating or revising OPR policy?
25     A   A little. I -- if we want to

Page 20

P. KRAMER

1
2 amend our policies, and they involve a
3 mandatory subject of bargaining, which
4 from the union's perspective they always
5 do, we have to send those proposed changes
6 to the union. And if they want to talk
7 about them, we have to sit down and
8 discuss them.
9     Q   And what does OPR stand for?
10     A   Office of Professional Review.
11     Q   Do you know when the OPR was
12 formed?
13     A   Approximately 2008, 2006, around
14 there.
15     Q   Do you know why it was formed?
16     A   So we used to have four
17 different internal affairs departments for
18 our various departments in our office, and
19 they were combined into one investigative
20 unit.
21     Q   Do you know why they were
22 combined?
23     A   Part of it was to make sure,
24 one, they were doing a good job. But two,
25 to make sure there wasn't anything lost in

Page 21

P. KRAMER

1
2 the shuffle. So more accountability and
3 more organization.
4     Q   Do you know what the four units
5 were?
6     A   So CCDOC, Department of
7 Corrections, had their own IAD, Court
8 Services had their own IAD, the Police
9 Department -- well, they didn't have their
10 own IAD; they did handle their own
11 investigations; they called them
12 inspectors, and Electronic Monitoring
13 Community Corrections also had their own
14 IAD officers. We also had an Inspector
15 General's Office at that time too, which
16 was kind of the supervisor of those
17 groups.
18     Q   And do you know around when
19 those were combined?
20     A   I think about 2006-ish.
21     Q   And was the OPR office or its
22 creation part of any consent decree
23 between Cook County and the federal
24 government?
25     A   Their duties were definitely

6 (Pages 18 - 21)

Page 22

P. KRAMER

1
2 discussed as part of the consent decree
3 with the DOJ.
4     Q   Okay.  But it wasn't created
5 because of any consent decree?
6     A   I don't think it was created
7 because of the consent decree.  They were
8 overlapping though at about the same time.
9     Q   And broadly speaking, what does
10 the OPR do?
11     A   They handle -- they handle
12 internal investigations and do employee
13 misconduct generally.
14     Q   And are you prepared today to
15 testify as to the OPR office's policies
16 from the time period of 2010 to 2019?
17     A   I don't know when their policies
18 were first incorporated.  I'm pretty
19 familiar with their policies, though, so
20 I'll do my best.  I don't really
21 two-thousand -- if you asked me in 2010 if
22 I knew OPR's policies, I would say no.
23     Q   Okay.  And is the OPR a separate
24 department within the Cook County
25 Sheriff's Office?

Page 23

P. KRAMER

1
2     A   Yes, it's a standalone
3 department.
4     Q   But the office reports to the
5 Sheriff?
6     A   Ultimately, yes.
7     Q   Do you know who the person or
8 the highest title or authority is within
9 the OPR?
10     A   Yes.
11     Q   Do you know their name?
12     A   Today, yes.
13     Q   Can you provide their name?
14     A   So right now, the old executive
15 director left our office about three or
16 four months ago.  So right now there's
17 kind of an interim, and her name is
18 Jennifer Black.
19     Q   Do you know the name of the
20 individual who left three or four months
21 ago?
22     A   Yes.  Peter Lesuzzo [ph].
23     Q   And do you know who within the
24 OPR creates or revises OPR policy?
25     A   Ultimately, the responsibility

Page 24

P. KRAMER

1
2 would be the executive director.
3     Q   Is there any other department
4 within the Sheriff's Office that is
5 involved in investigating staff
6 misconduct?
7     A   Technically, any supervisor can
8 have a role in investigating staff
9 misconduct.  We have a video unit that
10 catches a lot of staff misconduct that
11 gets forwarded to OPR.
12     Q   Would you say that the OPR is
13 the main department that investigates?
14     A   Yes.
15     Q   Are you aware of any state or
16 local level agencies outside of the Cook
17 County Sheriff's Office that handle
18 investigations into potential misconduct
19 by staff?
20     A   Anytime there's a death in the
21 jail, the state police have to come in and
22 do an investigation.
23     Q   Other than that?
24     A   I mean, Chicago Police are here,
25 but they're not investigating our staff

Page 25

P. KRAMER

1
2 usually.  The feds have investigated our
3 staff for various things, but that's more
4 random, I would say.
5     Q   So if an inmate at Cook County
6 Jail makes a complaint regarding Cook
7 County Jail personnel failing to protect
8 them from violence over use of the inmate
9 phone system, would OPR be the
10 organization to take that complaint and
11 conduct that investigation?
12     A   Probably, yes.  In theory.
13     Q   Are there any other departments
14 that you can think of that might take that
15 complaint or do that investigation?
16     A   It's possible the superintendent
17 of the division might address a complaint
18 like that without sending it to OPR.
19     Q   So some inmate complaints don't
20 end up -- inmate complaints regarding
21 staff misconduct don't end up at OPR?
22     A   So it's possible both ways.  If
23 a superintendent sends it to OPR and OPR
24 says -- does a review and says there's
25 nothing further, we want you to handle

Page 26

P. KRAMER

1 this on the divisional level and just
2 issue the officer a DAF, which would be a
3 disciplinary action form, so a suspension
4 of some kind, usually 29 days or less,
5 they might do that or they may keep it and
6 conduct an investigation, depending on the
7 allegations and the circumstances.
8     Q   Does the severity of the
9 allegation play a part in whether it goes
10 to the OPR office?
11     A   It could.  So if the allegation
12 was the officer was receiving some benefit
13 for controlling the phones hypothetically,
14 then yeah, I would say that would be
15 investigated by OPR.  If the -- if a
16 detainee suffered a severe injury, that
17 might also be investigated by OPR.
18     Q   Would an allegation that a
19 correctional officer is failing to protect
20 an inmate from inmate violence in relation
21 to control over the phone system, would
22 that be considered severe?
23     A   If there was actual violence,
24 yes.

Page 27

P. KRAMER

1     Q   Who makes the decision whether
2 to investigate a complaint at OPR?
3     A   Well, in this hypothetical
4 scenario, it would be one of the directors
5 in OPR.
6     Q   Okay.  But if a superintendent
7 decided not to send the complaint to OPR,
8 presumably the answer would be the
9 superintendent is deciding?
10     A   In theory, yes, but there's some
11 review on that as well.
12     Q   What type of review would that
13 be?
14     A   So they report to executive
15 directors and, you know, they have
16 to -- if it -- depending on how the
17 complaint was made, they would have to
18 acknowledge the corrective action taken
19 and or correspond, which, you know, they
20 all report up.
21     Q   And the OPR office accepts
22 complaints regarding Cook County Jail
23 staff misconduct; correct?
24     A   Yes.

Page 28

P. KRAMER

1     Q   And who is allowed to make a
2 complaint to the OPR?
3     A   Anybody.
4     Q   So inmates can make a complaint?
5     A   Yes.
6     Q   And can employees make a
7 complaint regarding other employees?
8     A   Yes.
9     Q   Can civilians make a complaint?
10     A   Yes.
11     Q   Okay.  Is the process of
12 reviewing that complaint any different
13 depending on the source of the complaint?
14     A   I don't know if the process is
15 different.  Most of the inmate complaints
16 come in the form of grievances.  And
17 depending on the allegations, you know,
18 they're all reviewed, I guess.  So the
19 process probably doesn't change.
20     Q   Okay.  Do you know if OPR looks
21 at complaints from inmates with more
22 skepticism than complaints from other
23 employees or civilians?
24         MR. DEVORE:  Objection; form.

Page 29

P. KRAMER

1     But you can answer.
2         THE WITNESS:  I don't know that.
3 BY MR. FAY:
4     Q   And I think you said, or maybe
5 correct me if I'm wrong, most complaints
6 that end up at OPR are from inmates?
7     A   I don't think I said that.  I
8 said most complaints from inmates come in
9 the form of a grievance.
10     Q   Okay.  Thank you.
11     Do you know the source of most
12 complaints?
13         MR. DEVORE:  Objection; form.
14     But you can answer.
15         THE WITNESS:  I don't.
16 BY MR. FAY:
17     Q   And does OPR only investigate
18 circumstances when they receive a
19 complaint?
20     A   No, they would investigate if
21 they received information about staff
22 misconduct that wasn't in the form of the
23 complaint.
24     Q   So would you say OPR is

8 (Pages 26 - 29)

Page 30

P. KRAMER

1 proactive?
2    A   A little bit.  I think most of
3 their work is generated from complaints.
4 But if they got information of some
5 misconduct that was ongoing and occurring,
6 they would investigate it.
7    Q   So I'd appreciate it if you
8 could just walk me through sort of what
9 the process would be like if I was an
10 inmate and I had a complaint.  So let's
11 say I'm an inmate at Cook County Jail,
12 inmate Fay, and I believe there are
13 officers on my tier who are failing to
14 protect me from inmate violence in
15 relation to control of the phone system.
16 What are my options?
17    A   So one, you file a grievance
18 stating that.  That grievance, the officer
19 who's failing to protect you doesn't see
20 it.  That goes back to the -- that would
21 probably go back to the inmate services
22 office, and it would probably get
23 classified as a complaint about a failure
24 to protect and would then go to OPR.  OPR

Page 31

P. KRAMER

1 would review it.  They may review some
2 video.  They may -- they may call the
3 superintendent and then ask about it.
4 They may review the phone records to see
5 if you've actually been on the phones or
6 not.
7       It's kind of hypothetical, but
8 they might do a cursory review and assign
9 it to an investigator, or they may assign
10 it to a full blown investigation.  If your
11 complaint said the other inmates said they
12 were paying this guy so that they could
13 control the phones, something like that,
14 then probably you're getting a full blown
15 OPR investigation.
16    Q   So again, who would decide
17 whether it gets a full blown OPR
18 investigation?
19    A   One of the directors in OPR.
20    Q   And what type of evidence would
21 they be looking at or looking for in that
22 decision?
23       MR. DEVORE:  Objection; form;
24    incomplete hypothetical.

Page 32

P. KRAMER

1       But you can answer.
2       THE WITNESS:  My -- my guess is
3    they'd be reviewing the video from the
4    tier.
5 BY MR. FAY:
6    Q   If there wasn't video?
7    A   I don't know a tier that doesn't
8 have video.  But if there wasn't video on
9 this, then they probably contact inmate
10 Fay and conduct an interview with inmate
11 Faye to see what -- what he had to support
12 his allegation.
13    Q   How many directors are there?
14    A   So there's an executive
15 director, assistant executive director,
16 and then there's four directors over teams
17 of investigators.
18    Q   You know their names?
19    A   Apparently I could name, I think
20 two of them.  Tia Parks.  Deb -- I
21 mispronounced her last name, Simental [ph]
22 I think is her last name; she's relatively
23 new.  They -- they just recently went over
24 some turnover, so.  Who's the other one?

Page 33

P. KRAMER

1 Rochelle I think just
2 resigned -- and -- and Miriam Rentis [ph]
3 I think is the other one.
4    Q   Thank you.
5       THE REPORTER:  Can reporter just
6    clarify, did you say Tia Parks?
7       THE WITNESS:  Yes, T-I-A.
8       THE REPORTER:  And the last one was
9    Miriam?
10       THE WITNESS:  Miriam Rentis [ph].
11       THE REPORTER:  Thank you.
12 BY MR. FAY:
13    Q   But not all complaints end up at
14 OPR; right, regarding staff misconduct?
15    A   Yes, that's fair.
16    Q   And the complaints that don't
17 end up there, that's because the
18 superintendent decided not to send them?
19    A   Well, in this hypothetical, that
20 complaint should make its way to OPR.
21    Q   Okay.
22    A   But not all complaints make
23 their way to OPR.
24    Q   And if I file a complaint that

Page 34

```
 1            P. KRAMER
 2 just says, this guard is failing to
 3 protect me during, you know, when I'm
 4 trying to use the phone, and I provide no
 5 other, it's just my say-so, in your
 6 experience, what would happen with that
 7 complaint?
 8     A   Most likely, they would -- they
 9 would do some sort of inquiry in terms of
10 calling the superintendent or the
11 executive director's office to say, hey,
12 we've got this complaint; it's kind of an
13 unusual complaint, so can you see if
14 there's anything there?
15     Q   Are allegations of failure to
16 protect unusual?
17     A   They've become more rare, I
18 would say that.  They used to be
19 relatively common back in the 2000s, but
20 they have become a little more rare.
21     Q   And --
22     A   They're usually from other
23 detainees.
24     Q   When you say they've become more
25 rare, at what time period are you
```

Page 35

```
 1            P. KRAMER
 2 referring to?
 3     A   I'd say in the last five to ten
 4 years.
 5     Q   And do you have any idea of why
 6 that is?
 7     A   I actually don't know it to be
 8 true.  I'm just saying based on the number
 9 of litigation claims we've received, it
10 seems like the failure to protect one is
11 less and less common.
12     Q   So your characterization that
13 there are less failure to protect claims
14 is based just on your experience with
15 litigation?
16     A   Yes, I would say.  I could be
17 completely wrong.
18     Q   Okay.  And if a complaint is
19 reviewed and it's determined to
20 be -- like, they decide we don't want to
21 go, we don't want to have a full-blown
22 investigation, what happens to that
23 complaint?
24     A   The investigator would recommend
25 it be closed without further
```

Page 36

```
 1            P. KRAMER
 2 investigation, and the director would have
 3 to agree or disagree.
 4     Q   Is the inmate informed about
 5 that?
 6     A   I believe the detainee would
 7 be -- well, so there was a change in the
 8 law, but they used to have to offer the
 9 detainee a formal complaint file.  Because
10 in Illinois, there was a law that you
11 needed a formal complaint to investigate
12 sworn personnel.  But that law was changed
13 a couple of years ago.  I don't know if
14 that policy has been amended.  But
15 generally, any time a complaint is filed,
16 the complainant is supposed to be notified
17 of the results.
18     Q   And is there a right to appeal
19 for the inmate?
20     A   I'd have to -- I'm not certain
21 on that answer.
22     Q   And do inmates face -- do
23 inmates face risk of retribution from Cook
24 County Jail staff for filing complaints
25 regarding staff misconduct?
```

Page 37

```
 1            P. KRAMER
 2     A   I would say the system is
 3 designed to avoid that.
 4     Q   Can you extrapolate?
 5     A   So that's why the grievance is
 6 confidential from the officer.  So if the
 7 officer is beating up a detainee, for
 8 example, and the detainee files a
 9 grievance, the officer has no idea that a
10 complaint was filed on him.
11     Q   Do you know how many inmates
12 there are per tier?
13         MR. DEVORE:  Objection; form; time
14 frame.
15         You can answer.
16         THE WITNESS:  Most of them are 48.
17 BY MR. FAY:
18     Q   Okay.  So do you think -- well,
19 let me ask it this way.  Are staff
20 informed if a complaint is filed against
21 them?
22         MR. DEVORE:  Objection; asked and
23 answered.
24         You can answer again.
25         THE WITNESS:  Not always.
```

10 (Pages 34 - 37)

P. KRAMER

1
2  BY MR. FAY:
3      Q    Okay.  Are inmates allowed to
4  file anonymous staff misconduct
5  complaints?
6      A    They would take an anonymous
7  complaint.  Yes.  I'd say yes.
8      Q    Would the office look at an
9  anonymous complaint with suspicion?
10     A    Not necessarily.
11     Q    Does the OPR keep records of
12  complaints regarding Cook County Jail
13  staff misconduct?
14     A    Yes.
15     Q    How are those records stored?
16     A    So we're bound by the Illinois
17  Record Retention Act.  I think most of
18  their -- most of their data is now
19  electronic.  Any of their paper records,
20  they generally go to the warehouse and
21  they're kept for the required amount of
22  time.  Depending on which provision, it's
23  usually five to ten years.  I don't think
24  we've destroyed any records related to
25  OPR, though, in quite some time, mainly

P. KRAMER

1
2  due to litigation.
3      Q    Do you know how far back the
4  records are electronic?
5      A    No, I do not.
6      Q    So you wouldn't know if like
7  starting from 2010, if those would still
8  be in paper form versus electronic?
9      A    I would say 2010 was still
10  pretty paper-based.
11     Q    What about -- sorry.  Go ahead.
12     A    I could be off on the years, but
13  I want to say 2012-ish is when we started
14  getting more digital.
15     Q    So 2017 would be electronic?
16     A    Mostly, yes.  I would say mostly
17  electronic.  The grievances are still
18  handwritten, but those go to the CRW,
19  depending on what type of grievances.
20  Like, officer misconduct, it's probably
21  scanned there and then sent to the correct
22  place.
23     Q    And would those OPR records
24  include all complaints, including the ones
25  that were found to be unfounded?

P. KRAMER

1
2      A    I don't know how they sort them,
3  if that's the question.  But if they had a
4  complaint that was either founded or
5  unfounded, they're still stored.
6      Q    And do you know if I would be
7  able to -- let me ask it this way.  Would
8  you be able to search for all the
9  complaints made against a certain officer?
10     A    You'd have to check a couple of
11  places, but yes.
12     Q    What are those couple of places?
13     A    Well, start with OPR.  But you'd
14  also -- so there's -- I have -- we have,
15  you know, almost 5,000 employees.  So
16  there's other officer -- so if the officer
17  is a supervisor, they frequently get
18  complaints from subordinate officers in
19  the form of grievances and stuff like
20  that.  Then check litigation, EEOC,
21  Illinois Department of Human Rights.
22  There's -- there's a number of different
23  ways a complaint can come in.
24     Q    So is it accurate to say that
25  OPR would not have all the complaints?

P. KRAMER

1
2      MR. DEVORE:  Objection; form.
3      But you can answer.
4      THE WITNESS:  Yes.  Like, so if an
5      officer makes a complaint about a
6      supervisor and it's about denying him or
7      her overtime, then that's probably not
8      going to OPR.
9  BY MR. FAY:
10     Q    But if I was specifically
11  looking for all complaints alleging
12  failure to protect in relation to inmate
13  use of the phone system, would those all
14  be at OPR?
15     A    OPR, or in theory, if it
16  wasn't -- if it was handled within the
17  division, it's possible it wouldn't have
18  gone to OPR, but I don't know.
19     Q    So if a complaint is determined
20  to be founded, does an investigation
21  start?
22     A    No.  So the -- the investigation
23  determines whether it's founded,
24  unfounded, or exonerated.
25     Q    Okay.  So what does that

11 (Pages 38 - 41)

P. KRAMER

1
2 investigation look like?  The one that
3 starts after the complaint comes in.
4     A   So you review the complaint.  If
5 you need additional information, you may
6 contact the complainants.  You try to
7 gather all the objective materials you
8 can, video, any documents, you know,
9 payroll records.  There's records on
10 everything here.  So you can usually find
11 what you're looking for.
12         So in this hypothetical, you'd
13 be checking to see what officer was
14 assigned to which tier; you check rosters,
15 which reflect the assignments in the
16 divisions; you check the workforce records
17 to see when they're on duty, check the
18 video records to see if what's captured on
19 the video, and check the phone records to
20 see who's using the phone on that tier,
21 maybe even listen to the phone records.
22 And then interview the complainant and
23 interview the accused if necessary.
24     Q   And does the OPR staff conduct
25 that investigation?

P. KRAMER

1
2     A   Yes.
3     Q   And our OPR investigators
4 supervised?
5     A   Yes.
6     Q   By who?
7     A   They all have a director of
8 their unit.  And then there's additional
9 supervision over that with the assistant
10 executive director and the executive
11 director.
12     Q   How long in general does an
13 investigation take?
14     A   Depending on the timeframe when
15 we're talking, they can -- some have
16 gone -- we have basically an 18 month kind
17 of statute of limitations in most of our
18 collective bargaining agreements.  Most of
19 them should be done well before that, but
20 some do linger and take a long -- take
21 longer.
22     Q   And do the investigators receive
23 any type of special training?
24     A   Yes, they do.  They go through
25 some, you know, interrogation training.

P. KRAMER

1
2 They're -- I don't -- I don't -- I'm not
3 familiar with their in-service
4 requirements, but there is -- they are
5 given specific training.
6     Q   Do you know what happens to an
7 inmate complaint if the inmate is
8 transferred out of the jail before the
9 conclusion of an investigation?
10     A   I've seen investigators visit
11 prisons downstate.  Usually I've also seen
12 them send certified mail to their last
13 known address.  If they, you know, if they
14 have a phone contact in their -- when they
15 were booked into the DOC, they may try to
16 contact the complainant via that.
17     Q   But the investigation is still
18 conducted?
19     A   Yes.
20     Q   OPR investigators are still part
21 of the Sheriff's Department; correct?
22     A   Yes.
23     Q   Do OPR investigators face
24 pressure not to accurately or vigorously
25 investigate misconduct allegations?

P. KRAMER

1
2     MR. DEVORE:  Objection as to form.
3     But you can answer.
4     THE WITNESS:  No, I would say it's
5 the opposite.
6 BY MR. FAY:
7     Q   Why would you say it's the
8 opposite?
9     A   Because we don't -- the whole
10 reason they have OPR is to aggressively
11 investigate misconduct.
12     Q   Are there any policies or
13 procedures in place to ensure that that
14 happens?
15     A   Yes.  They have -- they
16 are -- and that's why they have all the
17 different levels of review to make sure
18 they're competently conducting their
19 investigations.
20     Q   Is there anything done to ensure
21 that Cook County jail employees
22 participate in their investigations?
23     A   Well, anytime they're going to
24 interview an accused, they call that a
25 compelled statement.  So that employee

Page 46

P. KRAMER

1  does not have a choice. He has to sit
2  down and be interviewed. He's given his
3  Weingarten and his Garrity rights and his
4  Brady advisement, and he has to tell the
5  truth. Otherwise, he's going to risk
6  his -- his or her job.
7      Q    So Cook County Jail staff are
8  required to be -- or required to
9  participate in these investigations?
10     A    Yeah. In terms of witnesses and
11  accused, yes.
12     Q    And if they're found to be not
13  truthful, they're disciplined?
14     A    Yes.
15     Q    And once that investigation is
16  concluded and the complaint is found to be
17  founded, what happens next?
18     A    So if a complaint is sustained
19  against the officer for a policy
20  violation, then it would go to the
21  executive director of that department, in
22  this hypothetical in the Cook County
23  Department of Corrections, and the
24  executive director designee would

Page 47

P. KRAMER

1  recommend a level of discipline. Now it
2  would be up to a suspension of 180 days if
3  it's less than termination.
4      Q    And is a final investigative
5  report filed?
6      A    In a way, yes. It's a -- what's
7  sent to the executive director is
8  the -- it's basically -- it's done
9  electronically, but it's the OPR file,
10  which includes the, you know, the
11  complaint, the summary of the
12  investigation, witness statements, any and
13  all documents, video, et cetera.
14     Q    So that file is comprehensive
15  and it includes all the evidence?
16     A    Hopefully. Not always, though.
17  But yes, that's the goal.
18     Q    Why might it not always be
19  comprehensive?
20     A    Well, you know, sometimes they
21  don't interview a certain witness or they
22  don't follow up on a certain answer, but
23  those are kind of unique to the specific
24  file.

Page 48

P. KRAMER

1      Q    So is it fair to say that
2  sometimes the OPR file is incomplete?
3      A    I would say OPR wouldn't
4  consider it incomplete, but I would say
5  that from my perspective, sometimes it
6  could have been a better investigation.
7      Q    And do you have reservations
8  about OPR investigations?
9      A    Generally, no.
10     Q    Have you seen or heard of or
11  interacted with investigations that you
12  thought were incomplete?
13     A    I have had a case or two where a
14  witness wasn't interviewed, and I kind of
15  wanted to know why. And usually there was
16  an answer. But the answer wasn't in the
17  file as to why Officer Kramer wasn't
18  interviewed. Turns out Officer Kramer was
19  on leave and in California or something
20  and they couldn't contact him, but they
21  didn't put that in the file.
22     Q    Is that an acceptable answer?
23     A    Not really. They should have
24  put that in the file.

Page 49

P. KRAMER

1      Q    They should put it in the file.
2  But is it also acceptable not to interview
3  somebody just because they're on leave?
4      A    So generally we -- we try to
5  contact them when they're on leave, but we
6  can't force them to come in, which causes
7  delays in investigation. So I guess it
8  depends on the perspective of what kind of
9  evidence is this witness really going to
10  give us.
11     Q    So if a staff member is on leave
12  or leaves the jail, there's no ability to
13  compel them to be part of the
14  investigation?
15     A    Yeah, if the staff member
16  resigns, we cannot compel them to give a
17  statement.
18     Q    And does OPR maintain any sort
19  of record of these investigation reports,
20  which I believe you call the OPR files?
21     A    Yeah, they -- they keep all
22  their files.
23     Q    And is that stored in the same
24  database as the complaints?

13 (Pages 46 - 49)

P. KRAMER

1
2     A   I don't know.
3     Q   Do you know if these -- if the
4 OPR files would be in electronic form?
5     A   I would say most -- going back
6 to five, ten years-ish, yes.
7     Q   So 2017?
8     A   Yeah, that would be fair.  I
9 would say almost all those should be
10 electronic.
11     Q   And do you know if the different
12 OPR files are coded by categories?
13     A   That I don't know.  I think
14 they've done it differently over the
15 years.  I don't know how they code them,
16 though.
17     Q   Would an OPR file regarding an
18 allegation that Cook County Jail staff
19 were failing to protect an inmate from
20 violence over use of the inmate phone
21 system be categorized as a failure to
22 protect?
23     A   Don't know.  It could be.  It
24 could be, but it could also be staff
25 misconduct.

P. KRAMER

1
2     Q   Would the OPR file contain
3 specific facts for each allegation?
4     A   It should.
5     Q   If I wanted to search the
6 electronic database for OPR files into
7 allegations pertaining to failure to
8 protect inmates from violence over use of
9 the inmate phone system, could I do that?
10     MR. DEVORE:  Objection; calls for
11 speculation.
12     You can answer.
13     THE WITNESS:  I don't know how you
14 would do that.  I mean, if you went
15 through all the staff misconduct
16 complaints for, say, the last two years,
17 would you come across one of those?  I'm
18 not certain.
19 BY MR. FAY:
20     Q   Does the OPR investigation file
21 recommend discipline, any specific sort of
22 discipline?
23     A   OPR gets a record back with the
24 recommendation from the department head.
25 So they have a record of the recommended

P. KRAMER

1
2 discipline; they're not the ones who
3 recommended the discipline, though.
4     Q   So once OPR presents its
5 findings, it's up to a different
6 department to actually implement
7 discipline, if warranted?
8     A   Well, that department actually
9 has the ability to send it back to OPR to
10 do some additional investigations, or they
11 can disagree with the finding.  But if
12 they agree with the finding, yes, then
13 they recommend the discipline, and they
14 let OPR know.  It's more for tracking
15 purposes, so OPR knows.
16     Q   So who, after the OPR file is
17 done, they send it out, who is the
18 ultimate decision maker of whether
19 discipline is implemented based on that
20 investigation?
21     A   So if the executive director of
22 the DOC says this is a 120-day suspension,
23 that then goes to employee discipline.  If
24 it's an officer -- officer, sergeant, or
25 lieutenant, and almost, let's say, 98

P. KRAMER

1
2 percent of the time that -- the union
3 representing that employee will file a
4 grievance, that grievance probably gets
5 two steps, and it might be resolved or
6 settled for a smaller suspension.  And if
7 not, it would then go to arbitration to
8 get the ultimate resolution.
9     Q   So if the executive director
10 receives a report, and the report says we
11 find an allegation regarding failure to
12 protect to be sustained, but the director
13 decides not to go forward with
14 disciplinary action, does OPR have any
15 recourse?
16     A   Yes.  OPR would -- OPR would
17 notify the executive level that, hey, we
18 sent this complaint off, and it came back
19 with a written reprimand or something real
20 small, something that was way out of
21 bounds.
22     Q   And would that change anything?
23     A   Well, once discipline's issued,
24 it's hard to increase the level.  So it
25 depends on where that got caught.

14 (Pages 50 - 53)

Page 54

P. KRAMER

1
2      Q    And I believe you touched on
3   this, but once a investigation is
4   considered sustained, the employee is
5   informed; correct?
6      A    The employee is informed when
7   they're -- well, the employee would be
8   informed if they were interviewed; right?
9   So if they come in for an interview,
10  they're entitled to a little bit of
11  information regarding what the interview
12  is about.  So they would then know that
13  they are under investigation.
14        When the file's completed and
15  the recommendation for suspension time is
16  given, then they are served with that
17  discipline saying, hey -- give us a
18  120-day suspension.
19     Q    And they can appeal that or
20  fight that?
21     A    They can grieve that.
22     Q    Grieve that.  And do they
23  usually have an attorney in that process?
24     A    So the attorney usually comes in
25  at the arbitration process.

Page 55

P. KRAMER

1
2      Q    And is that attorney from the
3   union?
4      A    Yes, or the union hires outside
5   counsel.
6      Q    What type of punishment would a
7   Cook County Jail staff member usually face
8   if an allegation of failure to protect was
9   found to be sustained?
10        MR. DEVORE:  Objection; form.
11        You can answer.
12        THE WITNESS:  If -- this is all
13     hypothetical, but if an officer was
14     intentionally allowing other detainees to
15     beat up another detainee, that's serious
16     discipline.  So that would be in the
17     more -- that would be in the higher
18     suspension range, if not a potential
19     termination, depending on the evidence.
20  BY MR. FAY:
21     Q    So that could result in just a
22  suspension, no termination?
23     A    Depending on the evidence, I
24  would say.
25     Q    And this is specifically

Page 56

P. KRAMER

1
2   regarding failure to protect, do
3   punishments ever result in criminal
4   prosecution?
5      A    I think we have had an officer
6   charged criminally for failure to protect.
7   I'd have to think about it, but I'm almost
8   sure.  I think it was in state court the
9   officer was charged.  I think -- I would
10  say it was about four or five years ago.
11     Q    And do you recall why that led
12  to prosecution versus suspension?
13     A    I think they had really good
14  evidence.  My recollection, and I could be
15  wrong, but my recollection was this
16  officer allowed another detainee into a
17  bullpen with the express, basically, the,
18  kind of -- well, it's terrible, but he
19  allowed the -- I think it was
20  she -- allowed the another detainee to go
21  into a bullpen to rough up another
22  detainee who had been insulting her, was
23  my recollection.
24     Q    And just so the record's clear,
25  once OPR sends its file to the executive

Page 57

P. KRAMER

1
2   director, and the executive director
3   decides what type of punishment is
4   appropriate, how are the final
5   disciplinary results documented?
6      A    So we have an entire employee
7   discipline unit that tracks all the
8   discipline for each and every employee.
9      Q    And is that separate from
10  the -- the employee discipline unit, is
11  that separate from the OPR office?
12     A    Yes.
13     Q    Do you know who runs that
14  office?
15     A    Her name is Joy Ortiz.
16     Q    And the employee discipline
17  office would have records of what type
18  of --
19     A    They would have -- they would
20  have -- if you looked up Peter Kramer,
21  they would have any and all discipline on
22  Peter Kramer.
23     Q    And would those records specify
24  why the discipline was being implemented?
25     A    Yes, they would say -- so

15 (Pages 54 - 57)

P. KRAMER

1 P. KRAMER
2 generally it would say written reprimand
3 attendance policy 3-day suspension
4 insubordination, 180 days reduced to 90
5 for something.
6    Q   So do you know if those records
7 would be electronic?
8    A   They -- they do have electronic
9 records.  I don't know that -- it's not
10 like you can click on each one and pull up
11 the -- the document.  So it's kind of
12 entered into a dashboard, if you will.
13    Q   Do you know how far the
14 electronic aspect of that goes back?
15    A   I don't.  The dashboards
16 probably came into probably five or six
17 years at least since we've been keeping
18 the dashboards.  But, you know, if there
19 were -- if you had an employee who's
20 worked here for 25 years and you wanted to
21 see what discipline that employee had
22 behind what employee discipline has, the
23 only place you could probably check would
24 be either OPR, which might have a copy of
25 an OPR complaint from 15 years ago, or his

P. KRAMER

1 P. KRAMER
2 payroll records might show records of
3 suspension.
4    Q   Do you know if I could search
5 those disciplinary records for all
6 instances of failure to protect?
7    A   I don't think it would be
8 classified like that, but I don't know.
9       MR. FAY:  Why don't we take just a
10 five-minute break.
11       THE VIDEOGRAPHER:  Okay.  Going off
12 the record; the time is 12:08 p.m.
13 Central.  This is the end of media unit 1.
14       (Off the record.)
15       THE VIDEOGRAPHER:  We are back on the
16 record; the time is 12:16 p.m. Central
17 Time.  This is the beginning of media unit
18 2.
19 BY MR. FAY:
20    Q   Welcome back, Mr. Kramer.  I
21 believe you testified that OPR files are
22 communicated to executive directors.  Is
23 that correct?
24    A   Yes.
25    Q   Do you know how they're

P. KRAMER

1 P. KRAMER
2 communicated?
3    A   I -- I know it's an electronic
4 version is sent to the executive director.
5    Q   But would that be by email by
6 chance?
7    A   I think it's a software system.
8 I don't -- I don't know the name of it.
9    Q   So would any OPR investigations
10 be done by email, or communications
11 regarding those investigations be done by
12 email?
13    A   I -- yeah, I think they do
14 communicate using email.
15    Q   Okay.  And I think you also
16 touched on this, but is the OPR process
17 generally the same if a civilian makes the
18 complaint rather than an inmate?
19    A   Yes.
20    Q   Would a civilian be informed
21 regarding the outcome of their complaint?
22    A   I'm pretty sure any complainant
23 is supposed to be told the results of
24 their complaint
25    Q   And civilian complaints would be

P. KRAMER

1 P. KRAMER
2 saved in presumably the same database as
3 complaints from inmates at OPR?
4    A   Yes.  I don't -- I don't know
5 how they're stored, but yes.
6    Q   And OPR files or the OPR
7 investigation reports would be saved in
8 the same place regardless of the source of
9 the complaint?
10    A   I think so.  Yes.
11    Q   And is the process for filing a
12 complaint regarding staff or potential
13 staff misconduct the same if an employee
14 files that complaint?
15    A   I think so.  Yes.  So most of
16 their complaints are probably from
17 employees.
18    Q   Could you extrapolate most of
19 the complaints are from employees?
20    A   Officer Jones is harassing
21 Officer Smith.
22    Q   Okay.  Do staff who file
23 misconduct complaints regarding other
24 staff face retribution?
25    A   No.

16 (Pages 58 - 61)

Page 62

P. KRAMER

1
2    Q   Are you aware of any methods the
3 Sheriff's Department employs to mitigate
4 that possibility?
5    A   We have a pretty -- a pretty
6 severe anti-retaliation policy.  So
7 regardless of the type of complaint, the
8 anti-retaliation is definitely in it.  I
9 would say that's the first one.  Two, a,
10 you know, a witness may be admonished
11 about that policy.
12   Q   And can employees file anonymous
13 complaints about other employees?
14   A   Yes.
15   Q   Would an anonymous complaint be
16 looked at in a different light than one
17 that was not anonymous?
18   A   I'd have to -- I'd have to get a
19 time frame, because for a while anonymous
20 complaints were not supposed to allowed in
21 Illinois.  But I would say no.  I would
22 say the complaints generally rise and fall
23 on the allegations and what can be proven.
24   Q   Do you know if OPR maintains any
25 records or analysis of trends in the

Page 63

P. KRAMER

1
2 complaints that they receive regarding
3 Cook County Jail staff misconduct?
4    A   I believe they do, but I'm not
5 100 percent certain.  I know they keep
6 statistics on the types of files they have
7 and investigations.  Like how long they
8 take, et cetera.
9    Q   Are you prepared to testify as
10 to what those statistics would say from
11 the time period of 2010 to 2019 regarding
12 allegations of failure to protect over
13 inmate phone usage?
14       MR. DEVORE:  Objection to form.
15       But you can go ahead.
16       THE WITNESS:  I don't think they have
17    statistics.  I don't -- I'm unaware of
18    statistics beyond the last couple years.
19    But I'm not prepared to -- I don't -- I'm
20    unaware of any -- I don't -- I'm not even
21    familiar with them, like what they reveal.
22 BY MR. FAY:
23   Q   Do you know if those statistics
24 would -- would you be able to look at them
25 by failure to protect?

Page 64

P. KRAMER

1
2    A   I don't --
3       MR. DEVORE:  Objection -- and
4 objection as to scope as well.  I believe
5 the relevant time frame has been defined
6 as 2010 to 2019, and he just testified as
7 the last couple of years, but sorry.
8       MR. FAY:  Okay.  I think I said 2010
9 to 2019 but fair.
10 BY MR. FAY:
11   Q   Does the OPR maintain any sort
12 of records or analysis of trends in OPR
13 investigative reports findings?
14       MR. DEVORE:  Objection as to form.
15       But you can answer, if you can.
16       THE WITNESS:  I don't know if that's
17    the purpose but my -- I -- I think you
18    could glean from them the number of
19    sustained versus not sustained.  I don't
20    know if that's the purpose for the
21    statistics.  So I don't -- I guess
22    you -- you said trends, and I don't know
23    if that's why there -- those statistics
24    are created.  But I think you could glean
25    from them, like, hey these are turning

Page 65

P. KRAMER

1
2    into be more and more not sustained or
3    more and more sustained.
4 BY MR. FAY:
5    Q   And with that would you be able
6 to break out those trends by type of
7 allegation?
8       MR. DEVORE:  Objection; form.
9       You can answer.
10       THE WITNESS:  I don't know.
11 BY MR. FAY:
12   Q   Are you prepared to testify as
13 to how many complaints were filed with the
14 OPR from 2010 to 2019 regarding
15 allegations that Cook County Jail staff
16 failed to protect inmates from violence
17 over the inmate phone system?
18       MR. DEVORE:  Objection; form.
19       But you can answer.
20       THE WITNESS:  No.
21 BY MR. FAY:
22   Q   If I wanted to know this
23 information, do you know how I could go
24 about getting it?
25   A   Depending on how far back the

17 (Pages 62 - 65)

Page 66

P. KRAMER

1
2 electronic records go, I would start with
3 those and I -- you'd probably have to go
4 through each and every OPR file from the
5 Department of Corrections. Actually, I
6 don't know if it's -- yeah, it would
7 probably be limited to the Department of
8 Corrections for like -- the -- because we
9 have other departments, too.
10       I'd start with Department of
11 Corrections, complaints against staff.
12 And then you'd have to probably go through
13 them one by one to see what they are. I
14 don't -- I mean, that's the way to be most
15 thorough about it, I guess. I don't know
16 how far back you'd be able to go
17 electronically. And then you'd probably
18 have to go into the paper.
19    Q   Do you know who at the OPR
20 office would be closest to that data, or
21 have most familiarity with that data?
22    A   I -- I have two there's two
23 administrative assistants who I would
24 guess, but I'm not sure.
25    Q   Do you know their names?

Page 67

P. KRAMER

1
2    A   Lisa Schmilky [ph] is one -- and
3 what's the other one? -- Cindy Kirk [ph]
4 is the other one.
5    Q   And are you prepared to testify
6 today as to how many investigative reports
7 OPR conducted from 2010 to 2019 into
8 whether Cook County Jail staff failed to
9 protect inmates from violence over use of
10 the inmate phone system?
11       MR. DEVORE: Objection; form;
12    incomplete hypothetical.
13    But you can answer.
14    THE WITNESS: No.
15 BY MR. FAY:
16    Q   And more specifically, are you
17 prepared to testify as to how many OPR
18 investigative reports concluded that Cook
19 County Jail staff did in fact fail to
20 protect inmates from violence over use of
21 the inmate phone system?
22    A   No.
23    Q   If I wanted to know this
24 information, how would I go about that?
25       MR. DEVORE: Objection; form.

Page 68

P. KRAMER

1
2       But you can answer.
3       THE WITNESS: I -- it'd be the
4    process I just described earlier.
5 BY MR. FAY:
6    Q   Okay. And are you be prepared
7 to testify today as to how many instances
8 of disciplinary action were taken from
9 2010 to 2019 against Cook County Jail
10 staff for failure to protect inmates from
11 violence over use of the inmate phone
12 system?
13    A   No.
14    Q   Are you prepared today to
15 testify as to any instances of
16 disciplinary action that were taken from
17 2010 to 2019 against Cook County Jail
18 staff for failure to protect inmates from
19 violence over use of the inmate phone
20 system?
21       MR. DEVORE: Objection; form. I
22    think he did testify regarding some.
23       But you could answer.
24       THE WITNESS: No, not about the
25    phones.

Page 69

P. KRAMER

1
2       MR. FAY: I'm going to request
3 another five-minute break. We're about
4 done. And after that, we can wrap this
5 up. Thank you.
6       THE VIDEOGRAPHER: Okay. Going off
7 the record; the time is 12:28 p.m. Central
8 Time
9    (Off the record.)
10       THE VIDEOGRAPHER: We're back on the
11 record; the time is 12:35 p.m. Central
12 Time.
13       MR. FAY: I have no further
14 questions, Mr. Kramer. I just want to
15 thank you for your time today, and thank
16 everyone for their time.
17       MR. DEVORE: Thanks. We'll reserve.
18       THE VIDEOGRAPHER: All right --
19       THE REPORTER: I just have one
20 question for Counselor DeVore. Did you
21 need a copy of today's transcript?
22       MR. DEVORE: Are they ordering one?
23       THE REPORTER: I believe they are
24 ordering one. You're going to get one. I
25 just wanted to make sure you wanted me to

18 (Pages 66 - 69)

Page 70

```
1              P. KRAMER
2    send one over to you as well.
3         MR. DEVORE:  Yep.
4         THE REPORTER:  Okay.  Great.  Thank
5    you very much.
6         THE VIDEOGRAPHER:  Okay.  We are off
7    the record at 12:36 p.m. Central Time, and
8    this concludes today's testimony given by
9    Peter Kramer.  The total number of media
10   used was two, and will be retained by
11   Veritext.
12        (Whereupon, at 12:36 p.m., the
13        proceeding was concluded.)
14   _____
15            PETER KRAMER
16
17   Subscribed and sworn to before me
18   this ___ day of _____, 2025.
19
20   _____
21         NOTARY PUBLIC
22
23
24
25
```

Page 71

```
1         CERTIFICATE OF DEPOSITION OFFICER
2         I, JAZ R. RAMOS, the officer before whom the
3    foregoing proceedings were taken, do hereby certify that
4    any witness(es) in the foregoing proceedings, prior to
5    testifying, were duly sworn; that the proceedings were
6    recorded by me and thereafter reduced to typewriting by a
7    qualified transcriptionist; that said digital audio
8    recording of said proceedings are a true and accurate
9    record to the best of my knowledge, skills, and ability;
10   that I am neither counsel for, related to, nor employed by
11   any of the parties to the action in which this was taken;
12   and, further, that I am not a relative or employee of any
13   counsel or attorney employed by the parties hereto, nor
14   financially or ..................... utcome of this
15   action.
16
17        JAZ R. RAMOS
18        Notary Public in and for the
19        State of New York
20
21
22
23
24
25
```

Page 72

```
1         CERTIFICATE OF TRANSCRIBER
2         I, H. JAMES FOY, do hereby certify that this
3    transcript was prepared from the digital audio recording of
4    the foregoing proceeding, that said transcript is a true
5    and accurate record of the proceedings to the best of my
6    knowledge, skills, and ability; that I am neither counsel
7    for, related to, nor employed by any of the parties to the
8    action in which this was taken; and, further, that I am not
9    a relative or employee of any counsel or attorney employed
10   by the parties hereto, nor financially or otherwise
11   interested in the outcome of this action.
12
13
14        H. JAMES FOY
15
16
17
18
19
20
21
22
23
24
25
```

Page 73

```
1                    ERRATA SHEET
                VERITEXT/NEW YORK REPORTING, LLC
2
     CASE NAME: Donald Henneberg v. Tom Dart, Et Al
3    DATE OF DEPOSITION: 4/8/2025
     WITNESSES' NAME: Peter Kramer
4
5    PAGE  LINE (S)     CHANGE        REASON
6    _____
7    _____
8    _____
9    _____
10   _____
11   _____
12   _____
13   _____
14   _____
15   _____
16   _____
17   _____
18   _____
19   _____
20   _____
21                 Peter Kramer
22   SUBSCRIBED AND SWORN TO BEFORE ME
     THIS ____ DAY OF _____, 20__.
23
24   _____
25   (NOTARY PUBLIC)          MY COMMISSION EXPIRES:
```

19 (Pages 70 - 73)

| & | | | |
|---|---|---|---|
| **&**   2:5 6:15,19 | 67:7 68:9,17 | **60606**   2:19 | **act**   38:17 |

**&**   2:5 6:15,19

**0**

**07380**   1:7

**1**

**1**   59:13
**100**   63:5
**101**   2:6
**10178**   2:7
**11**   11:14
**120**   52:22 54:18
**12:04**   1:18 5:8
**12:08**   59:12
**12:16**   59:16
**12:28**   69:7
**12:35**   69:11
**12:36**   70:7,12
**15**   58:25
**18**   43:16
**180**   47:3 58:4
**1:19**   1:7

**2**

**2**   59:18
**20**   14:3 17:8
  73:22
**2000s**   34:19
**2006**   20:13
  21:20
**2008**   20:13
**2010**   22:16,21
  39:7,9 63:11
  64:6,8 65:14

67:7 68:9,17
**2012**   39:13
**2017**   39:15 50:7
**2019**   22:16
  63:11 64:6,9
  65:14 67:7
  68:9,17
**2025**   1:17 5:12
  70:18
**212**   2:10
**230**   2:18,18
**25**   58:20
**26557**   72:13
**28485**   71:16
**29**   26:5

**3**

**3**   11:8 58:3
**30**   1:14 11:13
  15:15
**300-4479**   2:22
**3056**   1:22 5:13
**309-6000**   2:10
**312**   2:22

**4**

**4/8/2025**   73:3
**48**   37:16

**5**

**5,000**   40:15

**6**

**6**   1:14 11:8,13
  15:15

**60606**   2:19
**60608**   1:23

**7**

**7**   4:3
**7299425**   1:25

**8**

**8**   1:17 5:12

**9**

**90**   58:4
**98**   52:25

**a**

**ability**   49:13
  52:9 71:9 72:6
**able**   40:7,8
  63:24 65:5
  66:16
**absent**   5:19
**acceptable**
  48:23 49:3
**accepts**   27:22
**accountability**
  21:2
**accurate**   40:24
  71:8 72:5
**accurately**
  44:24
**accused**   42:23
  45:24 46:12
**acknowledge**
  27:19
**acknowledg...**
  5:16

**act**   38:17
**action**   11:10,15
  12:10 26:4
  27:19 53:14
  68:8,16 71:11
  71:15 72:8,11
**actual**   26:24
**actually**   31:6
  35:7 52:6,8
  66:5
**additional**   42:5
  43:8 52:10
**additionally**
  5:19
**address**   25:17
  44:13
**administer**
  5:16
**administrative**
  66:23
**admonished**
  62:10
**advisement**
  46:5
**affairs**   17:2
  20:17
**afternoon**   5:4
**agencies**   24:16
**aggressively**
  45:10
**ago**   11:25 14:24
  23:16,21 36:13
  56:10 58:25

**[agree - benefit]**                                                Page 2

| | | | b |
|---|---|---|---|

**agree** 5:17,22 9:2 36:3 52:12
**agreements** 18:13 43:18
**ahead** 39:11 63:15
**al** 1:11 5:11 73:2
**allegation** 26:10,12,19 32:13 50:18 51:3 53:11 55:8 65:7
**allegations** 13:9 26:8 28:18 34:15 44:25 51:7 62:23 63:12 65:15
**alleging** 41:11
**allowed** 28:2 38:3 56:16,19 56:20 62:20
**allowing** 55:14
**amend** 20:2
**amended** 36:14
**amount** 38:21
**analysis** 12:22 62:25 64:12
**anonymous** 38:4,6,9 62:12 62:15,17,19
**answer** 8:17 9:20 10:5,20,21 27:9 29:2,15

32:2 36:21 37:15,24 41:3 45:3 47:23 48:17,17,23 51:12 55:11 64:15 65:9,19 67:13 68:2,23
**answered** 37:23
**anti** 62:6,8
**anybody** 28:4
**anytime** 24:20 45:23
**apparently** 32:20
**appeal** 36:18 54:19
**applicable** 6:2
**appreciate** 8:25 30:8
**appropriate** 57:4
**approximately** 14:3 15:18,21 17:5,8 20:13
**april** 1:17 5:12
**arbitration** 53:7 54:25
**arbitrations** 19:9
**arias** 1:10 2:14
**asked** 22:21 37:22

**aspect** 58:14
**assign** 31:9,10
**assigned** 5:6 42:14
**assignments** 42:15
**assistant** 17:21 18:16 32:16 43:9
**assistants** 66:23
**assisting** 18:2
**assume** 8:18
**attempted** 13:10
**attendance** 6:9 58:3
**attorney** 10:17 10:20 54:23,24 55:2 71:13 72:9
**attorneys** 13:16 13:20 14:5
**audio** 71:7 72:3
**authority** 23:8
**authorized** 5:15
**avenue** 1:22 2:6 5:13
**avoid** 8:5 37:3
**aware** 24:15 62:2

**b** 1:14 4:5 11:8 11:13 15:15
**b.a.** 15:11
**back** 18:16 30:21,22 34:19 39:3 50:5 51:23 52:9 53:18 58:14 59:15,20 65:25 66:16 69:10
**bargain** 19:18
**bargaining** 18:12 19:20 20:3 43:18
**based** 12:23 35:8,14 39:10 52:19
**basically** 43:16 47:9 56:17
**beat** 55:15
**beating** 37:7
**beginning** 59:17
**behalf** 2:2,12 6:23,25
**believe** 30:13 36:6 49:21 54:2 59:21 63:4 64:4 69:23
**benefit** 26:13

**best**  9:3,6 22:20
  71:9 72:5
**better**  48:7
**beyond**  16:4
  63:18
**bit**  19:13 30:3
  54:10
**black**  23:18
**blown**  31:11,15
  31:18 35:21
**bockius**  2:5
  6:16,19
**booked**  44:15
**bound**  38:16
**bounds**  53:21
**bowery**  7:4
**bowry**  3:3 7:4
**brady**  46:5
**break**  10:6
  59:10 65:6
  69:3
**breaks**  10:2,13
**broadly**  22:9
**bullpen**  56:17
  56:21

**c**

**c**  2:1 3:1
**california**  1:22
  5:13 48:20
**call**  8:6 13:20
  31:3 45:24
  49:21

**called**  7:17
  21:11
**calling**  34:10
**calls**  51:10
**canceled**  14:25
**captured**  42:18
**case**  1:6 13:18
  16:16 48:14
  73:2
**catches**  24:10
**categories**
  50:12
**categorized**
  50:21
**caught**  53:25
**causes**  49:7
**ccdoc**  21:6
**center**  1:21
**central**  59:13
  59:16 69:7,11
  70:7
**certain**  10:17
  36:20 40:9
  47:22,23 51:18
  63:5
**certificate**  71:1
  72:1
**certifications**
  15:10
**certified**  5:22
  44:12
**certify**  71:3
  72:2

**cetera**  47:14
  63:8
**chance**  60:6
**change**  28:20
  36:7 53:22
  73:5
**changed**  36:12
**changes**  20:5
**characterizati...**
  35:12
**charged**  56:6,9
**check**  40:10,20
  42:14,16,17,19
  58:23
**checking**  42:13
**chicago**  1:23
  2:19 5:13
  24:24
**choice**  46:2
**cindy**  67:3
**circumstances**
  26:8 29:19
**civic**  1:20
**civilian**  60:17
  60:20,25
**civilians**  28:10
  28:24
**claim**  16:7
**claims**  16:2,6,9
  16:14 35:9,13
**clarify**  33:7
**classified**  30:24
  59:8

**clear**  14:15
  56:24
**click**  58:10
**closed**  35:25
**closest**  66:20
**code**  50:15
**coded**  50:12
**collective**  18:12
  19:20 43:18
**collectively**
  19:17
**combined**
  20:19,22 21:19
**come**  24:21
  28:17 29:9
  40:23 49:7
  51:17 54:9
**comes**  42:3
  54:24
**commission**
  73:25
**common**  34:19
  35:11
**communicate**
  60:14
**communicated**
  59:22 60:2
**communicati...**
  11:23 60:10
**community**
  21:13
**compel**  49:14
  49:17

**[compelled - county]**

| | | | |
|---|---|---|---|
| **compelled** | 40:25 41:11 | **constitute** 6:6 | **corporate** 1:14 |
| 45:25 | 49:25 51:16 | **cont'd** 3:1 | **correct** 11:10 |
| **competently** | 60:25 61:3,16 | **contact** 32:10 | 11:20 12:19,20 |
| 45:18 | 61:19,23 62:13 | 42:6 44:14,16 | 13:4 19:21 |
| **complainant** | 62:20,22 63:2 | 48:21 49:6 | 27:24 29:6 |
| 36:16 42:22 | 65:13 66:11 | **contain** 51:2 | 39:21 44:21 |
| 44:16 60:22 | **completed** | **context** 8:23 | 54:5 59:23 |
| **complainants** | 54:14 | **continuing** | **correctional** |
| 42:6 | **completely** | 10:12 | 1:9 2:13 26:20 |
| **complaint** | 14:15 35:17 | **contract** 19:15 | **corrections** |
| 14:10 25:6,10 | **comprehensive** | 19:18 | 21:7,13 46:24 |
| 25:15,17 27:3,8 | 47:15,20 | **control** 26:22 | 66:5,8,11 |
| 27:18 28:3,5,8 | **concluded** | 30:16 31:14 | **corrective** |
| 28:10,13,14 | 46:17 67:18 | **controlling** | 27:19 |
| 29:20,24 30:11 | 70:13 | 26:14 | **correspond** |
| 30:24 31:12 | **concludes** 70:8 | **conversation** | 27:20 |
| 33:21,25 34:7 | **conclusion** 44:9 | 14:2 | **counsel** 7:21 |
| 34:12,13 35:18 | **conclusions** | **conversations** | 11:23 16:25 |
| 35:23 36:9,11 | 12:23 | 14:6 | 17:21 18:2,9,10 |
| 36:15 37:10,20 | **conduct** 25:11 | **cook** 1:10,15 | 18:17,18,21 |
| 38:7,9 40:4,23 | 26:7 32:11 | 2:14 11:9,16 | 55:5 71:10,13 |
| 41:5,19 42:3,4 | 42:24 | 12:10 16:22 | 72:6,9 |
| 44:7 46:17,19 | **conducted** | 17:7,10,18,19 | **counselor** 6:12 |
| 47:12 53:18 | 44:18 67:7 | 21:23 22:24 | 69:20 |
| 58:25 60:18,21 | **conducting** | 24:16 25:5,6 | **county** 1:10,15 |
| 60:24 61:9,12 | 45:18 | 27:23 30:12 | 1:20 2:14 11:9 |
| 61:14 62:7,15 | **confidential** | 36:23 38:12 | 11:16 12:10 |
| **complaints** | 37:6 | 45:21 46:8,23 | 16:22 17:7,10 |
| 25:19,20 27:23 | **confusion** 8:5 | 50:18 55:7 | 17:18,19 21:23 |
| 28:16,22,23 | **consent** 21:22 | 63:3 65:15 | 22:24 24:17 |
| 29:6,9,13 30:4 | 22:2,5,7 | 67:8,18 68:9,17 | 25:5,7 27:23 |
| 33:14,17,23 | **consider** 48:5 | **copy** 58:24 | 30:12 36:24 |
| 36:24 38:5,12 | **considered** | 69:21 | 38:12 45:21 |
| 39:24 40:9,18 | 26:23 54:4 | | 46:8,23 50:18 |

**[county - different]** Page 5

55:7 63:3
65:15 67:8,19
68:9,17
**couple** 14:24
36:13 40:10,12
63:18 64:7
**court** 1:1 5:5
8:21 9:10
10:11 21:7
56:8
**created** 22:4,6
64:24
**creates** 23:24
**creating** 19:24
**creation** 21:22
**criminal** 56:3
**criminally** 56:6
**crw** 39:18
**currently** 16:21
**cursory** 31:9
**cv** 1:7

**d**

**d** 4:1
**daf** 26:3
**dart** 1:7,15
2:12 5:11
11:15 15:22
73:2
**dashboard**
58:12
**dashboards**
58:15,18

**data** 12:8,13,22
12:24 13:3
14:16 38:18
66:20,21
**database** 49:25
51:6 61:2
**date** 1:17 73:3
**day** 18:3,3
52:22 54:18
58:3 70:18
73:22
**days** 11:25 26:5
47:3 58:4
**dealt** 17:24
**death** 24:20
**deb** 32:21
**decide** 31:17
35:20
**decided** 27:8
33:19
**decides** 53:13
57:3
**deciding** 27:10
**decision** 27:2
31:23 52:18
**decree** 21:22
22:2,5,7
**default** 18:8
**defendants** 1:8
1:12 2:12,13
6:23 7:2
**defense** 18:3
**defined** 64:5

**definitely** 21:25
62:8
**degree** 15:7
**degrees** 15:10
**delays** 49:8
**denying** 41:6
**dep** 14:24
**department**
11:16 17:7
21:6,9 22:24
23:3 24:3,13
40:21 44:21
46:22,24 51:24
52:6,8 62:3
66:5,7,10
**departments**
20:17,18 25:13
66:9
**depending**
19:14 26:7
27:17 28:14,18
38:22 39:19
43:14 55:19,23
65:25
**depends** 49:9
53:25
**deponent** 8:3
**deposed** 15:14
**deposition** 1:14
5:9 6:4 8:22
9:23 10:3,13
13:15 14:9,13
14:17,20 71:1
73:3

**depositions** 8:2
8:10
**described** 68:4
**description** 4:6
**designed** 37:3
**designee** 46:25
**destroyed**
38:24
**detainee** 26:17
36:6,9 37:7,8
55:15 56:16,20
56:22
**detainees** 13:6
13:8 34:23
55:14
**determined**
35:19 41:19
**determines**
41:23
**devore** 2:15,17
6:22,22,22
28:25 29:14
31:24 37:13,22
41:2 45:2
51:10 55:10
63:14 64:3,14
65:8,18 67:11
67:25 68:21
69:17,20,22
70:3
**devoreraduns...**
2:20,21
**different** 17:9
20:17 28:13,16

**[different - executive]**

| | | e | 62:13 |
|---|---|---|---|
| 40:22 45:17 | **disciplined** | | **employment** |
| 50:11 52:5 | 46:14 | **e** 2:1,1,15 3:1,1 | 16:15 |
| 62:16 | **discuss** 12:8,16 | 4:1,5 | **employs** 62:3 |
| **differently** | 12:22 20:8 | **earlier** 68:4 | **enforcement** |
| 50:14 | **discussed** 22:2 | **easier** 8:25 | 11:17 |
| **digital** 39:14 | **dispute** 11:25 | **education** 15:4 | **ensure** 45:13 |
| 71:7 72:3 | **district** 1:1,2 | **eeoc** 40:20 | 45:20 |
| **director** 23:15 | **division** 25:17 | **either** 40:4 | **ensuring** 11:18 |
| 24:2 32:16,16 | 41:17 | 58:24 | **entered** 58:12 |
| 36:2 43:7,10,11 | **divisional** 26:2 | **electronic** | **entire** 12:5 57:6 |
| 46:22,25 47:8 | **divisions** 42:16 | 21:12 38:19 | **entitled** 54:10 |
| 52:21 53:9,12 | **doc** 44:15 52:22 | 39:4,8,15,17 | **errata** 73:1 |
| 57:2,2 60:4 | **doctor** 15:5 | 50:4,10 51:6 | **es** 71:4 |
| **director's** | **document** | 58:7,8,14 60:3 | **especially** 8:23 |
| 34:11 | 58:11 | 66:2 | **esquire** 2:3,4 |
| **directors** 27:5 | **documented** | **electronically** | 2:15,16 |
| 27:16 31:20 | 57:5 | 47:10 66:17 | **et** 1:11 5:11 |
| 32:14,17 59:22 | **documents** | **email** 60:5,10 | 47:14 63:8 |
| **disagree** 36:3 | 14:8 42:8 | 60:12,14 | 73:2 |
| 52:11 | 47:14 | **employed** 17:6 | **evidence** 31:21 |
| **disciplinary** | **doe** 1:8 2:13 | 71:10,13 72:7,9 | 47:16 49:10 |
| 11:14 12:6,9,18 | **doing** 20:24 | **employee** 18:13 | 55:19,23 56:14 |
| 19:8 26:4 | **doj** 22:3 | 19:8 22:12 | **evidentiary** 6:3 |
| 53:14 57:5 | **donald** 1:4 2:2 | 45:25 52:23 | **examination** |
| 59:5 68:8,16 | 5:10 6:16,20 | 53:3 54:4,6,7 | 4:2 7:23 |
| **discipline** 18:13 | 73:2 | 57:6,8,10,16 | **examined** 7:20 |
| 19:9 47:2 | **downstate** | 58:19,21,22 | **example** 37:8 |
| 51:21,22 52:2,3 | 44:11 | 61:13 71:12 | **excessive** 16:7 |
| 52:7,13,19,23 | **due** 39:2 | 72:9 | **executive** 23:14 |
| 54:17 55:16 | **duly** 7:18 71:5 | **employees** | 24:2 27:15 |
| 57:7,8,10,16,21 | **duties** 17:23 | 11:15 28:7,8,24 | 32:15,16 34:11 |
| 57:24 58:21,22 | 21:25 | 40:15 45:21 | 43:10,10 46:22 |
| **discipline's** | **duty** 42:17 | 61:17,19 62:12 | 46:25 47:8 |
| 53:23 | | | |

52:21 53:9,17
56:25 57:2
59:22 60:4
**existence** 12:17
12:18
**exonerated**
41:24
**experience** 34:6
35:14
**expires** 73:25
**express** 56:17
**external** 9:21
**extrapolate**
19:12 37:4
61:18

**f**

**face** 36:22,23
44:23 55:7
61:24
**fact** 67:19
**facts** 51:3
**fail** 67:19
**failed** 65:16
67:8
**failing** 12:11
25:7 26:20
30:14,20 34:2
50:19
**failure** 13:9
30:24 34:15
35:10,13 41:12
50:21 51:7
53:11 55:8

56:2,6 59:6
63:12,25 68:10
68:18
**fair** 8:15,19 9:7
9:24 10:7,14,22
16:20 18:19,22
33:16 48:2
50:8 64:9
**fall** 62:22
**familiar** 22:19
44:3 63:21
**familiarity**
66:21
**far** 39:3 58:13
65:25 66:16
**fay** 2:3 4:3 6:13
6:14,14 7:24
29:4,17 30:13
32:6,11 33:13
37:17 38:2
41:9 45:6
51:19 55:20
59:9,19 63:22
64:8,10 65:4,11
65:21 67:15
68:5 69:2,13
**faye** 32:12
**federal** 21:23
**feds** 25:2
**fight** 54:20
**file** 30:18 33:25
36:9 38:4
47:10,15,25
48:3,18,22,25

49:2 50:17
51:2,20 52:16
53:3 56:25
61:22 62:12
66:4
**file's** 54:14
**filed** 36:15
37:10,20 47:6
65:13
**files** 37:8 49:21
49:23 50:4,12
51:6 59:21
61:6,14 63:6
**filing** 36:24
61:11
**final** 47:5 57:4
**finally** 18:17
**financially**
71:14 72:10
**find** 42:10
53:11
**finding** 52:11
52:12
**findings** 52:5
64:13
**finish** 9:4,7
**firm** 6:15,19
**first** 7:17 8:3,4
17:17 22:18
62:9
**five** 35:3 38:23
50:6 56:10
58:16 59:10
69:3

**follow** 47:23
**follows** 7:20
**force** 16:7 49:7
**foregoing** 71:3
71:4 72:4
**form** 26:4
28:17,25 29:10
29:14,23 31:24
37:13 39:8
40:19 41:2
45:2 50:4
55:10 63:14
64:14 65:8,18
67:11,25 68:21
**formal** 36:9,11
**formed** 20:12
20:15
**forward** 53:13
**forwarded**
24:11
**found** 39:25
46:13,17 55:9
**founded** 40:4
41:20,23 46:18
**four** 17:12 18:7
20:16 21:4
23:16,20 32:17
56:10
**fourth** 18:20
**foy** 72:2,14
**frame** 37:14
62:19 64:5
**frequently**
19:10 40:17

**full** 7:7 31:11
  31:15,18 35:21
**further** 25:25
  35:25 69:13
  71:12 72:8

**g**

**garrity** 46:4
**gather** 42:7
**general** 17:21
  17:22 18:9,10
  18:17,18 43:12
**general's** 21:15
**generally** 22:13
  36:15 38:20
  48:10 49:5
  58:2 60:17
  62:22
**generated** 30:4
**gestures** 9:11
**getting** 31:15
  39:14 65:24
**give** 49:11,17
  54:17
**given** 44:5 46:3
  54:16 70:8
**glean** 64:18,24
**go** 8:10 10:6
  30:22,25 35:21
  38:20 39:11,18
  43:24 46:21
  53:7,13 56:20
  63:15 65:23
  66:2,3,12,16,18

67:24
**goal** 47:18
**goes** 26:10
  30:21 52:23
  58:14
**going** 6:12 41:8
  45:23 46:6
  49:10 50:5
  59:11 69:2,6,24
**good** 5:4 6:14
  7:25 18:7
  20:24 56:13
**government**
  1:20 21:24
**great** 9:23 70:4
**grievance**
  29:10 30:18,19
  37:5,9 53:4,4
**grievances**
  28:17 39:17,19
  40:19
**grieve** 54:21,22
**ground** 8:11
**groups** 21:17
**guard** 34:2
**guess** 28:19
  32:3 49:8
  64:21 66:15,24
**guy** 14:24
  31:13
**guyette** 2:4
  6:18,18

**h**

**h** 4:5 72:2,14
**hand** 7:14
**handle** 19:5
  21:10 22:11,11
  24:17 25:25
**handled** 41:16
**handwritten**
  39:18
**happen** 34:6
**happens** 35:22
  44:6 45:14
  46:18
**harassing**
  61:20
**hard** 53:24
**head** 51:24
**heard** 48:11
**hearing** 7:11
**henneberg** 1:4
  2:2 5:11 6:17
  6:21 73:2
**hereto** 71:13
  72:10
**hey** 34:11 53:17
  54:17 64:25
**higher** 55:17
**highest** 15:3
  23:8
**hired** 18:17
**hires** 55:4
**hopefully** 47:17

**human** 40:21
**hypothetical**
  27:4 31:8,25
  33:20 42:12
  46:23 55:13
  67:12
**hypothetically**
  26:14

**i**

**iad** 21:7,8,10
  21:14
**idea** 35:5 37:9
**identify** 6:9
**il** 1:23 2:19
**illinois** 1:11
  2:14 5:14
  36:10 38:16
  40:21 62:21
**impaired** 10:25
**implement** 52:6
**implemented**
  52:19 57:24
**important** 9:20
**include** 39:24
**includes** 12:6
  47:11,16
**including** 39:24
**incomplete**
  31:25 48:3,5,13
  67:12
**incorporated**
  22:18

[increase - john.guyette]                                                    Page 9

increase  53:24
individual
    23:20
information
    29:22 30:5
    42:5 54:11
    65:23 67:24
informed  36:4
    37:20 54:5,6,8
    60:20
injury  26:17
inmate  11:17
    25:5,8,19,20
    26:21,21 28:16
    30:11,12,13,15
    30:22 32:10,11
    36:4,19 41:12
    44:7,7 50:19,20
    51:9 60:18
    63:13 65:17
    67:10,21 68:11
    68:19
inmates  11:19
    12:11 13:10,13
    28:5,22 29:7,9
    31:12 36:22,23
    37:11 38:3
    51:8 61:3
    65:16 67:9,20
    68:10,18
input  9:21
inquiry  34:9
inspector  21:14

inspectors
    21:12
instances  59:6
    68:7,15
instructs  10:21
insubordinati...
    58:4
insulting  56:22
intended  5:25
intentionally
    55:14
interact  18:23
interacted
    48:12
interaction
    19:2
interested
    71:14 72:11
interim  23:17
internal  20:17
    22:12
interrogation
    43:25
interview  32:11
    42:22,23 45:24
    47:22 49:3
    54:9,11
interviewed
    46:3 48:15,19
    54:8
investigate  27:3
    29:18,21 30:7
    36:11 44:25
    45:11

investigated
    25:2 26:16,18
investigates
    24:13
investigating
    24:5,8,25
investigation
    24:22 25:11,15
    26:7 31:11,16
    31:19 35:22
    36:2 41:20,22
    42:2,25 43:13
    44:9,17 46:16
    47:13 48:7
    49:8,15,20
    51:20 52:20
    54:3,13 61:7
investigations
    21:11 22:12
    24:18 45:19,22
    46:10 48:9,12
    52:10 60:9,11
    63:7
investigative
    20:19 47:5
    64:13 67:6,18
investigator
    31:10 35:24
investigators
    19:4,7 32:18
    43:3,22 44:10
    44:20,23
involve  20:2

involved  19:7
    19:23 24:5
involves  19:9
involving  15:24
    16:9
ish  21:20 39:13
    50:6
issue  26:3
issued  53:23
it'd  68:3

j

jail  12:10 17:18
    24:21 25:6,7
    27:23 30:12
    36:24 38:12
    44:8 45:21
    46:8 49:13
    50:18 55:7
    63:3 65:15
    67:8,19 68:9,17
james  72:2,14
jason  2:15 6:22
jaz  1:24 5:4
    71:2,17
jdevore  2:20
jennifer  23:18
jjohnson  2:21
job  1:25 16:24
    20:24 46:7
john  1:8 2:4,13
    6:18 15:8
john.guyette
    2:9

**johnson** 2:16
6:25,25
**jones** 61:20
**jorge** 1:9 2:14
**jorie** 2:16 6:25
**joy** 57:15
**juris** 15:5

**k**

**keep** 26:6 38:11
49:22 63:5
**keeping** 58:17
**kept** 38:21
**kind** 18:8 21:16
23:17 26:5
31:8 34:12
43:16 47:24
48:15 49:9
56:18 58:11
**kirk** 67:3
**knew** 22:22
**know** 8:13 18:9
20:11,15,21
21:4,18 22:17
23:7,11,19,23
27:16,20 28:15
28:18,21 29:3
29:12 32:8,19
34:3 35:7
36:13 37:11
39:3,6 40:2,6
40:15 41:18
42:8 43:25
44:6,13 47:11

47:21 48:16
50:2,3,11,13,15
50:23 51:13
52:14 54:12
57:13 58:6,9,13
58:18 59:4,8,25
60:3,8 61:4
62:10,24 63:5
63:23 64:16,20
64:22 65:10,22
65:23 66:6,15
66:19,25 67:23
**knowledge**
71:9 72:6
**known** 44:13
**knows** 52:15
**kramer** 1:16
5:1,10 6:1 7:1
7:6,9,9,13,16
7:25 8:1,6 9:1
10:1 11:1 12:1
13:1 14:1 15:1
16:1 17:1 18:1
19:1 20:1 21:1
22:1 23:1 24:1
25:1 26:1 27:1
28:1 29:1 30:1
31:1 32:1 33:1
34:1 35:1 36:1
37:1 38:1 39:1
40:1 41:1 42:1
43:1 44:1 45:1
46:1 47:1 48:1
48:18,19 49:1

50:1 51:1 52:1
53:1 54:1 55:1
56:1 57:1,20,22
58:1 59:1,20
60:1 61:1 62:1
63:1 64:1 65:1
66:1 67:1 68:1
69:1,14 70:1,9
70:15 73:3,21

**l**

**labor** 16:25
**law** 6:15 15:7,8
36:8,10,12
**laws** 6:3
**lawsuits** 16:9
**lawyers** 14:23
**leave** 48:20
49:4,6,12
**leaves** 49:13
**led** 56:11
**lee** 3:3 7:4
**left** 23:15,20
**legal** 17:14 18:4
**lesuzzo** 23:22
**level** 15:3 24:16
26:2 47:2
53:17,24
**levels** 45:17
**lewis** 2:5 6:15
6:19
**lieutenant**
52:25

**light** 62:16
**likely** 34:8
**limitations**
43:17
**limited** 66:7
**line** 73:5
**linger** 43:20
**lisa** 67:2
**listen** 42:21
**litigation** 17:25
18:3,12 35:9,15
39:2 40:20
**little** 19:13,25
30:3 34:20
54:10
**llc** 2:17 73:1
**llp** 2:5 6:19
**local** 24:16
**located** 5:12
**location** 1:19
**long** 13:25 17:3
17:6 43:12,20
63:7
**longer** 43:21
**look** 19:2 38:8
42:2 63:24
**looked** 57:20
62:16
**looking** 31:22
31:22 41:11
42:11
**looks** 28:21
**lost** 20:25

**[lot - offer]**

**lot** 24:10

**m**

**m** 2:3
**made** 18:10
  27:18 40:9
**mail** 44:12
**main** 24:13
**maintain** 49:19
  64:11
**maintains**
  62:24
**make** 8:24 9:6
  20:23,25 28:2,5
  28:7,10 33:21
  33:23 45:17
  69:25
**maker** 52:18
**makes** 25:6
  27:2 41:5
  60:17
**management**
  19:5
**mandatory**
  20:3
**manner** 6:4
**marked** 4:7
**marshall** 15:8
**materials** 42:7
**matter** 5:10
**mean** 13:8
  24:24 51:14
  66:14

**means** 6:5
  10:10 19:13
**media** 59:13,17
  70:9
**medical** 1:8
  2:13
**meet** 13:14
**member** 49:12
  49:16 55:7
**memory** 10:25
**met** 13:16
  14:23
**methods** 62:2
**miami** 15:13
**mind** 7:13
**minute** 59:10
  69:3
**minutes** 14:3
**miriam** 33:3,10
  33:11
**misconduct**
  22:13 24:6,9,10
  24:18 25:21
  27:24 29:23
  30:6 33:15
  36:25 38:4,13
  39:20 44:25
  45:11 50:25
  51:15 61:13,23
  63:3
**mispronounced**
  32:22
**mitigate** 62:3

**monitoring**
  21:12
**monroe** 2:18
**month** 43:16
**months** 23:16
  23:20
**morgan** 2:5
  6:15,19
**morganlewis....**
  2:8,9
**morning** 6:14
  7:25

**n**

**n** 2:1 3:1 4:1
**name** 5:4 7:7
  8:3,5 23:11,13
  23:17,19 32:20
  32:22,23 57:15
  60:8 73:2,3
**names** 32:19
  66:25
**necessarily**
  38:10
**necessary**
  42:23
**need** 10:3 42:5
  69:21
**needed** 36:11
**negotiations**
  19:6,12,19
**neither** 71:10
  72:6

**new** 1:2 2:7
  5:17 32:24
  71:19 73:1
**nice** 15:6
**nods** 9:11
**northern** 1:2
**notary** 5:15
  70:21 71:18
  73:25
**notice** 14:11
**notified** 36:16
**notify** 53:17
**number** 35:8
  40:22 64:18
  70:9
**ny** 2:7

**o**

**oath** 10:9,12
**oaths** 5:16
**objection** 5:19
  7:11 28:25
  29:14 31:24
  37:13,22 41:2
  45:2 51:10
  55:10 63:14
  64:3,4,14 65:8
  65:18 67:11,25
  68:21
**objective** 42:7
**objects** 10:17
**occurring** 30:6
**offer** 36:8

**[office - participate]** Page 12

| | | | |
|---|---|---|---|
| **office** 11:9 12:4 | 37:18 38:3 | 49:19,21 50:4 | 15:1 16:1 17:1 |
| 12:19 13:3,17 | 41:25 59:11 | 50:12,17 51:2,6 | 18:1 19:1 20:1 |
| 15:24 16:10,23 | 60:15 61:22 | 51:20,23 52:4,9 | 21:1 22:1 23:1 |
| 17:11,20,25 | 64:8 68:6 69:6 | 52:14,15,16 | 24:1 25:1 26:1 |
| 20:10,18 21:15 | 70:4,6 | 53:14,16,16 | 27:1 28:1 29:1 |
| 21:21 22:25 | **old** 23:14 | 56:25 57:11 | 30:1 31:1 32:1 |
| 23:4,15 24:4,17 | **once** 16:11 | 58:24,25 59:21 | 33:1 34:1 35:1 |
| 26:11 27:22 | 46:16 52:4 | 60:9,16 61:3,6 | 36:1 37:1 38:1 |
| 30:23 34:11 | 53:23 54:3 | 61:6 62:24 | 39:1 40:1 41:1 |
| 38:8 57:11,14 | 56:25 | 64:11,12 65:14 | 42:1 43:1 44:1 |
| 57:17 66:20 | **ones** 39:24 52:2 | 66:4,19 67:7,17 | 45:1 46:1 47:1 |
| **office's** 22:15 | **ongoing** 30:6 | **opr's** 22:22 | 48:1 49:1 50:1 |
| **officer** 1:9 2:14 | **opposite** 45:5,8 | **options** 30:17 | 51:1 52:1 53:1 |
| 26:3,13,20 | **opr** 12:3,6,8,17 | **ordering** 69:22 | 54:1 55:1 56:1 |
| 30:19 37:6,7,9 | 12:23 13:3 | 69:24 | 57:1 58:1 59:1 |
| 39:20 40:9,16 | 14:12,16 18:23 | **organization** | 60:1 61:1 62:1 |
| 40:16 41:5 | 19:4,6,24 20:9 | 21:3 25:10 | 63:1 64:1 65:1 |
| 42:13 46:20 | 20:11 21:21 | **organized** 19:5 | 66:1 67:1 68:1 |
| 48:18,19 52:24 | 22:10,15,23 | **ortiz** 57:15 | 69:1 70:1 |
| 52:24 55:13 | 23:9,24,24 | **outcome** 60:21 | **p.m.** 1:18 5:8 |
| 56:5,9,16 61:20 | 24:11,12 25:9 | 71:14 72:11 | 59:12,16 69:7 |
| 61:21 71:1,2 | 25:18,21,23,23 | **outside** 18:2 | 69:11 70:7,12 |
| **officers** 21:14 | 26:11,16,18 | 24:16 55:4 | **page** 4:2,6 73:5 |
| 30:14 40:18 | 27:3,6,8,22 | **overlapping** | **paper** 38:19 |
| **okay** 8:5,8,17 | 28:3,21 29:7,18 | 22:8 | 39:8,10 66:18 |
| 8:21 9:9,16,19 | 29:25 30:25,25 | **overtime** 41:7 | **park** 2:6 |
| 10:24 11:3,22 | 31:16,18,20 | **own** 21:7,8,10 | **parks** 32:21 |
| 12:7,15,21,25 | 33:15,21,24 | 21:10,13 | 33:7 |
| 13:7,14,19,22 | 38:11,25 39:23 | **p** | **part** 20:23 |
| 15:2,19 18:19 | 40:13,25 41:8 | **p** 2:1,1,4 3:1,1 | 21:22 22:2 |
| 19:11,19,22 | 41:14,15,18 | 5:1 6:1 7:1 8:1 | 26:10 44:20 |
| 22:4,23 27:7 | 42:24 43:3 | 9:1 10:1 11:1 | 49:14 |
| 28:12,21 29:11 | 44:20,23 45:10 | 12:1 13:1 14:1 | **participate** |
| 33:22 35:18 | 47:10 48:3,4,9 | | 45:22 46:10 |

**[parties - protect]** Page 13

| | | | |
|---|---|---|---|
| **parties** 5:17,21 9:21 11:24 71:11,13 72:7 72:10 | 31:5 34:4 41:13 42:19,20 42:21 44:14 50:20 51:9 | **positions** 17:9 17:13,15 **possibility** 62:4 **possible** 25:16 | 53:4 58:16,16 58:23 61:16 66:3,7,12,17 **procedural** 6:2 |

parties   5:17,21
  9:21 11:24
  71:11,13 72:7
  72:10
party   6:10
paul   6:18
paying   31:13
payroll   42:9
  59:2
pending   10:6
percent   53:2
  63:5
period   22:16
  34:25 63:11
permitted   5:25
person   8:24
  23:7
personnel   25:7
  36:12
perspective
  20:4 48:6 49:9
pertaining   51:7
pertains   11:14
peter   1:16 2:3
  5:9 6:14 7:9,16
  23:22 57:20,22
  70:9,15 73:3,21
peter.fay   2:8
ph   23:22 32:22
  33:3,11 67:2,3
phone   9:16,22
  12:12 13:7,11
  13:13 25:9
  26:22 30:16

31:5 34:4
  41:13 42:19,20
  42:21 44:14
  50:20 51:9
  63:13 65:17
  67:10,21 68:11
  68:19
phones   9:19
  11:19 13:5
  26:14 31:6,14
  68:25
place   39:22
  45:13 58:23
  61:8
places   40:11,12
plaintiff   1:5 2:2
  6:16,20
play   26:10
please   5:2 6:9
  7:8,13,21 8:13
  9:4
plus   17:8
point   10:3
police   21:8
  24:21,24
policies   20:2
  22:15,17,19,22
  45:12
policy   14:12
  19:24 23:24
  36:14 46:20
  58:3 62:6,11
position   17:4

positions   17:9
  17:13,15
possibility   62:4
possible   25:16
  25:22 41:17
potential   24:18
  55:18 61:12
preparation
  14:13,17
prepare   13:15
  14:9,19
prepared   12:3
  12:7,16,21
  22:14 63:9,19
  65:12 67:5,17
  68:6,14 72:3
preparing   18:2
present   3:2
  14:5 18:24
presents   52:4
pressure   44:24
presumably
  27:9 61:2
pretty   22:18
  39:10 60:22
  62:5,5
prevent   11:4
prior   71:4
prisons   44:11
proactive   30:2
probably   25:12
  28:20 30:22,23
  31:15 32:10
  39:20 41:7

53:4 58:16,16
  58:23 61:16
  66:3,7,12,17
procedural   6:2
procedures
  45:13
proceed   7:22
proceeding
  1:19 5:7,24
  10:11 70:13
  72:4
proceedings
  71:3,4,5,8 72:5
process   12:4,6
  12:8,17,18,23
  18:14 19:8
  28:12,15,20
  30:10 54:23,25
  60:16 61:11
  68:4
produced   5:23
  11:13
professional
  20:10
proposed   20:5
prosecution
  56:4,12
protect   12:11
  13:9 25:7
  26:20 30:15,20
  30:25 34:3,16
  35:10,13 41:12
  50:19,22 51:8
  53:12 55:8

**[protect - remember]** Page 14

| | | | |
|---|---|---|---|
| 56:2,6 59:6 63:12,25 65:16 67:9,20 68:10 68:18 | **quite** 38:25 | **receives** 53:10 | **recourse** 53:15 |

56:2,6 59:6
63:12,25 65:16
67:9,20 68:10
68:18
**proven** 62:23
**provide** 23:13
34:4
**provision** 38:22
**public** 70:21
71:18 73:25
**pull** 58:10
**punishment**
55:6 57:3
**punishments**
56:3
**purpose** 64:17
64:20
**purposes** 52:15
**put** 48:22,25
49:2

**q**

**qualification**
10:4
**qualified** 71:7
**question** 8:12
8:18 9:6 10:5
10:20,22 40:3
69:20
**questions** 9:20
10:18,19 18:4
69:14
**quickly** 8:11

**quite** 38:25

**r**

**r** 1:24 2:1,16
3:1 71:2,17
**r.n.** 1:7 2:13
**radunsky** 2:17
6:23
**raise** 7:14
**ramos** 1:24 5:5
71:2,17
**random** 25:4
**range** 55:18
**rare** 34:17,20
34:25
**rather** 60:18
**read** 14:10,10
**real** 53:19
**realize** 8:4
**really** 22:20
48:24 49:10
56:13
**reason** 10:24
11:3 45:10
73:5
**recall** 15:25
16:3,13,17
17:17 56:11
**receive** 15:7
29:19 43:22
63:2
**received** 29:22
35:9

**receives** 53:10
**receiving** 26:13
**recent** 16:3,5
**recently** 13:24
32:24
**recollection**
56:14,15,23
**recommend**
35:24 47:2
51:21 52:13
**recommendat...**
51:24 54:15
**recommended**
51:25 52:3
**record** 5:6,7,20
6:10 7:7 8:24
38:17 49:20
51:23,25 59:12
59:14,16 69:7,9
69:11 70:7
71:9 72:5
**record's** 56:24
**recorded** 6:4
71:6
**recording** 5:23
71:8 72:3
**records** 31:5
38:11,15,19,24
39:4,23 42:9,9
42:16,18,19,21
57:17,23 58:6,9
59:2,2,5 62:25
64:12 66:2

**recourse** 53:15
**reduced** 58:4
71:6
**refer** 8:3
**referring** 35:2
**reflect** 42:15
**regard** 17:14
**regarding**
11:13,17 12:9
25:6,20 27:23
28:8 33:15
36:25 38:12
50:17 53:11
54:11 56:2
60:11,21 61:12
61:23 63:2,11
65:14 68:22
**regardless** 8:9
10:13 61:8
62:7
**related** 13:5,12
38:24 71:10
72:7
**relation** 12:12
13:8 26:21
30:16 41:12
**relative** 71:12
72:9
**relatively** 32:23
34:19
**relevant** 64:5
**remember**
16:15

**remote** 1:19
**remotely** 5:18
**renewal** 19:16
**rentis** 33:3,11
**repeat** 8:14
**rephrase** 8:14
**report** 27:15,21
  47:6 53:10,10
**reported** 1:24
**reporter** 5:3,5
  7:6,10,21 8:21
  9:10 33:6,6,9
  33:12 69:19,23
  70:4
**reporting** 73:1
**reports** 23:4
  49:20 61:7
  64:13 67:6,18
**represent** 6:11
**representative**
  1:15
**representatives**
  19:17
**representing**
  6:16,20,24 7:2
  13:17 15:21
  53:3
**reprimand**
  53:19 58:2
**request** 69:2
**required** 38:21
  46:9,9
**requirements**
  44:4

**reservations**
  48:8
**reserve** 69:17
**resigned** 33:3
**resigns** 49:17
**resolution** 53:8
**resolved** 53:5
**respond** 9:9
**responding** 9:5
**responsibilities**
  18:11
**responsibility**
  23:25
**result** 55:21
  56:3
**results** 36:17
  57:5 60:23
**retained** 70:10
**retaliation** 62:6
  62:8
**retention** 38:17
**retribution**
  36:23 61:24
**reveal** 63:21
**review** 14:8,12
  14:16 20:10
  25:24 27:12,13
  31:2,2,5,9 42:4
  45:17
**reviewed** 28:19
  35:19
**reviewing**
  28:13 32:4

**revises** 23:24
**revising** 19:24
**right** 5:3 7:14
  9:14,17 23:14
  23:16 33:15
  36:18 54:8
  69:18
**rights** 40:21
  46:4
**rise** 62:22
**risk** 36:23 46:6
**rochelle** 33:2
**role** 17:18,23
  17:24 18:5,6,15
  18:20,24 24:8
**room** 9:13
**rosters** 42:14
**rough** 56:21
**rules** 6:3 8:11
  11:18
**runs** 57:13

**s**

**s** 2:1 3:1 4:5
  73:5
**safe** 11:18
**saved** 61:2,7
**saying** 35:8
  54:17
**says** 12:9 25:24
  25:24 34:2
  52:22 53:10
**scanned** 39:21

**scenario** 27:5
**schmilky** 67:2
**school** 15:8
**scope** 11:25
  64:4
**search** 40:8
  51:5 59:4
**second** 18:6
**see** 12:24 30:20
  31:5 32:12
  34:13 42:13,17
  42:18,20 58:21
  66:13
**seems** 35:10
**seen** 12:13 13:3
  44:10,11 48:11
**send** 20:5 27:8
  33:19 44:12
  52:9,17 70:2
**sending** 25:18
**sends** 25:23
  56:25
**sent** 39:21 47:8
  53:18 60:4
**separate** 22:23
  57:9,11
**sergeant** 52:24
**serious** 55:15
**served** 54:16
**service** 44:3
**services** 21:8
  30:22
**settled** 53:6

**severe** 26:17,23 62:6
**severity** 26:9
**share** 8:4
**shebel** 1:7 2:12
**sheet** 73:1
**sheriff** 1:15,20 11:15 15:22 23:5
**sheriff's** 11:9 11:16 12:4,19 15:24 16:10,23 17:7,10,19 22:25 24:4,17 44:21 62:3
**show** 59:2
**shuffle** 21:2
**side** 19:6
**signature** 71:16 72:13
**simental** 32:22
**sit** 16:19 19:16 20:7 46:2
**six** 58:16
**skepticism** 28:23
**skills** 71:9 72:6
**small** 53:20
**smaller** 53:6
**smith** 61:21
**software** 60:7
**solely** 12:3
**somebody** 49:4

**sorry** 14:23 15:12 17:19 39:11 64:7
**sort** 30:9 34:9 40:2 49:19 51:21 64:11
**sound** 11:20
**source** 28:14 29:12 61:8
**south** 1:22 5:13
**speak** 13:22
**speaking** 9:5 22:9
**special** 16:25 18:21 43:23
**specific** 44:5 47:24 51:3,21
**specifically** 10:21 11:12 41:10 55:25 67:16
**specify** 57:23
**speculation** 51:11
**spoke** 13:19
**staff** 12:11 24:5 24:8,10,19,25 25:3,21 27:24 29:22 33:15 36:24,25 37:19 38:4,13 42:24 46:8 49:12,16 50:18,24 51:15 55:7 61:12,13

61:22,24 63:3 65:15 66:11 67:8,19 68:10 68:18
**stand** 20:9
**standalone** 23:2
**start** 6:12 40:13 41:21 66:2,10
**started** 39:13
**starting** 39:7
**starts** 42:3
**state** 7:7 24:15 24:21 56:8 71:19
**statement** 45:25 49:18
**statements** 47:13
**states** 1:1
**stating** 30:19
**statistics** 63:6 63:10,17,18,23 64:21,23
**statute** 43:17
**stenographic** 6:5
**steps** 53:5
**stipulation** 6:7
**stored** 38:15 40:5 49:24 61:5
**street** 2:18

**stuff** 40:19
**subject** 20:3
**subordinate** 40:18
**subscribed** 70:17 73:22
**successor** 19:18
**suffered** 26:17
**suggests** 12:9
**suite** 2:18
**summary** 47:12
**superintendent** 25:16,23 27:7 27:10 31:4 33:19 34:10
**supervised** 43:4
**supervision** 43:9
**supervisor** 21:16 24:7 40:17 41:6
**support** 32:12
**supposed** 36:16 60:23 62:20
**sure** 8:7 9:7 19:14 20:23,25 45:17 56:8 60:22 66:24 69:25
**susan** 1:7 2:12
**suspension** 26:4 47:3 52:22 53:6 54:15,18 55:18

55:22 56:12
58:3 59:3
**suspicion** 38:9
**sustained** 46:19
53:12 54:4
55:9 64:19,19
65:2,3
**swear** 5:18 7:12
**sworn** 5:20
7:18 36:12
70:17 71:5
73:22
**system** 25:9
26:22 30:16
37:2 41:13
50:21 51:9
60:7 65:17
67:10,21 68:12
68:20

**t**

**t** 4:5 33:8
**take** 5:6,15
10:2,14 25:10
25:14 38:6
43:13,20,20
59:9 63:8
**taken** 5:10
12:10 27:19
68:8,16 71:3,11
72:8
**talk** 9:2,3 20:6
**talking** 43:15

**teams** 32:17
**technically**
24:7
**telephone**
11:17
**tell** 7:18 10:10
46:5
**ten** 15:18,20
17:5 35:3
38:23 50:6
**term** 19:14
**termination**
47:4 55:19,22
**terms** 18:11
34:9 46:11
**terrible** 56:18
**testified** 7:20
13:2 16:8
59:21 64:6
**testify** 11:8
12:2,3,5 22:15
63:9 65:12
67:5,17 68:7,15
68:22
**testifying** 11:5
71:5
**testimony** 70:8
**thank** 7:10,14
8:8 15:2 29:11
33:5,12 69:5,15
69:15 70:4
**thanks** 19:22
69:17

**theory** 25:12
27:11 41:15
**things** 8:25
25:3
**think** 11:4 13:2
18:16 19:11
21:20 22:6
25:14 29:5,8
30:3 32:20,23
33:2,4 37:18
38:17,23 50:13
56:5,7,8,9,13
56:19 59:7
60:7,13,15
61:10,15 63:16
64:8,17,24
68:22
**third** 18:15
**thorough** 66:15
**thought** 48:13
**thousand** 22:21
**three** 9:18,19
16:12 17:12
18:7 23:15,20
**tia** 32:21 33:7
**tier** 30:14 32:5
32:8 37:12
42:14,20
**time** 1:18 6:8
8:24 21:15
22:8,16 34:25
36:15 37:13
38:22,25 53:2
54:15 59:12,16

59:17 62:19
63:11 64:5
69:7,8,11,12,15
69:16 70:7
**timeframe**
43:14
**times** 10:16
15:17
**title** 16:24 23:8
**today** 6:24 7:3
10:16,25 11:5,7
12:16 22:14
23:12 67:6
68:7,14 69:15
**today's** 14:9,20
69:21 70:8
**told** 60:23
**tom** 1:7,15 2:12
5:11 73:2
**topic** 11:14
**total** 70:9
**touched** 54:2
60:16
**tracking** 52:14
**tracks** 57:7
**training** 43:23
43:25 44:5
**transcribe** 9:11
**transcriber**
72:1
**transcribing**
8:22
**transcript** 5:22
69:21 72:3,4

**[transcriptionist - warehouse]**                    Page 18

**transcriptionist**
71:7
**transferred**
44:8
**trends** 62:25
64:12,22 65:6
**trial** 16:8
**true** 35:8 71:8
72:4
**truth** 7:18,19
7:19 10:10
46:6
**truthful** 46:14
**truthfully** 11:5
**try** 8:14 42:6
44:15 49:5
**trying** 34:4
**tuesday** 1:17
5:11
**turning** 64:25
**turnover** 32:25
**turns** 48:19
**two** 16:12
20:24 22:21
32:21 48:14
51:16 53:5
62:9 66:22,22
70:10
**type** 15:25 16:6
16:13 27:13
31:21 39:19
43:23 55:6
57:3,17 62:7
65:6

**types** 63:6
**typewriting**
71:6

**u**

**ultimate** 52:18
53:8
**ultimately** 23:6
23:25
**unaware** 63:17
63:20
**under** 6:2 10:9
54:13
**understand**
5:21 8:13
10:18 11:22
**understood**
8:19
**unfounded**
39:25 40:5
41:24
**union** 20:6 53:2
55:3,4
**union's** 20:4
**unique** 47:24
**unit** 20:20 24:9
43:8 57:7,10
59:13,17
**united** 1:1
**units** 21:4
**university**
15:13
**unusual** 34:13
34:16

**usage** 11:18,19
13:5,8 63:13
**use** 9:22 12:12
13:10 25:8
34:4 41:13
50:20 51:8
67:9,20 68:11
68:19
**used** 20:16
34:18 36:8
70:10
**uses** 5:25
**using** 13:13
42:20 60:14
**usually** 8:2
25:2 26:5
34:22 38:23
42:10 44:11
48:16 54:23,24
55:7

**v**

**v** 1:6 73:2
**various** 20:18
25:3
**verbally** 9:10
**veritext** 3:3 5:6
7:5 70:11 73:1
**version** 60:4
**versus** 39:8
56:12 64:19
**video** 24:9 31:3
32:4,7,9,9 42:8
42:18,19 47:14

**videoconfere...**
2:3,4,15,16 3:4
**videographer**
3:3 5:2 7:4
59:11,15 69:6
69:10,18 70:6
**videotaped**
1:14
**vigorously**
44:24
**violation** 46:21
**violence** 12:12
25:8 26:21,24
30:15 50:20
51:8 65:16
67:9,20 68:11
68:19
**visit** 44:10
**vs** 5:11

**w**

**wait** 9:4
**walk** 30:9
**want** 16:11
19:25 20:6
25:25 35:20,21
39:13 69:14
**wanted** 48:16
51:5 58:20
65:22 67:23
69:25,25
**warehouse**
38:20

| | | **z** |
|---|---|---|
| **warranted** 52:7 | **work** 16:21,22 | **zoom** 8:23 |
| **way** 12:25 | 30:4 | 13:20 |
| 33:21,24 37:19 | **worked** 58:20 | |
| 40:7 47:7 | **workforce** | |
| 53:20 66:14 | 42:16 | |
| **ways** 25:22 | **wrap** 69:4 | |
| 40:23 | **written** 6:6 | |
| **we've** 34:12 | 53:19 58:2 | |
| 35:9 38:24 | **wrong** 29:6 | |
| 58:17 | 35:17 56:15 | |
| **weeks** 14:24 | **x** | |
| **weingarten** | **x** 4:1,5 | |
| 46:4 | **y** | |
| **welcome** 59:20 | **yeah** 11:21 | |
| **went** 18:16 | 26:15 46:11 | |
| 32:24 51:14 | 49:16,22 50:8 | |
| **west** 2:18 | 60:13 66:6 | |
| **witness** 5:12,18 | **years** 17:5,8 | |
| 5:20,21 6:24 | 18:8 35:4 | |
| 7:3,12,17 11:8 | 36:13 38:23 | |
| 11:13 15:15 | 39:12 50:6,15 | |
| 19:10 29:3,16 | 51:16 56:10 | |
| 32:3 33:8,11 | 58:17,20,25 | |
| 37:16,25 41:4 | 63:18 64:7 | |
| 45:4 47:13,22 | **yep** 70:3 | |
| 48:15 49:10 | **yesterday** | |
| 51:13 55:12 | 13:24 | |
| 62:10 63:16 | **york** 1:2 2:7 | |
| 64:16 65:10,20 | 5:17 71:19 | |
| 67:14 68:3,24 | 73:1 | |
| 71:4 | | |
| **witnesses** 46:11 | | |
| **witnesses'** 73:3 | | |

Federal Rules of Civil Procedure

Rule 30


(e)  Review By the Witness; Changes.

(1)  Review; Statement of Changes. On request by the
deponent or a party before the deposition is
completed, the deponent must be allowed 30 days
after being notified by the officer that the
transcript or recording is available in which:
(A)  to review the transcript or recording; and
(B)  if there are changes in form or substance, to
sign a statement listing the changes and the
reasons for making them.
(2)  Changes Indicated in the Officer's Certificate.
The officer must note in the certificate prescribed
by Rule 30(f)(1) whether a review was requested
and, if so, must attach any changes the deponent
makes during the 30-day period.



DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES
ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY.
THE ABOVE RULES ARE CURRENT AS OF APRIL 1,
2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES
OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the
foregoing transcript is a true, correct and complete
transcript of the colloquies, questions and answers
as submitted by the court reporter. Veritext Legal
Solutions further represents that the attached
exhibits, if any, are true, correct and complete
documents as submitted by the court reporter and/or
attorneys in relation to this deposition and that
the documents were processed in accordance with
our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining
the confidentiality of client and witness information,
in accordance with the regulations promulgated under
the Health Insurance Portability and Accountability
Act (HIPAA), as amended with respect to protected
health information and the Gramm-Leach-Bliley Act, as
amended, with respect to Personally Identifiable
Information (PII). Physical transcripts and exhibits
are managed under strict facility and personnel access
controls. Electronic files of documents are stored
in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.