**Morgan Lewis**

**Philip A. Miscimarra**
Partner
+1.202.739.5565 (Washington DC)
+1.312.324.1165 (Chicago)
philip.miscimarra@morganlewis.com

June 9, 2025

**Filed and Served on Opposing Counsel via ECF System**

The Honorable Jeremy C. Daniel
District Judge
U.S. District Court for the Northern District of Illinois
219 South Dearborn Street
Chicago, IL 60604

RE:  Request for Court Assistance on Two Issues (Consistent with April 9, 2025 Order)
     and Proposed Timetable – Henneberg v. Dart et al., Case No. 1: 19-cv-07380

Dear Judge Daniel:

We submit this letter on behalf of Plaintiff Donald Henneberg in the above-captioned case.  This letter briefly requests the Court's assistance regarding the following issues:

(a)  The parties have reached an unfortunate impasse regarding Plaintiff's compromise proposal which, consistent with the Court's April 9, 2025 Order (Dkt. 219) and April 9 Hearing Transcript (Dkt. 220), would only require Defendants to produce medical records for 841 inmates who – like Plaintiff Donald Henneberg – had 5 Optometry Referrals (or more than 5) in 2015-2019, which is a small fraction of the 30,994 spreadsheet entries (*see* Exhibit 1)[1] regarding Referrals to Optometry for the same period.  *See* Part A.

(b)  Deficiencies exist in Defendants' production – in response to the Court's April 9 Order (Dkt. 219) – regarding eyeglasses- and optometrist-related "invoices, charges, costs or payments" and "negotiations, contracts and other arrangements governing the purchase, preparation and delivery of eyeglasses and optometrist services."  *See* Part B.

(c)  The parties await the Court's resolution of the pending Rule 30(b)(6) deposition dispute addressed by the parties' submissions (Dkt. 221 and Dkt. 222) involving two topics ("Topics 10 and 11") identified in Plaintiff's Rule 30(b)(6) Notice.  *See* Part C.

(d)  Plaintiff sets forth a proposed timetable for Defendants' additional productions, expert discovery, summary judgment briefing, and pretrial motions.  *See* Part D.

**A. Plaintiff's Compromise Proposal Narrowing the Scope of Production
Involving Repeated Inmate "Referral[s] to Optometry."**

At the April 9, 2025 hearing, the Court agreed that the 2015-2019 spreadsheet produced by Defendants – with 30,994 single-line entries containing no details other than inmate names, inmate numbers, date/time and the phrase "Referral to Optometry" – did not sufficiently address Plaintiff's discovery requests for details regarding inmate requests for eyeglasses, whether

---

[1] All documents identified as Exhibits have been filed concurrently with this letter.

June 9, 2025
Page 2

optometry appointments involved eyeglass requests, whether and when eyeglasses were delivered, and so on. *See* Order (Dkt. 219) and Transcript (Dkt. 220) at 34, where the Court stated: "I don't understand how it would be possible to say, here is the sample we want. There is no information as to what the referral to optometry is for any of these individuals, no indication that any of these are related solely to eyeglasses, and so how is this useable."

The Court directed Plaintiff to "consider ways to narrow the scope of the requests to reduce the burden on the defendants" (Order, Dkt. 219). And at the hearing, the Court stated:

> *My hope would be that [the compromise request could limit details to] . . . maybe 1,000 individuals*, and these are arbitrary numbers I am pulling out, but again, I am just thinking in terms of man hours that would be required to open and then download the numbers. But take a look, and then the parties should confer.

Transcript (Dkt. 220), at 57 (emphasis added). *See generally id*. (Dkt. 220), at 29-58.

1. <u>Plaintiff's Proposal</u>. On April 17, 2025, regarding the 2015-2019 spreadsheet, Plaintiff sent Defendants an email stating Plaintiff's compromise proposal as follows:

> Plaintiff proposes that Defendants produce all records, documents, details and information regarding eyeglasses requests, vision care treatment and referrals to optometry *for all inmates . . . who are listed in the spreadsheet as <u>having 5 or more 'Referrals to Optometry</u>'*"

*See* Exhibit 2 (emphasis added). Significantly, *the Plaintiff, Mr. Henneberg, had 5 referrals to Optometry*, which are shown on the 2015-2019 spreadsheet. Also, as described below, by limiting details to inmates who had 5 or more Optometry referrals, this reduces – to only <u>841 inmates</u> – the total number of people for whom the Defendants must provide details.

2. <u>Defendants' Proposal</u>. On April 22, 2025, Defendants sent an email stating that Plaintiff's proposal "is going to be onerous," and Defendants proposed to take the spreadsheet containing 30,994 entries, and to "*look at a sample of 100 initially*, and if that is not satisfactory, continue to produce additional records *if the court instructs it*." *See* Exhibit 3 (emphasis added). Under Defendants' proposal, the "sample of 100" would be selected from inmates who were referred to Optometry "10 or more times." *Id*.

3. <u>Additional Exchanges and Impasse</u>. On May 6, 2025, after additional emails (*see* Exhibits 4 and 5 in which Plaintiff unsuccessfully sought details regarding *why* Defendants contended Plaintiff's compromise request was too burdensome), Plaintiff sent Defendants an email (Exhibit 6) – identifying by name the 841 inmates who had 5 or more Optometry referrals – and Plaintiff provided the following explanation:

> After doing a search focusing on inmate numbers, we have determined that – if Defendants produce relevant details to those individuals whose inmate numbers appear 5 or more times – *this would only involve 841 inmates*. In other words, it appears that 841 inmates had 5 or more referrals to "Optometry" during the period 2015-2019.
>
> Based on the nature of Plaintiff's claims regarding eyeglasses, we believe Defendants should provide relevant details (as described above) regarding these 841 inmates because
>
> > (i) Plaintiff contends *it is unreasonable for any inmate to have 5 or more referrals to Optometry*, especially considering that *Cook County Jail has many inmates*

June 9, 2025
Page 3

> *who are incarcerated for a short period of time* (pending assignment to a longer-term correctional facility),
>
> (ii) Defendants' proposal to provide details regarding a "sample" of 100 inmates is unreasonably narrow because *this small number is too small to reasonably relate to Plaintiff's burden* which involves, among other things, *the need to prove a "widespread practice" sufficient to establish "deliberate indifference" regarding the handling of Optometry referrals and eyeglasses requests*,[2] and
>
> (iii) limiting the disclosure of details to inmates listed as having 10 or more referrals to Optometry is likewise too narrow because the list reveals that *the Plaintiff, Mr. Henneberg (inmate no. 20181129048), had 5 referrals to Optometry*, which makes it important to have the opportunity to get details regarding Cook County Jail's treatment of *other inmates who had the same number of referrals as Mr. Henneberg (and greater)*.
>
> *What follows is the list of inmates who appears on the spreadsheet as having 5 or more referrals to Optometry, and Mr. Henneberg's name appears in row # 700.* Accordingly, Plaintiff requests that Defendants produce all records, documents, details and information regarding eyeglasses requests, vision care treatment and referrals to optometry for all inmates who are identified [in the list] below. . . .

Exhibit 6, at 1-2 (emphasis added; paragraph structure modified).

Plaintiff and Defendants had an additional exchange (see Exhibits 7 and 8), in which the parties reached an impasse. At present, Plaintiff requests that the Court resolve this issue, and provide appropriate direction to the parties.

**B. Deficiencies in Defendants' Production of Documents Reflecting Eyeglasses/Optometrist-Related Charges, Contracts, and Arrangements**

In the April 9 hearing, the Court ruled in Plaintiff's favor regarding Defendants' failure to produce documents described as Topics 9 and 10 – contained in Plaintiff's March 26, 2025 discovery letter (Dkt. 211) – which summarized the relevant discovery requests as:

> 9. Documents showing invoices, charges, costs or payments re eyeglasses and optometrists, the names of optometrists and vendors, etc.
>
> 10. Documents regarding negotiations, contracts and other arrangements governing the purchase, preparation and delivery of eyeglasses and optometrist services

*Id*. (Dkt. 211), at 4. *See also* April 9 Order (Dkt. 219) ("the defendants shall produce documents responsive to topics 9 and 10 on or before May 7, 2025"); Transcript (Dkt. 220), at 62-63 (stating this information "should be produced for the time period 2015-2019," and "this is essentially tracking the supply chain of all the glasses issued by the County during that time

---

[2] The quoted phrases – indicating that Plaintiff in this case must prove a "widespread practice" sufficient to establish "deliberate indifference" regarding the handling of Optometry referrals and eyeglasses requests – are taken directly from the Court's decision in this case (Dkt. 54), denying Defendants' Motion to Dismiss, in which the Court stated that delayed eyeglasses appointments "may show deliberate indifference" and "to prove his *Monell* claims, Henneberg will need to demonstrate 'a widespread practice that permeates a critical mass of an institutional body,' supported, for example, by other detainees' experiences." *Id*. at 7-8 (citations omitted).

June 9, 2025
Page 4

period," and "[t]here must be vendor invoices in some way, shape, or form, and those documents are responsive to the request, and likely relevant to the cross referencing . . . other information that have . . . [a]nd so you need to produce that information").

On April 20, 2025, Defendants Dart and Cook County served their respective responses (Exhibits 9 and 10) to Plaintiff's Fourth Document Production Requests, which incorporated Topics 9 and 10 (as summarized above), and Defendants provided no responsive documents.[3]

On May 7, 2025, Defendants sent Plaintiff an email stating, in relation to Topics 9 and 10, "our clients have not identified any responsive documents," but Defendants stated they had requested records in six areas from two non-parties – "Illinois Department of Corrections" and "specifically to Illinois Correctional Industries at Dixon Correctional Center" (Exhibit 7, at 2).[4]

On May 20, 2025, Defendants sent Plaintiff an email (Exhibit 11, at 1) stating: "In response to Topics 9 and 10 in the April 2025 order, see the attached 'supply line' records from Illinois Correctional Industries (Bates 236763-23727)."

Plaintiff's May 20 email was accompanied by 514 pages of documents (*see* Exhibit 11, at 2-515), which fail to adequately respond to Topics 9 and 10 in the following respects, and which Plaintiff asks that the Court address:

- *Defendants Dart and Cook County* still *have produced no documents* that *Defendants* created, received and/or maintained, reflecting financial details, dates and related information regarding their own purchases, receipts, invoices, contracts and arrangements regarding eyeglasses, optometrist services, and the other matters encompassed by Topics 10 and 11;

- Some of the produced documents appear to reflect charges or purchases between Cook County and Illinois Correctional Industries, but these documents only contain last names, which may or may not correspond to particular inmates. It is implausible that Defendants maintained none of their own records to track what orders related to which inmates who requested and/or had eyeglasses prescribed for them.

---

[3] Topic 9 – addressed in Plaintiff's Dart Production Request No. 72, and Cook County Production Request No. 55 – sought all documents "which, in whole or in part, mention, reflect or relate to invoices and/or charges related to (i) optometrist appointments and eyeglasses requests; (ii) the costs and payments incurred or made for such requests; (iii) the identities of the optometrists and/or providers or vendors who provided optometrist services for inmates; and (iv) the identities of the optometrists and/or providers or vendors who provided eyeglasses to inmates" (Exhibit 9, at 6; Exhibit 10, at 6).

Topic 10 – addressed in Dart Production Request No. 73, and Cook County Production Request No. 56 – sought all documents "which, in whole or in part, mention, reflect or relate to negotiations, contracts and/or other arrangements that governed the optometrist services and/or the purchase, preparation and delivery of eyeglasses to inmates" (Exhibit 9, at 6; Exhibit 10, at 6).

[4] The six areas in which Defendants reportedly requested information included: (1) The quantity of eyeglasses produced for the Cook County Department of Corrections; (2) Any documents detailing the cost of materials and labor associated with producing these eyeglasses; (3) Any receipts, records, invoices, or other documentation from Dixon Correctional Industries or Illinois Correctional Industries related to eyeglasses supplied to the Cook County Department of Corrections; (4) Documents indicating the average length of time between the receipt of eyeglass orders and their delivery to the Cook County Department of Corrections; (5) Policies and procedures governing the production, processing, and delivery of eyeglasses; and (6) All contracts in effect during the relevant years concerning the provision of eyeglasses to the Cook County Department of Corrections. *See* Exhibit 7, at 2.

June 9, 2025
Page 5

- To the extent Defendants Dart and/or Cook County have some arrangement with the "Illinois Department of Corrections," "Illinois Correctional Industries" and/or "Dixon Correctional Center," relating to eyeglasses and optometrist services, Topic 10 requires the production of documents relating to *those* "negotiations, contracts and other arrangements" (see note 3 above) *between* Defendants and these other entities, and no such documents have been produced; and

- The documents produced by Defendants appear to be limited to the period 2017-2019 (with some documents reflecting dates or events in 2020); with no documents reflecting dates or events in 2015 or 2016 (except for a few references to eyeglasses ordered in November 2016 and shipped in January 2017); and

- No documents have been produced that reflect "the identities of the optometrists," additional "vendors or providers," "negotiations" and "contracts" regarding eyeglasses and optometry services.

### C. The Parties' Pending Rule 30(b)(6) Dispute

The parties have filed letter submissions addressing a dispute involving Defendants' failure to produce witnesses who could adequately address Topics 10 and 11 in Plaintiff's Rule 30(b)(6) Notice. Plaintiff's submission (Dkt. 221) was filed April 18, 2025; Defendants' submission (Dkt. 222) was filed April 24, 2025; and the parties await the Court's resolution of these issues.

### D. Plaintiff's Proposed Timetable for the Close of Fact Discovery, Expert Discovery, Summary Judgment Briefing, and Pretrial Motions

At the April 9 hearing, the Court stated it would "like to have everything done by June 11th so we can set an expert discovery timeline, a dispositive motion timeline, and a trial date at the next status hearing" (Transcript, Dkt. 220, at 84). To permit the above issues to be resolved, including whatever additional productions by Defendants that Court may require, Plaintiff proposes the following timetable for Defendants' additional productions, expert discovery, summary judgment brief, and pretrial motions:

> Defendants' additional productions completed: July 31, 2025
> Expert reports/disclosures due: September 12, 2025
> Responsive expert reports/disclosures due: October 1, 2025
> Expert depositions/discovery: October 15-31, 2025
> Summary judgment briefs due: November 24, 2025
> Summary judgment reply briefs due: December 22, 2025
> Pretrial motions and pretrial order due: as scheduled by the Court in advance of trial

We appreciate the Court's consideration and assistance.

Very truly yours,

*[signature: Philip A. Miscimarra]*

Philip A. Miscimarra